1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| JAMES KINNICK and WALLACE COATS, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>        v.<br><br>HYUNDAI MOTOR COMPANY, LTD, HYUNDAI MOTOR AMERICA, INC., and DOES 1 through 10, Inclusive,<br><br>        Defendants. | 8:17-cv-02208-JLS-JDE<br><br>Related Cases:<br>8:17-cv-00838-JLS-JDE<br>8:17-cv-01365-JLS-JDE<br>2:18-cv-05255-JLS-JDE<br>8:18-cv-00622-JLS-JDE |

**PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF CONTENTS

INTRODUCTION ................................................................................. 1

JURISDICTION.................................................................................... 3

VENUE ................................................................................................ 4

PARTIES............................................................................................... 4

CALIFORNIA LAW APPLIES TO THE CLAIMS OF THE NATIONAL CLASS ......... 8

TOLLING OF STATUTES OF LIMITATIONS ................................. 9

FACTUAL ALLEGATIONS ............................................................... 9

    A.  The GDI Engines ................................................................... 9

    B.  Engine Failures Within the Class Vehicles ........................ 14

    C.  Previous GDI Engine Recalls............................................. 16

    D.  Defendants' Knowledge of the GDI Engine Defect........... 18

    E.  Pre-Sale Durability Testing ............................................... 93

    F.  Hyundai Whistle Blower Comes Forward ......................... 94

    G.  Defendants' Warranty-Related Practices .......................... 95

CLASS ALLEGATIONS ................................................................... 97

VIOLATIONS OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT........... 100

VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW.................. 102

VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW................................ 104

VIOLATION OF THE SONG-BEVERLY ACT – BREACH OF IMPLIED WARRANTY.................................................................................... 105

OHIO CONSUMER SALES PRACTICES ACT ................................ 106

BREACH OF EXPRESS WARRANTY ................................................ 110

-ii-

BREACH OF IMPLIED WARRANTY ...................................................... 112

BREACH OF WRITTEN WARRANTY UNDER THE MAGNUSON-MOSS

WARRANTY ACT ................................................................................ 113

COMMON LAW FRAUD ................................................................ 115

BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING ....................... 116

UNJUST ENRICHMENT ...................................................................... 116

PRAYER FOR RELIEF ....................................................................... 117

JURY DEMAND .................................................................................. 119

-iii-

Plaintiffs James Kinnick and Wallace Coats bring this action against Hyundai Motor Company ("HMC"), Hyundai Motor America, Inc. ("HMA"), and Does 1 through 10 (collectively "Defendants"), by and through their attorneys, individually and on behalf of all others similarly situated, and allege as follows:

## INTRODUCTION

1.      This is a class action lawsuit brought by Plaintiffs on behalf of themselves and a national class of current and former owners and lessees with Theta 2.0-liter and 2.4-liter gasoline direct injection engines (the "GDI Engines") installed in certain 2015-2016 Hyundai Sonata, Tucson and Santa Fe vehicles (the "Class Vehicles").[1]

2.      This action arises from Defendants' failure to disclose to Plaintiffs and similarly situated consumers, despite their longstanding knowledge, that the engines in the Class Vehicles contain, *inter alia*, a latent defect that results in the restriction of oil flow through the connecting rod bearings, as well as to other vital areas of the engine. This defect – which typically manifests itself during and shortly after the limited warranty period has expired – will cause the Class Vehicles to experience vehicle stalling during operation and catastrophic engine failure.

3.      Significantly, the presence of this defect, resulting in restricted oil flow within the engine, poses a safety risk to the operator and passengers of the Class Vehicles. The failure to have sufficient engine lubrication can cause complete and catastrophic engine failure while the Class Vehicles are in operation at any time and under any driving conditions or speed. This exposes the driver and occupants of the Class Vehicles, as well as others who share the road with them, to an increased risk of accident, injury, or death. As discussed further herein, numerous owners and lessees of the Class Vehicles have experienced engine damage and catastrophic failure while operating the Class Vehicles, thus placing themselves and those around them in immediate danger.

---

[1] Plaintiffs reserve the right to amend or add to the vehicle models and model years included in the definition of Class Vehicles after conducting discovery.

Consolidated Class Action Complaint
Case No. 8:17-cv-02208-JLS-JDE

4.      Defendants actively concealed (1) the fact that particular components within the Class Vehicles' engines are prone to failure, (2) that the existence of the defect would diminish the intrinsic and resale value of the Class Vehicles, and (3) the safety concerns described herein.

5.      Defendants have long been aware of the defect described herein, yet Defendants have routinely refused to repair the Class Vehicles without charge when the defect manifests. Indeed, in many cases Defendants have even refused to disclose the existence of the defect when Class Vehicles displaying symptoms consistent with the defect are brought in for service, instead choosing to ignore the defect until it has caused significant mechanical problems necessitating costly repairs.

6.      Many other owners and lessees of the Class Vehicles have communicated with Defendants and/or their agents to request that they remedy and/or address the defect and/or resultant damage at no expense. Defendants have routinely failed to do so even within the warranty period.

7.      Defendants have also refused to take any action to correct this concealed defect when it manifests in the Class Vehicles outside of the warranty period. Because the defect can manifest shortly outside of the warranty period for the Class Vehicles – and given Defendants' knowledge of this concealed, safety-related defect – Defendants' attempt to limit the warranty with respect to the engine defect is unconscionable and unenforceable here.

8.      Despite notice and knowledge of the defect from the numerous complaints they have received, information received from dealers, National Highway Traffic Safety Administration ("NHTSA") complaints, and their own internal records, including pre-sale durability testing, Defendants have not recalled and/or offered an adequate engine repair to the Class Vehicles, offered their customers suitable repairs or replacements free of charge, or offered to reimburse their customers who have incurred out-of-pocket expenses to repair the defect.

9.      As a result of Defendants' unfair, deceptive and/or fraudulent business

-2-

practices, owners and/or lessees of the Class Vehicles, including Plaintiffs, have suffered an ascertainable loss of money and/or property and/or loss in value. The unfair and deceptive trade practices committed by Defendants caused Plaintiffs and the members of the class damages, including but not limited to, loss of value, loss of use of the vehicles, and repair costs.

10.   Had Plaintiffs and other Class Members known of the defect at the time of purchase or lease, they would not have bought or leased the Class Vehicles, or would have paid substantially less for them.

11.   Plaintiffs are also informed and believe, and on that basis allege, that as the number of complaints increased, and Class Members grew dissatisfied with the performance of the Class Vehicles, Defendants were forced to acknowledge that the Class Vehicles suffer from an inherent defect.

12.   As a result of the defect and the monetary costs associated with attempting to repair the defect, Plaintiffs and the Class Members have suffered injury in fact, incurred damages, and have otherwise been harmed by Defendants' conduct.

13.   Accordingly, Plaintiffs bring this action to redress Defendants' violations of the consumer protection statutes of California, and Ohio and also seek recovery for Defendants' breach of express warranty, breach of implied warranty, breach of the duty of good faith and fair dealing, and common law fraud.

## JURISDICTION

14.   This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different States. This court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

15.   This Court has general personal jurisdiction over Defendants because they have corporate headquarters and offices located in this judicial district, conducted

-3-

substantial business in this judicial district, and intentionally and purposefully placed Class Vehicles into the stream of commerce within the districts of California and throughout the United States.

## VENUE

16.     Venue is proper in this judicial district pursuant to 28 U.S.C. §1391 because HMA maintains its corporate headquarters in this district, Defendants transact business in this district, are subject to personal jurisdiction in this district, and therefore are deemed to be citizens of this district. Additionally, there are one or more authorized Hyundai dealers within this district and Defendants have advertised in this district and have received substantial revenue and profits from their sales and/or leasing of Class Vehicles in this district; therefore, a substantial part of the events and/or omissions giving rise to the claims occurred, in part, within this district.

## PARTIES

### A. Plaintiffs

#### a. James Kinnick

17.     Plaintiff James Kinnick is a citizen of the State of Ohio, and currently resides in Youngstown, Ohio.

18.     On or about September 30, 2014, Plaintiff leased a new 2015 Hyundai Sonata (VIN: 5NPE24AF5FH019486) from Marhofer Hyundai located in Green, Ohio.

19.     Plaintiff Kinnick leased this vehicle for personal, family and/or household uses.

20.     On or about September 7, 2017, with 32,526 miles on the odometer, Plaintiff's daughter was driving home from work and heard a loud knocking noise emanating from the engine. Plaintiff's daughter stopped at a red light and the car stalled and she restarted the vehicle. A few blocks later, the knocking noise returned and Plaintiff's daughter pulled into a parking lot and called Plaintiff.

21.     Plaintiff arrived and found the car's oil levels to be low. Plaintiff purchased three quarts of engine oil, which he used to restore the car's oil to the proper level.

-4-

Plaintiff began driving the vehicle and did not feel comfortable driving it, so he pulled into Ron Marhofer Auto Mall, an authorized Hyundai dealership located in Cuyahoga Falls, Ohio. The service manager informed Plaintiff that the engine was "shot" and that there were metal shavings in the oil from the pistons.

22.    After providing the service history on the vehicle, the dealership informed Plaintiff that it would cost $4,000 to $7,000 for a new engine. Hyundai declined to assist Plaintiff by covering all or part of the repair cost.

23.    As a result, on or about September 28, 2017, Plaintiff paid approximately $4,857.72 to have the failed engine in his vehicle replaced with a used engine.

24.    At all times relevant herein, Plaintiff Kinnick adhered to Hyundai's recommended maintenance intervals.

25.    Plaintiff Kinnick has suffered an ascertainable loss as a result of Defendants' omissions and/or misrepresentations associated with the engine defect, including, but not limited to, out of pocket losses associated with the engine defect, diminished value of his vehicle, and other consequential damages.

26.    Neither Defendants, nor any of their agents, dealers, or other representatives informed Plaintiff Kinnick of the existence of the defect prior to, or any time after, his purchase.

    **b.  <u>Wallace Coats</u>**

27.    Plaintiff Wallace Coats is a citizen of the State of California, and currently resides in Sacramento, California.

28.    On or about May 2016, Plaintiff purchased a pre-owned 2015 Hyundai Sonata (VIN: 5NPE24AF9FH058355) from Paul Blanco's Good Car Company located in Sacramento, California.

29.    Plaintiff Coats purchased (and still owns) this vehicle, which is used for personal, family and/or household uses.

30.    On or about July 17, 2017, while Plaintiff Coats's son was driving northbound on West Street in Woodland, California, the car's engine stopped and would

-5-

not crank or re-start. The car was eventually towed to B&F Body and Machine, an auto repair shop in Woodland, California, where the mechanic indicated that the engine had seized up. His diagnosis was that the vehicle, now with approximately 70,000 miles on the odometer, needed a new engine.

31.     On or about September 6, 2017, Plaintiff contacted Hyundai corporate customer support by phone. Hyundai corporate customer support had his vehicle towed to Sacramento Hyundai, an authorized Hyundai dealership in Sacramento, California. The technician noted that the engine was seized and the crankshaft could not be turned by hand. The technician also found the intake manifold to be contaminated with metal.

32.     As a result, on or about November 1, 2017, Plaintiff paid approximately $7,159.19 to have the failed engine in his vehicle replaced with a remanufactured engine.

33.     At all times relevant herein, Plaintiff Coats adhered to Hyundai's recommended maintenance intervals.

34.     Plaintiff Coats has suffered an ascertainable loss as a result of Defendants' omissions and/or misrepresentations associated with the engine defect, including, but not limited to, out of pocket losses associated with the engine defect, diminished value of his vehicle, and other consequential damages.

35.     Neither Defendants, nor any of their agents, dealers, or other representatives informed Plaintiff Coats of the existence of the defect prior to, or any time after, his purchase.

**B. Defendants**

36.     Defendant Hyundai Motor Company, Ltd. ("HMC") is a South Korean corporation. HMC is the parent corporation of Hyundai Motor America, Inc. ("HMA").

37.     Hyundai Motor Company ("HMC") is a multinational corporation with over 75,000 employees worldwide. HMC is currently the fourth largest automobile manufacturer in the world. HMC, through its various entities, designs, manufactures, markets, distributes and sells Hyundai automobiles in California and multiple other locations in the United States.

-6-

38.     Defendant Hyundai Motor America, Inc. is incorporated and headquartered in the State of California with its principal place of business at 10550 Talbert Avenue, Fountain Valley, California 92708. HMA is HMC's U.S. sales and marketing division, which oversees sales and other operations across the United States. HMA distributes Hyundai vehicles and sells these vehicles through its network of dealerships that are the agents of HMA and HMC. Money received from the purchase of a Hyundai vehicle from a dealership flows from the dealer to HMA.

39.     There exists, and at all times herein existed, a unity of ownership between HMC, HMA and their agents such that any individuality or separateness between them has ceased and each of them is the alter ego of the others.

40.     Upon information and belief, Defendant HMC communicates with Defendant HMA concerning virtually all aspects of the Hyundai products it distributes within the United States.

41.     Upon information and belief, the design, manufacture, distribution, service, repair, modification, installation and decisions regarding the GDI Engine as it relates to the engine defect within the Hyundai Class Vehicles were performed by Defendants HMA and HMC.

42.     Upon information and belief, Defendants HMA and HMC developed the post-purchase owner's manuals, warranty booklets and information included in maintenance recommendations and/or schedules for the Hyundai Class Vehicles.

43.     HMA and HMC are collectively referred to in this complaint as "Hyundai" or "Defendants" unless identified separately.

44.     Hyundai engages in continuous and substantial business in California.

**C. Unknown Defendants**

45.     The true names and capacities of the defendants sued herein as DOES 1 through 10, inclusive, are currently unknown to Plaintiffs, who therefore sue such defendants by such fictitious names. Each of the defendants designated herein as a DOE is legally responsible in some manner for the unlawful acts referred to herein. Plaintiffs

-7-

will seek leave of Court to amend this Complaint to reflect the true names and capacities of the defendants designated herein as DOES when such identities become known.

46.    Based upon information and belief, Plaintiffs allege that at all times mentioned herein, each and every Defendant was acting as an agent and/or employee of each of the other Defendants, and at all times mentioned was acting within the course and scope of said agency and/or employment with the full knowledge, permission, and consent of each of the other Defendants. In addition, each of the acts and/or omissions of each Defendant alleged herein were made known to, and ratified by, each of the other Defendants.

## CALIFORNIA LAW APPLIES TO THE CLAIMS OF THE NATIONAL CLASS

47.    It is appropriate to apply California law to the nationwide claims because California's interest in this litigation exceeds that of any other state.

48.    Defendant HMA is located in Fountain Valley, California and is the sole entity in the United States responsible for distributing, selling, leasing and warranting Hyundai vehicles.

49.    HMA maintains its customer relations, engineering, marketing, and warranty departments at their corporate headquarters in this district. HMA's customer service complaint address is Hyundai Motor America, P.O. Box 20850, Fountain Valley, CA 92728-0850. HMA's customer relations department is responsible for fielding customer complaints and monitoring customer complaints posted to their respective websites or third-party websites.

50.    HMA's warranty and engineering departments are both responsible for the decisions to conceal the engine defect from HMA's respective customers, and for instituting a policy to systematically deny warranty coverage to those who experienced engine failure caused by the defect.

51.    Based on the foregoing, such policies, practices, acts, and omissions giving rise to this were developed in, and emanated from, Hyundai's headquarters in Fountain Valley, California. As detailed below, HMA also came to know, or should have come to

-8-

know, of the engine defect through the activities of their divisions and affiliated entities located within California. Accordingly, the State of California has the most significant relationship to this litigation and its law should govern.

## TOLLING OF STATUTES OF LIMITATIONS

52.     Any applicable statute(s) of limitations have been tolled by Defendants' knowing and active concealment and denial of the facts alleged herein. Plaintiffs and the members of the Class could not have reasonably discovered the true, latent nature of the engine defect until shortly before this class action litigation was commenced.

53.     In addition, even after Plaintiffs and Class Members contacted Defendants and/or their authorized dealers for vehicle repairs concerning the engine defect, they were routinely told by Defendants and/or through their dealers that the Class Vehicles were not defective. As described below, the true cause of the premature and catastrophic failure in the Class Vehicles is a defect that results in restricted oil flow.

54.     Defendants were and remain under a continuing duty to disclose to Plaintiffs and the Members of the Class the true character, quality, and nature of the Class Vehicles, that the manufacturing defect will result in restricted oil flow and catastrophic engine failure, that they will require costly repairs, pose safety concerns, and diminish the resale value of the Class Vehicles. As a result of the active concealment by Defendants, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

## FACTUAL ALLEGATIONS

**A.    The GDI Engines**

55.     The Theta II 2.0 liter and 2.4 liter engines contained in the Class Vehicles contain a gasoline direct-injection ("GDI") fuel delivery system.

56.     According to its website, Hyundai builds the Theta 2.4 liter 4-cylinder Gasoline Direct Injection and Theta 2.0 liter 4-cylinder Turbo engines. As a result, "[c]astings of engine blocks, heads and crankshafts are delivered from suppliers and

-9-

1  machined to HMMA's exact specifications."[2]

2      57.    Hyundai has also made similar public statements regarding the design of the

3  GDI engine: "[t]his shorter, more direct path of fuel delivery, allows for greater control of

4  the fuel mixture at the optimum moment, thus improving efficiency. The fuel is injected

5  by a camshaft-driven, high pressure pump that operates at pressures up to 2,175 psi.

6  Direct injection also utilizes a higher than normal 11.3:1 compression ratio for increased

7  power. The pistons are 'dished' to increase combustion efficiency in the cylinder. This

8  powerplant delivers best-in-class fuel economy, best-in-class four-cylinder horsepower

9  and best-in-class torque."

10      58.    The GDI Engines contained in the Class Vehicles use four reciprocating

11  pistons to convert pressure into a rotating motion. Gasoline is mixed with air in the

12  combustion chambers of the engine. To generate such rotating motion, a four-step

13  sequence is used (the "Combustion Cycle"). First, the intake stroke begins with the inlet

14  valve opening and a vaporized fuel mixture is pulled into the combustion chamber.

15  Second, the compression stroke begins with the inlet valve closing and the piston

16  beginning its movement upward, compressing the fuel mixture in the combustion

17  chamber. Third, the power stroke begins when the spark plug ignites the fuel mixture,

18  expanding the gases and generating power that is transmitted to the crankshaft. And

19  fourth, the exhaust stroke begins with the exhaust valve opening and the piston moving

20  back up, forcing the exhaust gases out of the cylinder. The exhaust valve then closes, the

21  inlet valve opens, and the Combustion Cycle repeats itself. A diagram of Combustion

22  Cycle is below:

---

[2] https://www.hyundaiusa.com/about-hyundai/news/Corporate_newengine-20091120.aspx (last visited August 7, 2017).

Consolidated Class Action Complaint
Case No. 8:17-cv-02208-JLS-JDE

1
2
3
4
5
6
7
8



9    59.    The pistons are connected to the crankshaft via the connecting rod. As the
10 connecting rod moves up and down during the Combustion Cycle, this causes the
11 crankshaft to rotate, ultimately resulting in power to the drive wheels of the vehicle.
12 During this cycle, the crankshaft rotates many thousands of times per minute within each
13 connecting rod. In order to reduce friction and prolong longevity, this design utilizes a
14 bearing placed between the connecting rod and crankshaft surfaces. As a result, the
15 connecting rod bearings allow the crankshaft to rotate within the connecting rods during
16 the Combustion Cycle. An exemplar diagram of the piston, connecting rod, connecting
17 rod bearing and crankshaft are shown below:
18
19
20
21
22
23
24
25
26
27
28

Consolidated Class Action Complaint
Case No. 8:17-cv-02208-JLS-JDE





Figure 3-70.—Connecting rod bearings.

-12-

1    60.    When the Class Vehicles are in operation, engine oil is used to lubricate the

2    pistons, cylinder walls, connecting rod bearings and other rotating and moving

3    components as the pistons move up and down through the four-stroke sequence. Engine

4    oil is necessary to reduce wear on moving parts throughout the engine, improve sealing,

5    and cool the engine by carrying away heat from the moving parts. Engine oil also cleans

6    and transports contaminants away from the engine to the engine oil filter. Oil is pumped

7    and pressurized throughout the engine by the oil pump. The oil pump draws oil from the

8    oil pan, located underneath the piston and crankshaft. The oil pump forces engine oil

9    through the oil filter and then through passages in the engine to properly lubricate and

10    reduce friction in internal moving engine components. The oil then returns to the oil

11    pan through small drainage holes located throughout the engine where it will be

12    recirculated by the oil pump. Below is a diagram illustrating the typical path and

13    channels of engine oil lubrication in an overhead cam engine:



14

15

16

17

18

19

20

21

22

23

24

25

26    61.    The connecting rod bearings are also lubricated with engine oil in order to

27    allow the crankshaft to rotate within the connecting rods. A close-up picture of a

28    functional connecting rod bearing is below:

Consolidated Class Action Complaint
Case No. 8:17-cv-02208-JLS-JDE

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**B. Engine Failures Within the Class Vehicles**

62.    Upon information and belief, the connecting rod bearings in the GDI Engines undergo prolonged failure as metal debris circulates throughout the engine via the engine oil. Over time, and as a result of these contaminants in the oiling system, the connecting rod bearings begin to fracture. Once the connecting rod bearings fracture, large amounts of metal debris begins to accumulate in the engine oil. As a result, the oil becomes so contaminated with metal debris that the oil filter can no longer remove the plethora of contaminants and maintain the necessary oil pressure within the engine. This contaminated engine oil is recirculated throughout the engine by the oil pump, causing oil sludge, damage to the various engine components and eventually resulting in sudden and unexpected catastrophic engine failure. If the vehicle is being operated on the highway at the time of the engine failure, it will ultimately result in a high-speed stalling event.

-14-

63.     Additionally, as the connecting rod bearings continue to fracture, the acceptable tolerances between the bearings, the connecting rod, and the crankshaft rapidly deteriorate. Eventually, the Class Vehicles begin producing a "knocking" sound originating from the engine as a result of the deteriorating bearings. In some instances, the defective connecting rod bearings may eventually cause the piston to break through the engine block as a result of the deterioration.

64.     A photograph of a fractured connecting rod bearing removed from a GDI Engine is included below. As shown in the photograph, the bearing has fractured and worn away to the point of laying flush along the inside of the connecting rod. A large fracture is also plainly visible along the bottom left side of the bearing.



After the connecting rod bearings fail and metal debris is circulated throughout the engine via the engine oil, damage is caused to other key engine components. As pictured below, the main cap – which fastens the crankshaft to the engine – can also be damaged by the metal debris in the engine oil. After the main cap is damaged, play between the main cap and engine develops, which also leads to catastrophic engine failure.

65.     As a result of the defect, the Class Vehicles suffer from restricted and inadequate engine oil lubrication. As explained above, engines are designed to have oil

-15-

distributed throughout the engine through lubrication channels. When operating properly, the engine oil is distributed throughout the engine by the oil pump and then flows back to the oil pan where it is redistributed throughout the engine.

66.    In the Class Vehicles, the lubrication channels become clogged and restricted as a result of the defect, even under normal use and proper maintenance. When the lubrication channels clog, engine oil is unable to be pumped throughout the engine (through the oil pump) and is also unable to adequately return to the oil pan, causing a condition known as oil starvation. This results in insufficient lubrication throughout the Class Vehicle's engine, which causes premature wear of the engine components and catastrophic engine failure.

67.    The engine defect poses serious safety and security issues for operators and occupants of the Class Vehicles. By way of example, the California Department of Motor Vehicles asserts that stalled engines pose a significant safety risk and, as part of its safety curriculum, instructs how to properly respond to a stalled action in order to avoid further risk of injury.

68.    NHTSA takes a similar view of engine failure during vehicle operation. For instance, according to *Forbes*, in 2011 the NHTSA recalled certain Chrysler and Dodge vehicles due to "engine seizure because of connecting rod bearing failure . . . . Engine seizure could increase the risk of a crash."[3]

69.    Defendants failed to adequately research, design, test, and/or manufacture the Class Vehicles before warranting, advertising, promoting, marketing, and selling the Class Vehicles as suitable and safe for use in an intended and/or reasonably foreseeable manner.

### C. Previous GDI Engine Recalls

70.    In or around September 10, 2015, Hyundai Motor America publicly recalled certain model year 2011-2012 Sonata vehicles manufactured at Hyundai Motor

---

[3] http://www.forbes.com/sites/altheachang/2011/09/30/engine-problems-prompt-chrysler-recalls/ (last visited August 7, 2017).

Consolidated Class Action Complaint
Case No. 8:17-cv-02208-JLS-JDE

Manufacturing Alabama and equipped with the 2.4 liter and 2.0 liter GDI Engines. (*See* Exhibit 1.)

71.     According to the Hyundai GDI Recall, Hyundai determined that metal debris may have been generated from factory machining operations as part of the manufacturing of the engine crankshaft during December 11, 2009, to April 12, 2012. As a result, and according to the Hyundai GDI Recall:

> [i]f the debris is not completely removed from the crankshaft's oil passages, it can be forced into the connecting rod oiling passages restricting oil flow to the bearings. Since bearings are cooled by oil flow between the bearing and journal, a reduction in the flow of oil may raise bearing temperatures increasing the potential of premature bearing wear. A worn connecting rod bearing will produce a metallic, cyclic knocking noise from the engine which increases in frequency as the engine rpm increases. A worn connecting rod bearing may also result in illumination of the oil pressure lamp in the instrument cluster. If the vehicle continues to be driven with a worn connecting rod bearing, the bearing can fail, and the vehicle could stall while in motion.

72.     Hyundai went on to explain, in Safety Recall Report 15V-568, that it became aware of engine-related warranty claims in the field. Furthermore, "[t]he vast majority of those claims evidenced that customers were responding to substantial noise, or the vehicle's check engine light, and bringing their vehicles to service as a result of those warnings. Many customers also complained after the warranty was no longer available."

73.     As a result, Hyundai decided to issue a safety recall for approximately 470,000 model years 2011-2012 Sonata vehicles manufactured between December 11, 2009 and April 12, 2012 at Hyundai Motor Manufacturing Alabama and equipped with either a 2.0 liter or 2.4 liter Gasoline Direct Injection engine.

74.     The recall provided notification to owners of the issue, inspection, and

-17-

replacement of the engine assembly, as necessary, free of charge. Additionally, Hyundai increased the warranty for the engine sub-assembly (short block) to 10 years/120,000 miles for both original and subsequent owners.

75.    Between approximately May 25 and June 10, 2016, Kia (a company in which Hyundai owns a 33.88% stake in) followed Hyundai's lead and notified owners of 2011-14 MY Optima vehicles of issues with the same connecting rod wear which results in knocking noise from the same GDI engines. As a result, Kia provided all owners with a warranty extension on the "short block"[4] assembly for a period of 10 years starting from the date of first service or 120,000 miles. Kia also alerted owners that if the vehicles continue to be driven with a worn connecting rod bearing, the bearing can fail and may result in engine failure.

76.    In March, April and June 2017, Hyundai and Kia announced that they were recalling an additional 1.4 million vehicles with the GDI Engines because they received widespread reports that the engines could fail and stall, *i.e.* the same reason for the first recall. This recall included the 2013-2014 Hyundai Santa Fe, the 2013-2104 Sonata, the 2011-2014 Kia Optima, the 2011-2013 Kia Sportage, and the 2012-2014 Kia Sorento vehicles. (*See* Exhibits 2-3.)

77.    The Class Vehicles have not been recalled despite having the same engine and Plaintiffs and Members of the Class notifying Hyundai about their engines stalling and failing while being operated.

**D. Defendants' Knowledge of the GDI Engine Defect**

78.    Upon information and belief, Defendants regularly monitor the NHSTA databases as part of its ongoing obligation to identify potential defects in its vehicles. Examples of the complaints about Class Vehicles can be found below. NHTSA complaints establish that HMA knew, or should have known, of the engine defect ***at least***

---

[4] Per Kia's description, the short block consists of the engine block, crankshaft and bearings, connecting rods and bearings and pistons.

as early as October, 2011, based on publicly available information,[5] years before the Class Vehicles at issue in this litigation were sold through (1) Defendants' own records of customers' complaints, (2) dealership repair records, (3) records from NHTSA, (4) warranty and post-warranty claims, (5) pre-sale durability testing and part sales, and (6) other various sources.

79.     The experiences of the Plaintiffs are not isolated or outlying occurrences. The internet is also replete with examples of blogs and other websites where consumers have complained of the exact same engine defect within the Hyundai Class Vehicles and complaints from earlier model year Hyundai owners and lessees with the same engines. Upon information and belief, Defendant HMA, through (1) their own records of customers' complaints, (2) dealership repair records, (3) records from the National Highway Traffic Safety Administration ("NHTSA"), (4) warranty and post-warranty claims, (5) internal pre-sale durability testing, and (6) other various sources, were well aware of the engine defect but failed to notify consumers of the nature and extent of the problems with the GDI Engines or provide any adequate remedy.

80.     HMA routinely monitors the internet for complaints similar in substance to those quoted below. HMA's customer relations department routinely monitors the internet for customer complaints, and HMA has retained the services of third-parties to do the same. Further, the customer relations division regularly receives and responds to customer calls concerning, *inter alia*, product defects. Through these sources, HMA was made aware of the engine defect. The complaints also indicate HMA's knowledge of the defect and its potential danger.

81.     HMA is experienced in the design and manufacture of consumer vehicles. As an experienced manufacturer, HMA likely conducts testing on incoming batches of components, including the GDI Engine, to verify that the parts are free from defects and comply with HMA's specifications. Accordingly, HMA knew or should have known that

[5] NHTSA ID No. 10429442, supra at p. 52.

-19-

the engine used in the Hyundai Class Vehicles is defective and likely to fail prematurely, costing Plaintiffs and Class Members thousands of dollars in expenses.

82.    Moreover, HMA also should have known of the connecting rod bearing defect and insufficient lubrication channels because of the sheer number of reports of engine problems relating to the connecting rod bearings and/or lubrication channels. For instance, HMA's customer relations department, which interacts with Hyundai-authorized service technicians in order to identify potentially widespread vehicle problems and assist in the diagnosis of vehicle issues, has received numerous reports of engine problems relating to the connecting rod bearings and lubrication channels. Customer relations also collects and analyzes field data including, but not limited to, repair requests made at dealerships and service centers, technical reports prepared by engineers that have reviewed vehicles for which warranty coverage is requested, parts sales reports, and warranty claims data.

83.    HMA's warranty department similarly reviews and analyzes warranty data submitted by its dealerships and authorized technicians in order to identify defect trends in its vehicles. HMA dictates that when a repair is made under warranty (or warranty coverage is requested), service centers must provide HMA with detailed documentation of the problem and the fix that describes the complaint, cause, and correction, and also save the broken part in case HMA later determines to audit the dealership or otherwise verify the warranty repair. For their part, service centers are meticulous about providing this detailed information about in-warranty repairs to HMA because HMA will not pay the service centers for the repair if the complaint, cause, and correction are not sufficiently described.

84.    HMA knew or should have known about the engine defect because of the high number of replacement parts likely ordered from HMA. All Hyundai service centers are required to order replacement parts, including engines, piston assemblies, and connecting rod bearings directly from HMA. Other independent vehicle repair shops that service Class Vehicles also order replacement parts directly from HMA. HMA routinely

-20-

1   monitors part sales reports, and are responsible for actually shipping parts requested by

2   dealerships and technicians. Thus, HMA has detailed, accurate, and real-time data

3   regarding the number and frequency of replacement part orders. The sudden increase in

4   orders for the GDI Engines and engine components used in the Hyundai Class Vehicles

5   was known to HMA, and should have alerted it to the scope and severity of the engine

6   defect.

7          85.    In September 2012, HMA issued a technical service bulletin ("TSB") to its

8   authorized dealerships regarding an engine knocking noise. TSBs are documents used by

9   automotive manufacturers to inform dealership technicians about new information,

10  including vehicle problems, new repair procedures, and improved parts. In TSB No. 12-

11  EM-006, HMA acknowledged that the earlier model years of the Class Vehicles with

12  identical engines were defective and experienced a "knocking noise." As a result, HMA

13  directed dealers to blame the engine defect on the use of aftermarket oil filters and

14  instructed the dealers to replace the aftermarket oil filter with a genuine Hyundai oil

15  filter. The TSB also explained that this "repair" is not covered under warranty. HMA has

16  failed to provide any post-sale notification to owners and lessees regarding the use of

17  only genuine Hyundai oil filters in the Hyundai Class Vehicles. Instead, HMA attempts

18  to circumvent warranty obligations related to the engine defect by faulting customers for

19  use of an aftermarket oil filter. In May 2018, the Federal Trade Commission warned

20  Hyundai that this practice was unlawful.[6] The defective connecting rod bearings and oil

21  lubrication channels are not, however, caused by the use of an aftermarket engine oil

22  filter. Despite HMA's knowledge of this fact, HMA has not informed Plaintiffs of the

23  true cause of the defective connecting rod bearings and insufficient oil lubrication

24  channels.

25         86.    Representative examples of complaints on the NHTSA website regarding the

26  Hyundai Class Vehicles are included below (with emphasis supplied in capitalized bold

27  _____

28  [6] https://www.caranddriver.com/news/ftc-warning-to-hyundai-is-a-reminder-to-consumers-know-your-warranty-rights (last visited July 30, 2018).

-21-

letters)[7]:

### a. *Previous Model Year Hyundai GDI Engine Complaints*

Vehicle: 2011 Hyundai Sonata
Date Complaint Filed: 1/21/2015
Component(s): ENGINE
Date of Incident: 01/19/2015
NHTSA ID Number: 10678152
Manufacturer: Hyundai Motor America

> **SUMMARY:**
> **I WAS DRIVING DOWN THE HIGHWAY, THE ENGINE
> STARTED MAKING A KNOCKING NOISE**. NO LESS
> THAN 30 SECONDS LATER DID THE CAR'S ENGINE
> MAKE A LARGE BAG NOISE AND I RAN OVER WHAT
> FELT LIKE PARTS. I COASTED A WHILE DOWN THE
> ROAD AND FINALLY PULLED THE CAR OVER TO THE
> SIDE OF THE ROAD. UPON OPENING THE HOOD I
> DISCOVERED OIL ALL OVER THE INTAKE AND
> EXHAUST MANIFOLDS AS WELL AS THE RADIATOR. I
> CALLED HYUNDAI ROADSIDE ASSISTANCE AND HAD
> THE CAR TOWED TO FAULKNER HYUNDAI IN
> HARRISBURG PA ON 1/19/14. THEY PROVIDED A
> SERVICE LOANER AND SAID THEY WOULD GET BACK
> TO ME WITH AN UPDATE ON THE CAR. I WAITED
> UNTIL WEDNESDAY THE 21ST BEFORE CALLING
> THEM, ONLY TO FIND OUT THAT THE ENGINE HAD
> SEIZED AND THEY HAD ALREADY TAKEN PICTURES
> OF THE DAMAGE AND SENT THEM TO THE HYUNDAI
> PEOPLE TO SEEK WARRANTEE COVERAGE. THEY
> ALSO ASKED ME FOR MAINTENANCE RECORDS ON
> THE CAR. I CHANGE THE OIL MYSELF AND ALWAYS
> PUT IN FULL SYNTHETIC, SO THEY HAD ME SUBMIT
> RECEIPTS FROM THE AUTO PARTS STORE PROVING I
> BOUGHT OIL AND FILTERS OR THE SONATA. I AM
> NOW AWAITING RESOLUTION FROM HYUNDAI. WILL
> UPDATE ONCE I HAVE AN ANSWER FROM HYUNDAI.
> THIS IS A PRETTY SERIOUS SAFETY CONCERN, **THE**

---

[7] The foregoing complaints are reproduced as they appear on the NHTSA website. Any
typographical errors are attributable to the original author of the complaint.

Consolidated Class Action Complaint
Case No. 8:17-cv-02208-JLS-JDE

**ENGINE LET GO AT 60+MPH WITHOUT WARNING, WHEN IT LET GO IT BLEW OIL ALL OVER THE ENGINE COMPARTMENT AND I'M SURE ON THE ROAD AS WELL. LUCKY I WAS DRIVING EARLY IN THE MORNING AND THEIR WAS VERY LITTLE TRAFFIC.**

Vehicle: 2011 Hyundai Sonata
Date Complaint Filed: 1/06/2015
Component(s): ENGINE
Date of Incident: 01/06/2015
NHTSA ID Number: 10670454
Manufacturer: Hyundai Motor America

**SUMMARY:**
**I WAS TRAVELING DOWN A HIGHWAY WHEN MY ENGINE STARTED TO MAKE A KNOCKING SOUND**. THE CHECK ENGINE LIGHT CAME ON, AND WITHIN 10 SECONDS MY CAR STOPPED RUNNING. I WAS STILL MOVING WHEN THIS HAPPENED. I WAS FORTUNATE TO BE ABLE TO COAST TO A CLOSE BY SIDE ROAD. I AM GRAVELY CONCERNED THAT THIS COULD HAVE HAPPENED ON THE INTERSTATE AT HIGHER SPEEDS, AND THE POTENTIAL CONSEQUENCES OF SUCH. **I HAD THE CAR TOWED TO A DEALER, AND THEY TELL ME THE ENGINE IS SHOT**. I CONTACTED HYUNDAI CUSTOMER CARE, AND THEIR RESPONSE WAS "WHAT DO YOU WANT ME TO DO ABOUT IT." AFTER MORE RESEARCH, I HAVE FOUND NUMEROUS OTHER INSTANCES OF THIS ENGINE FAILURE. IF THIS IS AN ONGOING PROBLEM, I FEEL HYUNDAI SHOULD DO SOMETHING BEFORE SOMEONE GETS KILLED WHEN THIS HAPPENS. PLEASE NOTE I AM THE SECOND OWNER OF THIS CAR. THE MILEAGE AT JUST OVER 85,000 IS MAINLY HIGHWAY MILES, AND THE CAR IS SERVICED REGULARLY.

Vehicle: 2011 Hyundai Sonata

-23-

Date Complaint Filed: 10/26/2014
Component(s): ENGINE
Date of Incident: 10/01/2014
NHTSA ID Number: 10650011
Manufacturer: Hyundai Motor America

**SUMMARY:**

10/1/2014 @ 7:30PM EST - **WHILE DRIVING HOME, WAS AT A RED LIGHT WHEN THE CAR STALLED OUT. THEN A LOUD KNOCKING SOUND HAPPENED. *NO ENGINE LIGHT WAS ON*** IT IS VERY UNSAFE FOR THE ENGINE TO STALL OR JUST RANDOMLY SHUTOFF WHILE IN TRAFFIC. THERE WERE NO SIGNS OR WARNINGS, THE VEHICLE JUST STALLED. VEHICLE WAS NOT SAFE TO OPERATE. I HAD THE VEHICLE TOWED TO NORTHTOWNE HYUNDAI DEALER ON SHERIDAN DRIVE, BUFFALO NY.10/3/2014 @ 2:47PM EST - **NORTHTOWNE HYUNDAI DEALER CALLED ME SAID THAT I NEED TO REPLACE MY ENGINE BECAUSE THE PISTON POPPED.** I SAID WELL, MY CAR IS WELL WITHIN THE WARRANTY, ISN'T THIS COVERED? NORTHTOWNE HYUNDAI DEALER SAID THAT WE CAN'T SUBMIT YOUR WARRANTY CLAIM WITH OUT RECEIPTS OF YOUR MAINTENANCE FROM 5K MILES TO PRESENT. 10/3 - 10/13/2014 - CONTACTED OUR 3 LOCAL PLACES WE LIKE TO SEND OUR VEHICLES TO FOR COPIES OF OUR RECEIPTS. WITH NO PROBLEM WE WERE ABLE TO OBTAIN COPIES OF OUR LAST 7 OIL CHANGES AND GENERAL MAINTENANCE RECEIPTS. 10/14/2014 @ 2:00PM EST - MY HUSBAND GAVE NORTHTOWNE HYUNDAI DEALER OUR RECEIPTS AND HE STATED THAT HE WILL SUBMIT OUR CLAIM TO HYUNDAI. 10/24/2014 @ 8:59AM EST - "REGIONAL" / "CORPORATE" CALLED ME AND STATED "THE DISTRICT MANAGER WHO WOULD HAVE AUTHORIZED THE REPAIR, HAD THE DEALERSHIP PARTIALLY DISASSEMBLE THE ENGINE; TAKE OFF THE COVER FOR INSPECTION, AND THERE'S A CONDITION OF SLUDGE WHICH IS INDICATIVE OF EITHER THE MAINTENANCE INTERVALS NOT BEING FOLLOWED; OIL CHANGE

-24-

NOT FREQUENTLY ENOUGH OR POSSIBLY THE QUALITY OR GRADE OF THE OIL USED. IN EITHER CASE THESE IS NOT A MANUFACTURE DEFECT, SO HE HAS DENIED WARRANTY COVERAGE." I'VE ALSO ADDED MY COMPLAINT TO THE FOLLOWING:[ HTTP://WWW.CHIMICLES.COM/2011-HYUNDAI-SONATA-ENGINE-FAILURE-CLASS-ACTION-LAWSUIT ] **\*\* OUR LAST OIL CHANGE WAS 8/2/2014 AT 43K MILES \*\* WE HAD A CLEAN BILL OF HEALTH, NO ISSUES WERE REPORTED OR MAINTENANCE RECOMMENDED AT THAT TIME**.

---

Vehicle: 2012 Hyundai Sonata
Date Complaint Filed: 1/02/2015
Component(s): ENGINE
Date of Incident: 12/27/2013
NHTSA ID Number: 10669708
Manufacturer: Hyundai Motor America

**SUMMARY:**
**WAS DRIVING 35 MPH MAKING A TURN WHEN I HEARD A KNOCKING NOISE**. WAS SUBTLE AT FIRST. CHECKED OIL AND WAS LOW. ADDED 1 QRT OF OIL. DROVE HOME ABOUT 2 MILES AND KNOCKING BECAME EXTREMELY LOUD. **TOOK IT TO LEN STOLER HYUNDAI DEALERSHIP AND THEY STATED THAT EXHAUST MANIFOLD, DRIVE BELT, PISTONS, AND VALVES NEED TO BE REPLACED**. BASICALLY, $6300.00 WORTH OF WORK. CAR IS UP TO DATE ON ALL MAINTENANCE. NO OTHER ISSUES WITH CAR. WARRANTY DOES NOT COVER ENGINE DAMAGE AND NO HELP WAS GIVEN. I HAVE SEEN MANY OTHER COMPLAINTS ABOUT THE SAME ENGINE ISSUES. HYUNDAI SHOULD REPLACE!

---

Vehicle: 2013 Hyundai Santa Fe
Date Complaint Filed: 08/25/2013
Component(s): ENGINE

Date of Incident: 08/21/2013

Component(s): ENGINE

NHTSA ID Number: 10537110

Manufacturer: Hyundai Motor America

**SUMMARY:**

I WAS AT A LIGHT, AS I LET GO OF THE BRAKE, I HEARD A LOUD CLANKING SOUND AND THE FRONT OF THE CAR SHOOK AND THE CAR IMMEDIATELY DIED. I TRIED TO RESTART, MADE THE SAME SOUND AND DIED. CALLED ROADSIDE AND HAD VEHICLE TOWED TO DEALERSHIP AFTER AN HOUR AND A HALF BEING STUCK AT A LIGHT/INTERSECTION. **I WAS TOLD THE NEXT DAY THAT MY CAR SUFFERED A "CATASTROPHIC ENGINE FAILURE". NO CODES CAME UP. THEY DROPPED THE PAN AND SAID METAL PIECES FELL OUT!** I WAS LIVID! I'VE ONLY HAD THE CAR LESS THAN A MONTH, ONLY ABOUT 1500 MILES AND THE ENGINE WENT OUT! THANK GOD, I JUST DROPPED THE KIDS OFF TO SCHOOL AND THE ROAD WASN'T SO BUSY AS TO CAUSE AN ACCIDENT. I HAD NO WARNINGS FROM STARTING THE CAR, NO MESSAGES FROM BLUE LINK. SERVICE MANAGER AT DEALERSHIP STATES I WOULD NOT HAVE RECEIVED ANY WARNING, BECAUSE IT HAPPENED QUICK WHICH IS WHY IT IS LABELED AS "CATASTROPHIC FAILURE". WHAT IF THIS HAPPENED WITH MY KIDS IN THE CAR, ON THE FREEWAY, OR TRAVELING? SO A REPLACEMENT ENGINE IS BEING ORDERED FROM SOUTHERN CALIFORNIA. I DON'T TRUST IT. I REPORTED IT TO CORPORATE, WHICH SENT TO REGIONAL OFFICE. AND I AM AWAITING A RESPONSE. I ORIGINALLY REQUESTED A REPLACEMENT VEHICLE BUT AFTER READING THE COMPLAINTS ON NHTSA, I WANT MY MONEY BACK. I DON'T TRUST THIS CAR ANYMORE, I DON'T FEEL SAFE AND I DON'T WANT THE THOUGHT IN THE BACK OF MY MIND THAT THERE COULD BE A CHANCE OF SOMETHING ELSE HAPPENING! MY HUSBAND IS DEPLOYED RIGHT NOW, AND WHAT I

-26-

DESERVE IS SOME PEACE OF MIND AND NOT PUT
MYSELF OR MY CHILDREN AT JEOPARDY OF A
POSSIBLE REPEAT ENGINE FAILURE, CRACKED
FRONT AXLE, ISSUES WITH ACCELERATION OR
WHATEVER ELSE THAT CAN OCCUR THAT I'VE READ
ON THIS SITE. THIS IS A DEFINITE SAFETY ISSUE AND
SHOULD NOT HAVE TO WAIT FOR MORE
COMPLAINTS TO DO SOMETHING ABOUT IT! PLEASE
HELP ME RESOLVE THIS WITH GETTING MY MONEY
BACK! **A BRAND NEW CAR SHOULD NOT HAVE
SUFFERED A CATASTROPHIC ENGINE FAILURE!**
*TR

### b.   Class Vehicle Complaints

Vehicle: 2015 Hyundai Sonata
Date Complaint Filed: 08/16/2017
Component(s): ENGINE
Date of Incident: 07/29/2017
NHTSA ID Number: 11015695
Manufacturer: Hyundai Motor America
**SUMMARY:**
**MY ENGINE SUDDENLY STALLED WHILE DRIVING
DOWN A BUSY HIGHWAY WITH MY FAMILY**.
LUCKILY NO ONE WAS HURT THANK THE LORD! WE
WERE DRIVING DOWN THE HIGHWAY WHEN WE
STARTED TO HEAR A KNOCKING NOISE AND THE
CAR STARTED TO DECELERATE. WE NOTICED THERE
WAS WHITE SMOKE AS WELL. I WAS ABLE TO GET
THE CAR TO THE SHOULDER OF THE HIGHWAY. THE
CAR WOULD NOT RESTART SO WE CALLED
ROADSIDE ASSISTANCE AND SINCE IT WAS
SATURDAY EVENING, (AFTER HOURS) WE HAD PARK
THE CAR AT A NEARBY WALMART UNTIL MONDAY. I
HAD TO DO THE WHOLE ROADSIDE ASSISTANCE
SONG AND DANCE ALL OVER AGAIN MONDAY. THE
SERVICE DEPARTMENT WAS VERY
ACCOMMODATING. THEY WERE PLEASANT AND
EVEN PROVIDED A LOANER CAR. THEY INFORMED
ME THE ENGINE WOULD NEED TO BE REPLACED BUT

-27-

SINCE MY CAR ONLY HAD 34,000 MILES IT SHOULD BE COVERED. THEY SAID THEY JUST HAD TO GET IT APPROVED BY HYUNDAI FIRST. **AFTER A WEEK OF WAITING THEY CALLED ME UP AN TOLD ME HYUNDAI WOULD NOT BE COVERING THE VEHICLE DUE LACK OF MAINTENANCE (SIGHTED OIL CRUDE BUILD UP AS EVIDENCE) AND I WOULD NEED TO FORK OVER $5500**. I GOT THE OIL CHANGED AND MAINTAINED THE CAR BUT FAILED TO KEEP DOCUMENTATION. UPON RESEARCHING THE ISSUE, IT APPEARS HYUNDAI HAS A HISTORY OF NOT STANDING BY THEIR WARRANTY AND LEAVING THEIR CUSTOMERS HIGH AND DRY. IN FACT THEY JUST SETTLED A LAW SUIT FOR THE SAME EXACT THING. SO WE PAID UP, WAITED A WEEK FOR THE REPAIRS AND NOW I'M BACK UP HERE A WEEK LATER WITH ANOTHER ENGINE PROBLEM (OVERHEATING). LUCKILY WE ONLY HAD THE CAR FOR A WEEK BECAUSE THEY LIKELY WOULD'VE CHARGED ME AGAIN. WELL HOPEFULLY THEY WILL PROVIDE ME WITH A LOANER AGAIN BECAUSE THIS JUST DESTROYED MY WORK SCHEDULE FOR TODAY.

Vehicle: 2015 Hyundai Sonata
Date Complaint Filed: 07/06/2017
Component(s): ENGINE
Date of Incident: 7/02/2017
NHTSA ID Number: 11003408
Manufacturer: Hyundai Motor America
   **SUMMARY:**
   THE CONTACT OWNS A 2015 HYUNDAI SONATA. **THE CONTACT STATED THAT WHILE DRIVING, HE HEARD A RATTLING NOISE UNDER THE HOOD. THE CONTACT STATED ALSO MENTIONED WHILE TAKING THE VEHICLE TO BE SERVICED FOR AN OIL CHANGE, THE RATTLING NOISE BEGAN TO MAKE A LOUD KNOCKING NOISE**. THE CHECK ENGINE WARNING LIGHT ILLUMINATED. THE CONTACT MENTIONED THAT THE INDEPENDENT

-28-

MECHANIC INFORMED HIM THAT HE SHOULD NOT DRIVE THE VEHICLE AND THAT HE NEEDED TO HAVE THE ENGINE CHECKED. THE VEHICLE WAS THEN TAKEN TO DAVE HALLMAN HYUNDAI AT 2104 STATE ST, ERIE, PA 16503, (814) 452-6731 **WHERE IT WAS DIAGNOSED THAT THERE WAS AN OIL SLUDGE BUILD-UP AND THAT THE ENGINE NEEDED TO BE REPLACED**. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE BUT DID NOT OFFER ANY FURTHER ASSISTANCE. THE FAILURE MILEAGE WAS 56,150.

Vehicle: 2015 Hyundai Sonata
Date Complaint Filed: 01/24/2017
Component(s): ENGINE
Date of Incident: 01/21/2017
NHTSA ID Number: 10947369
Manufacturer: Hyundai Motor America
    **SUMMARY:**
    THE CONTACT OWNS A 2016 HYUNDAI SONATA. WHILE DRIVING APPROXIMATELY 35 MPH, THE ENGINE SEIZED WITHOUT WARNING. THE VEHICLE WAS TOWED TO A TOW FACILITY. THE VEHICLE WAS NOT DIAGNOSED OR REPAIRED. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE VIN AND FAILURE MILEAGE WERE UNKNOWN. UPDATED 05/30/17*LJ

Vehicle: 2015 Hyundai Sonata
Date Complaint Filed: 12/05/2016
Component(s): ENGINE
Date of Incident: 12/03/2016
NHTSA ID Number: 10929989
Manufacturer: Hyundai Motor America
    **SUMMARY:**
    **WHILE STATIONARY I NOTICED THE CAR'S ENGINE SOUNDED LIKE IT WAS TICKING**. I DROVE

-29-

OFF ABOUT 35 MILES PER HOUR WHEN MY 2015 HYUNDAI SONATA LIMITED STALLED WHILE DRIVING. THE CAR STARTED SHAKING WHILE ATTEMPTING TO SPEED UP TO KEEP THE VEHICLE RUNNING. I HAD MY PASSENGER WHO WITNESSED THE INCIDENT AND WE RECORDED USING THE CELL PHONE TO RECORD THE INCIDENT. THE ENGINE LIGHT CAME ON THEN OFF AGAIN. EVENTUALLY IT CUT OFF COMPLETELY. I HAD TO RESTART AND THE SPEED OF THE VEHICLE WOULD NOT GO PAST 50 MPH. THE ENGINE SHOOK THE ENTIRE CAR AND SOUNDED LIKE THE GEARS DID NOT WANT TO SHIFT. THE DEALER WAS NOT ABLE TO REPLICATE THE ISSUE OR FIND ANY CODES ON THEIR SYSTEM. THIS SAME THING HAPPEN TO MY 2011 SONATA IN WHICH HYUNDAI REFUSE TO PAY IN A CLASS ACTION LAWSUIT BECAUSE I TRADED OUT OF THE VEHICLE A YEAR AFTER THEY REPLACED THE ENGINE. **THE ENGINE ALSO STALLED WHILE TRAVELING AT HIGHWAY SPEED AND STARTED SMELLING LIKE AN ELECTRICAL FIRE WHILE SMOKE CAME FROM UNDER THE ENGINE**. I HAD TO HAVE IT TOWED BACK TO THE DEALERSHIP. *TR

Vehicle: 2015 Hyundai Sonata
Date Complaint Filed: 11/23/2016
Component(s): ENGINE
Date of Incident: 11/10/2016
NHTSA ID Number: 10927713
Manufacturer: Hyundai Motor America
**SUMMARY:**
MY WIFE HELEN DRIVES TO WORK 35 MILES EACH WAY DAILY, **SHE STARTED HEARING A RATTLING NOISE THAT CAME FROM THE ENGINE AREA**. THE NOISE PERSISTED FOR A FEW DAYS AND WAS OBSERVED DURING HER COMMUTE TO WORK TWICE. HUSBAND TEST DROVE CAR AS WELL AND COMFIRMED A RATTLING NOISE. CAR TOWED TO PREMIER HYNDAUI 3480 NAGLEE ROAD, TRACY ,

-30-

CALIFORNIA,95304. SEVICE TECHNITIAN COMFIRMED IN WRITING VEHICLE HAS A NON REPAIRABLE ENGINE, **METAL EXTRACTS WERE FOUND INSIDE THE OIL PAN AND THE DEALERSHIP ADVISED ENGINE IS NO GOOD AND NEEDS TO BE REPLACED**.

---

Vehicle: 2015 Hyundai Sonata
Date Complaint Filed: 08/24/2016
Component(s): ENGINE
Date of Incident: 08/05/2016
NHTSA ID Number: 10898269
Manufacturer: Hyundai Motor America
    **SUMMARY:**
    HIGH SPEED ENGINE STALL: WHILE DRIVING AT
    HIGHWAY SPEEDS ON AUGUST 5, 2016, MY VEHICLE
    SUDDENLY LOST POWER WHILE DRIVING ON THE
    HIGHWAY, WHICH RESULTED IN VEHICLE COMING
    TO A STOP. ON ATTEMPTING TO RESTART THE
    ENGINE, THE ENGINE HAD SEIZED AND WOULD NOT
    RESTART AND THE RESTART ATTEMPT WAS
    ACCOMPANIED BY NOISE FROM THE ENGINE AND
    VIBRATIONS CAUSING THE ENTIRE VEHICLE TO
    SHAKE. VEHICLE HAD TO BE TOWED TO THE DEALER
    FOR REPAIRS

---

Vehicle: 2015 Hyundai Sonata
Date Complaint Filed: 03/18/2016
Component(s): ENGINE
Date of Incident: 03/17/2016
NHTSA ID Number: 10850477
Manufacturer: Hyundai Motor America
    **SUMMARY:**
    THE CONTACT OWNS A 2015 HYUNDAI SONATA.
    WHILE EXITING THE VEHICLE AT 40 MPH, THE
    VEHICLE STALLED WITHOUT WARNING. THE
    VEHICLE WAS ABLE TO BE PULLED OVER TO THE
    SIDE OF THE ROAD, BUT COULD NOT BE RESTARTED.

-31-

THE VEHICLE WAS TOWED TO A DEALER WHERE IT WAS DIAGNOSED THAT THE ENGINE SEIZED AND NEEDED TO BE REPLACED. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS APPROXIMATELY 4,000.

Vehicle: 2015 Hyundai Sonata
Date Complaint Filed: 02/02/2016
Component(s): ENGINE
Date of Incident: 01/31/2016
NHTSA ID Number: 10823709
Manufacturer: Hyundai Motor America
**SUMMARY:**
I PURCHASED A NEW 2015 HYUNDAI SONATA 8 MOS AGO AND TWO DAYS AGO WHILE DRIVING ON A LOCAL HIGHWAY I HEARD A LOUD KNOCKING SOUND WHILE ACCELERATING. YESTERDAY I TOOK IT TO THE HYUNDAI DEALER SERVICE CTR WHERE I PURCHASED THE VEHICLE AND I WAS TOLD THAT I NEED A NEW ENGINE DUE TO THERE BEING METAL SHAVINGS IN THE MOTOR.

87.     Upon information and belief, HMA regularly monitors these NHSTA databases as part of its ongoing obligation to identify potential defects in its vehicles. NHTSA complaints establish that HMA knew, or should have known, of the engine defect *at least* as early as August 25, 2013,[8] before the Class Vehicles at issue in this litigation were sold. Upon information and belief, Defendant became aware of the engine defect earlier than August 25, 2013 (as early as 2011) through: (1) Defendant's own records of customers' complaints, (2) dealership repair records, (3) records from NHTSA, (4) warranty and post-warranty claims, (5) pre-sale durability testing and part sales, and (6) other various sources.

**1.      Kia's Knowledge of the Engine Defect**

---

[8] *See* NHTSA ID Number  10537110.

Consolidated Class Action Complaint
Case No. 8:17-cv-02208-JLS-JDE

88.    The internet is also replete with examples of blogs and other websites where consumers have complained of the exact same engine defect within Kia vehicles with the same engines. Indeed, because Hyundai Motor Company holds approximately 33.8% of KMC's stock, the two regularly communicate about parts common between their vehicles and suspected defects in those vehicles, including communication regarding potential defects in the GDI engines. Thus, when KMA became aware of the defective GDI Engines, HMA became aware as well.

89.    Representative examples of complaints on the NHTSA website regarding Kia vehicles with the defective GDI Engines are included below (with emphasis supplied in capitalized bold letters)[9]:

Vehicle: 2015 Kia Optima
Date Complaint Filed: 05/10/2017
Date of Incident: 04/28/2017
Component(s): ENGINE
NHTSA ID Number: 10984694
    **SUMMARY**:
    ENGINE LOCKED UP DURRING ACCELERATION TO 40
    MPH WHY MERGING INTO TRAFFIC FOUND OUT
    ENGINE HAS A BENT ROD. OIL AND COOLENT WHERE
    SUFFICINT BUT KIA WILL NOT FIX OR REPLACE.
    COULD OF CAUSED MY WIFE TO CRASH OR BE HIT BY
    TRAFFIC

Vehicle: 2015 Kia Optima
Date Complaint Filed: 05/03/2017
Date of Incident: 11/26/2016
Component(s): ENGINE
NHTSA ID Number: 10983354
    **SUMMARY**:
    ENGINE LIGHT CAME ON, THEN THE OIL LIGHT. I
    STOPPED TO CHECK OIL. THERE WAS NO OIL ON THE

---

[9] The foregoing complaints are reproduced as they appear on the NHTSA website. Any typographical errors are attributable to the original author of the complaint.

-33-

DIPSTICK. I CHECKED FOR LEAKS. FOUND NONE. I ADDED 2 QUARTS. THE ENGINE WAS KNOCKING. I TOOK IT TO THE DEALERSHIP. MY CAR WAS UNDER WARRANTY. BUT WOULDN'T REPLACE IT. IT WOULD COST ME $7200. SO I TRIED TO DRIVE IT HOME, AND IT QUIT.THE ENGINE SHUT DOWN. I HAD TO HAVE IT TOWED HOME. THIS WAS IN NOVEMBER 2016. AND IT IS STILL DOWN. THEN I HEARD KIA IS GETTING A CLASS ACTION LAWSUIT AGAINST THEM, FOR OIL FLOW ISSUES. I'M STILL PAYING ON THE CAR. I FINANCED THROUGH MY CREDIT UNION. SO THEY ALREADY GOT THERE MONEY. I THINK THAT IS WHY THEY ARE SCREWING ME OVER. TO BE CLEAR I HAD JUST LEFT THE DEALERSHIP WHEN IT QUIT. IT NEVER MADE A SOUND, THE DEALERSHIP HAD IT 3 DAYS.

Vehicle: 2015 Kia Optima
Date Complaint Filed: 01/09/2017
Date of Incident: 11/01/2016
Component(s): ENGINE
NHTSA ID Number: 10943930
**SUMMARY**:
2015 KIA OPTIMA WAS OUT OF OIL @ 22,000 MILES AND NO INDICATOR LIGHT HAD GONE ON WHEN IT WAS TAKEN TO AN OIL CHANGE. THE OIL CHANGE PLACE WAS THE ONE THAT INDICATED THAT THE VEHICLE HAD NO OIL IN IT. IT STARTED MAKING SOME RATTLING NOISE SPECIALLY GOINT UPHILL SO I TOOK IT IN TO KIA SERVICE DEPARTMENT. THEY DIAGNOSED IT WITH "SLUDGE" IN THE ENGINE AND ENGINE WOULD HAVE TO BE REPLACED. I HAD TO PROVE 3 PREVIOUS RECEIPTS OF OIL CHANGES OTHERWISE THE WARRANTY WOULD NOT COVER IT. I DO NOT HAVE THOSE RECEIPTS AND 16 DAYS LATER TOOK IT TO THE SAME PLACE I DID MOST RECENT OIL CHANGE BECAUSE OIL LIGHT HAD TURNED ON. THE VEHICLE AGAIN HAD NO OIL IN IT. THE TOPPED IT OFF BUT MENTIONED THAT IT WAS NOT NORMAL FOR SUCH A RECENT MODEL TO BE

-34-

BURNING OIL. VEHICLE IS STILL RUNNING BUT MAKES RATTLING NOISE ONCE IN A WHILE, PRODUCES WHITE SMOKE OUT OF EXHAUST PIPE AND I HAVE TO PUT OIL IN IT EVERY COUPLE OF DAYS. I CANNOT AFFORD TO BUY A NEW ENGINE. I AM A SINGLE MOM AND NEEDS A RELIABLE VEHICLE TO GET TO WORK.

Vehicle: 2015 Kia Optima
Date Complaint Filed: 11/03/2016
Date of Incident: 11/02/2016
Component(s): ENGINE
NHTSA ID Number**:** 10923952
   **SUMMARY**:
   THE VEHICLE WAS IN MOTION AND HAD AN OIL CHANGE THE PREVIOUS DAY. THE VEHICLE LOST POWER AND AN AUDIBLE CLICKING OR TAPPING NOISE CAME ON WHILE DRIVING ON THE HIGHWAY. MY WIFE HAD JUST ENOUGH TIME TO PULL OFF INTO A LOCAL BUSINESS AND PARKED THE CAR. I TOOK IT TO KIA AND THEY ADVISED THERE WAS "SLUDGE" IN THE ENGINE AND WE HAD NOT BEEN MAINTAIN THE VEHICLE PROPERLY. OFFERED TO PRODUCE RECORDS BUT THEY ADVISED THEY STILL WOULD NOT COVER IT. *TR

Vehicle: 2015 Kia Optima
Date Complaint Filed: 09/29/2016
Date of Incident: 07/22/2016
Component(s): ENGINE
NHTSA ID Number: 10910586
   **SUMMARY**:
   ENGINE FAILURE AT 15 MONTHS OLD AND 42,000 MILES. KIA DENIED WARRANTY COVERAGE BECAUSE I COULD NOT PROVE OIL CHANGES. SAME COMPLAINT AS THOUSANDS OF OTHER KIA VEHICLES, HAPPENED ABRUPTLY, CAR STARTING

-35-

MAKING LOUD RATTLING NOISE ON ACCELERATION
WHILE DRIVING, NO WARNING, SLUDGE IN ENGINE. I
HAD TO PAY OUT OF POCKET FOR A NEW ENGINE TO
BE INSTALLED WITH NO ASSISTANCE FROM KIA OR
MY LOCAL DEALERSHIP.

Vehicle: 2015 Kia Optima
Date Complaint Filed: 09/09/2016
Date of Incident: 06/10/2016
Component(s): ENGINE
NHTSA ID Number: 10905150
    SUMMARY:
    MY 2015 KIA OPTIMA HAS 23000 MILES.. I COULDN'T
    REMEMBER WHEN I HAD THE OIL CHANGED,BUT I
    WAS DRIVING ON 75 COMING FROM FLA. THE AC
    STOP WORKING AND THEN SHORTLY AFTER THAT
    THE CAR STARTED TO SLOW DOWN. IT FINALLY
    CAME TO A COMPLETE STOP, WHEN I GOT IT TO THE
    KIA DEALERSHIP THEY INFORMED ME THAT THE
    ENGINE HAD SEIZED .BECAUSE THE SAID I COULD
    NOT PROVE THAT THE OIL HAD BEEN CHANGED,THE
    WARRANTY WOULD NOT COVER IT. I BOUGHT THE
    CAR BRAND NEW. ONLY HAD IT 15 MONTHS. THERE
    WAS NO WARNING LIGHTS OR ANY SIGNS OF
    TROUBLE .KIA WILL NOT FIX IT, THEY WANT
    ALMOST 8.000 TO PUT IN A NEW ENGINE.

Vehicle: 2015 Kia Optima
Date Complaint Filed: 09/07/2016
Date of Incident: 09/04/2016
Component(s): ENGINE
NHTSA ID Number: 10904330
    SUMMARY:
    AS I WAS DRIVING MY 2015 OPTIMA TO THE STORE
    MY CHECK ENGINE LIGHT CAME ON. THE NEXT DAY I
    STARTED MY CAR AND HEARD A RATTLING OR
    TICKING SOUND, THIS WAS ON LABOR DAY, SO I

-36-

TURNED MY CAR OFF AND CALLED THE
DEALERSHIP. DUE TO HOLIDAY THE SERVICE DEPT
WAS NOT OPEN. I CALLED THEM AGAIN ON TUESDAY
SEPT 6TH AND WAS ADVISED THEY WOULD HAVE IT
TOWED. I RECEIVED A PHONE CALL ON TUESDAY
EVENING STATING MY MOTOR HAS SLUDGE AND
NEEDS TO BE REPLACED.

---

Vehicle: 2015 Kia Optima
Date Complaint Filed: 09/06/2016
Date of Incident: 09/03/2016
Component(s): ENGINE
NHTSA ID Number: 10904201
    **SUMMARY**:
    2015 KIA OPTIMA, ONLY 47K MILES....ENGINE
FAILURE...THE DEALERSHIP SAYS ITS SLUDGE... AND
I HAVE TO PROVIDE ALL MY MAINTENANCE
RECORDS. IT STARTED WITH WHITE SMOKE COMING
OUT OF THE TAILPIPE AND LOUD RATTLING NOISE
WHEN I ACCELERATED, THEN THIS PAST SATURDAY,
IT STARTED TO SHAKE VIOLENTLY AND THE CHECK
ENGINE LIGHT WENT ON . I HAD TO GET IT TOWED.
THIS IS KIA'S FAULT!!! NOT MINE. I'VE DONE THE
SAME ROUTINE MAINTENANCE ON MY TOYOTA AND
HONDA WHICH HAD OVER 100K MILES WITH NO
PROBLEMS! I AM BEING TOLD BY KIA THAT IT WON'T
BE COVERED UNDER THE WARRANTY.

---

Vehicle: 2015 Kia Optima
Date Complaint Filed: 06/15/2016
Date of Incident: 06/04/2016
Component(s): ENGINE
NHTSA ID Number: 10874312
    **SUMMARY**:
    MY 2015 KIA OPTIMA HAS 26,456 MILES. THE LAST OIL
CHANGE WAS PERFORMED AT 26,064 MILES. ON 6/4/16
WHILE DRIVING APPROX. 50MPH IN 3 LANE TRAFFIC

-37-

THE ENGINE SEIZED UP, CAR SHUT DOWN AND
INTERIOR FILLED WITH SMOKE. HAD VEHICLE
TOWED TO KIA. WAS TOLD IT NEEDS A NEW ENGINE
DUE TO SLUDGE IN THE OIL. KIA IS REFUSING TO
HONOR THE WARRANTY BECAUSE I CANNOT
PRODUCE RECEIPTS FOR PREVIOUS OIL CHANGES. I
HAVE RESEARCHED AND MANY OTHER KIA
VEHICLES ARE HAVING VERY SIMILAR PROBLEMS
WITH LOW MILES! THERE HAS TO BE SOMETHING
WRONG THAT KIA IS NOT AWARE OF OR IS JUST NOT
WILLING TO ADMIT. NOT ONLY WILL THEY NOT FIX
MY VEHICLE BUT I FEAR SOMEONE IS GOING TO GET
HURT OR EVEN KILLED. I INFORMED KIA OF MY
CONCERN BUT THEY DID NOT SEEM TO CARE.

Vehicle: 2015 Kia Optima
Date Complaint Filed: 05/24/2016
Date of Incident: 10/15/2015
Component(s): ENGINE
NHTSA ID Number: 10870505
   **SUMMARY**:
   TL* THE CONTACT OWNS A 2015 KIA OPTIMA. WHILE
   DRIVING 60 MPH, SMOKE EMITTED FROM THE
   ENGINE COMPARTMENT WITHOUT WARNING. THE
   VEHICLE WAS TAKEN TO THE DEALER. THE
   TECHNICIAN DIAGNOSED THAT THE NUMBER TWO
   CYLINDER WAS DEFECTIVE AND NEEDED TO BE
   REPLACED. THE VEHICLE WAS NOT REPAIRED. THE
   FAILURE MILEAGE WAS 58,000.

Vehicle: 2015 Kia Sorento
Date Complaint Filed: 04/25/2017
Date of Incident: 04/11/2017
Component(s): ENGINE
NHTSA ID Number: 10980556
   **SUMMARY:**
   WE STARTED HAVING PROBLEMS AT ABOUT 20,000
   MILES.THE CAR WAS PULLING AS WE TRIED TO

-38-

ACCELERATE AND SMOKE WOULD BLOW OUT OF THE TAILPIPE. WE TOOK IT INTO THE DEALERSHIP IN WHICH THEY STATED WE HAD SLUDGE IN THE ENGINE. THEY STATED TO MAINTAIN REGULAR OIL CHANGES, BUT WE WOULD NEED A NEW ENGINE. 4 MONTHS LATER THEY DID AN OIL CHANGE AND STATED THE OIL WAS CLEAR OF SLUDGE. WITHIN 2 WEEKS, WE HEARD A LOUD BANGING SOUND FROM THE ENGINE, IT GOT LOUDER AND WAS BARELY GOING 5 MILES/HR. WE WERE ON A MAJOR ROAD AND WERE ABLE TO PULL INTO A PARKING LOT. WE HAD IT TOWED TO THE DEALERSHIP (CENTRAL KIA OF PLANO). WITHOUT EVEN LOOKING AT IT, THEY SAID IT WAS THE SLUDGE IN THE ENGINE AND WE NEEDED OUR ENGINE REPLACED ($7000). THEY WOULD NOT EVEN LOOK UNDER THE HOOD UNTIL WE PAID THEM $400 TO OPEN IT UP. THEY STATED THE WORK WOULD NOT BE COVERED UNDER OUR WARRANTY EVEN THOUGH WE ARE ONLY 2 YEARS INTO IT AND AROUND 30,000 MILES. I CALLED KIA CONSUMER AFFAIRS (800-333-4542) AND THEY CONTACTED THE DEALERSHIP AND THAT'S WHEN THEY FINALLY OPENED THE HOOD AND FOUND SLUDGE IN THE ENGINE. THEY TOOK PICTURES AND SENT IT TO KIA "TECH" IN WHICH OUR CLAIM WAS DECLINED DUE TO "LACK OF MAINTENANCE". WE PROVIDED RECEIPTS FOR OUR OIL CHANGES. THEY DID NOT ACCEPT 3 OF THEM BECAUSE THEY DID NOT HAVE A "PO#" AND THEY DID NOT ACCEPT 2 OF MY CREDIT CARD RECEIPTS. I TOLD KIA CONSUMER AFFAIRS THE 2015'S ARE HAVING THE SAME ISSUES AS THE RECALLS 2011-2014. SHE STATED THE DMV IS COLLECTING INFORMATION ON THE 2015'S. EVERYONE CALL CONSUMER AFFAIRS!! THERE IS AN ENGINE PROBLEM WITH THE 2015'S AND KIA IS NOT STANDING BY THEIR WARRANTY. WE HAVE NOT BEEN PROVIDED A RENTAL CAR. I HAVE ALSO ESCALATED THIS ISSUE TO KIA'S "ESCALATION DEPT" IN WHICH THEY STATED TO GET THEM MORE RECEIPTS AND "TECH" CAN REVIEW THE CASE

-39-

AGAIN! I HAVE GATHERED MORE RECEIPTS
INCLUDING HOW OFTEN WE WERE PUTTING OIL IN
BETWEEN OIL CHANGES.

---

Vehicle: 2015 Kia Sorento
Date Complaint Filed: 08/24/2016
Date of Incident: 07/01/2016
Component(s): ENGINE
NHTSA ID Number: 10898199
     SUMMARY:
     I WAS DRIVING DOWN THE ROAD WITH MY 4
CHILDREN IN THE CAR AT 45 MPH WHEN ALL OF A
SUDDEN MY CAR COMPLETELY LOST POWER.
LUCKILY I WAS ABLE TO COAST TO THE SIDE OF THE
ROAD. IT WAS OVER A 100 DEGREES OUTSIDE AND
MY 4 KIDS UNDER 6 HAD TO SIT AND WAIT ON A RIDE
IN THE HEAT. THE CAR HAS 40,000 MILES ON IT AND
HAS HAD 7 OIL CHANGES, OF WHICH I HAVE
PROVIDED THE RECEIPTS FOR. THERE IS ENGINE
SLUDGE DESPITE THE FACT THAT THE OIL WAS
CHANGED MORE FREQUENTLY THAN THE MANUAL
SUGGESTED 7500 MILES,

---

Vehicle: 2015 Kia Sorento
Date Complaint Filed: 06/23/2017
Date of Incident: 12/01/2014
Component(s): ENGINE
NHTSA ID Number: 11000887
     SUMMARY:
     (AMENDMENTS TO ODI#S: 10668775 & 10663356 -
UPDATE)

     ON 12/01/2014, I WAS IN A 2015 KIA SORENTO LX
(ENTERPRISE INSURANCE RENTAL) TRAVELING ON
CRABB RIVER ROAD, (A CITY STREET) SUGARLAND,
TEXAS. I FULLY STOPPED AT THE TRAFFIC LIGHTS
BECAUSE IT WAS RED. ONCE LIGHTS TURNED GREEN,
I PUT THE VEHICLE IN MOTION BY STEPPING ON THE
GAS PEDAL TO ACCELERATE BUT THE CAR FELT
REALLY SLUGGISH SO I GAVE IT MORE GAS IN

-40-

ORDER TO GAIN ENOUGH SPEED AS I WAS ABOUT TO
GO OVER SOME RAILROAD TRACKS (APPROX. 55+
MPH) WHICH WERE ON A ROAD THAT WAS ON AN
INCLINE. RIGHT AS THE CAR REACHED THE TRACKS,
THE ENGINE STALLED, THE STEERING WHEEL
LOCKED AND I LOST ALL CONTROL OF THE VEHICLE
AND IT DOVE INTO A DITCH; PLOWED DIRECTLY
INTO A STEEL BILLBOARD POLE WHICH WAS
CEMENTED INTO THE GROUND BECAUSE THE
BRAKES BECAME UNRESPONSIVE. THERE WERE NO
WARNING LIGHTS ON THE DASH PRIOR TO THE
CRASH. EVEN THOUGH I WAS FULLY BUCKLED, THE
SEATBELT DID NOT PREVENT MY HEAD FROM
VIOLENTLY HITTING THE WINDSHIELD AND
BOUNCING OFF THE STEERING WHEEL SINCE NONE
OF THE 8 AIRBAGS DEPLOYED. I SUFFERED NEAR
FATAL INJURIES INCLUDING A BROKEN BACK (L2
FRACTURE), SPINAL CORD, HEAD, EYE, CHIN, JAWS,
NECK AND HIP; BROKEN TEETH, PERMANENT
DISFIGURATION (18 STITCHES), SOME VISION &
HEARING LOSS FROM NERVE DAMAGE AND PTSD,
MENTAL ANGUISH, CHRONIC MIGRAINES, EXTREME
STRESS, TERRIBLE RECURRING NIGHTMARES, ETC.
I'M A 5'2" WOMAN AND MY CHEST WAS PINNED TO
THE STEERING WHEEL UPON THE IMPACT WITH THE
POLE AND THE FIRE DEPT. HAD TO FREE ME AND
LIFT ME UP TO THE EMTS. I WAS TRANSPORTED TO
THE ER OF A HOSPITAL BY AMBULANCE AND LATER
TRANSFERRED TO THE TRAUMA UNIT OF MEMORIAL
HERMANN HOSPITAL DUE TO THE SEVERITY OF MY
INJURIES.

---

Vehicle: 2016 Kia Sorento
Date Complaint Filed: 10/12/2017
Date of Incident: 10/09/2017
Component(s): ENGINE
NHTSA ID Number: 11033167
**SUMMARY:**
VEHICLE STALLED WHILE DRIVING WITH SPEED ON
NORMANDIE AVE IN TORRANCE CALL TRIPLE FOR

-41-

THEM TO TOW IT TO KIA DEALER. RECEIVED A
CALLED FROM DEALER SAYING THE ENGINE BLOWN
OUT. AT 50000 MILES. TECHNICIAN FROM KIA
MENTIONED IT'S A RECALL.

Vehicle: 2015 Kia Sportage
Date Complaint Filed: 09/13/2017
Date of Incident: 08/23/2017
Component(s): ENGINE
NHTSA ID Number: 11022956
    **SUMMARY:**
    I WAS DRIVING ON THE FREEWAY AT 65 MPH IN THE
SLOW LANE WHEN THE CHECK ENGINE LIGHT
SUDDENLY CAME ON, THEN ALL THE SERVICE
LIGHTS LIT UP AND THE CAR BEGAN LOSING POWER.
LUCKILY, I WAS COMING TO AN OFFRAMP AND WAS
ABLE TO MAKE IT TO THE END OF THE OFFRAMP
(SIGNAL) BEFORE THE CAR DIED COMPLETELY. WE
HAD TO PUSH THE CAR OUT OF THE ROAD AND
AROUND THE CORNER TO A CURB AS WE WERE
BLOCKING ONE SIDE OF THE OFFRAMP. HAD I NOT
BEEN IN THE SLOW LANE AND NEAR AN OFFRAMP,
THE CAR WOULD HAVE DIED ON THE FREEWAY
WHICH WOULD HAVE BEEN A MUCH MORE
DANGEROUS SITUATION. WAS TOLD BY KIA SERVICE
DEPT. THAT THE ENGINE BLEW BECAUSE OF SLUDGE
IN THE OIL.

Vehicle: 2011 Kia Optima
Date Complaint Filed: 10/16/2014
Component(s): ENGINE
Date of Incident: 10/12/2014
NHTSA ID Number: 10645013
Manufacturer: Kia Motors America
Vehicle Identification No. (VIN): KNAGN4A61B5 . . .
    **SUMMARY:**
    TL* THE CONTACT OWNS A 2011 KIA OPTIMA. THE
CONTACT STATED THAT **WHILE DRIVING 75 MPH AT
NIGHT WITH THE CRUISE CONTROL ACTIVATED,
THERE WAS SMOKE COMING FROM UNDER THE**

-42-

**HOOD AND THE VEHICLE ENGULFED INTO FLAMES.** THE FIRE DEPARTMENT EXTINGUISHED THE FIRE. A POLICE/FIRE REPORT WAS FILED AND THERE WERE NO INJURIES REPORTED. THE VEHICLE WAS DESTROYED AND THE CAUSE OF THE FIRE WAS NOT DETERMINED. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS 51,500.

Vehicle: 2011 Kia Optima
Date Complaint Filed: 04/16/2015
Date of Incident: 03/31/2015
Component(s): ELECTRICAL SYSTEM, ENGINE
NHTSA ID Number: 10706020
    SUMMARY:
    TL* THE CONTACT OWNS A 2011 KIA OPTIMA. **WHILE TRAVELING AT APPROXIMATELY 50 MPH AND ATTEMPTING TO SLOW DOWN FOR A STOP LIGHT, THE VEHICLE STALLED WITHOUT WARNING AND FAILED TO RESTART.** THE VEHICLE WAS TOWED TO AN AUTHORIZED DEALER WHO DIAGNOSED THAT THE STARTER BURNED OUT AND THAT THE ENGINE SEIZED. THE DEALER REPLACED THE STARTER AND WAS NOT ABLE TO DIAGNOSE THE SOURCE OF THE FAILURE. THE CONTACT WAS INFORMED THAT A MORE EXTENSIVE DIAGNOSIS WAS REQUIRED AND THE ENGINE NEEDED TO BE TAKEN APART. THE ENGINE FAILURE WAS NOT REPAIRED BY THE DEALER. THE VEHICLE WAS NOT ABLE TO BE DRIVEN. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS NOT AVAILABLE.

Vehicle: 2011 Kia Optima
Date Complaint Filed: 05/29/2015
Date of Incident: 05/27/2015
Component(s): ENGINE, SERVICE BRAKES

-43-

NHTSA ID Number: 10722186

**SUMMARY:**

I HAVE A 2011 KIA OPTIMA LX, 2.4 LITER ENGINE. ALWAYS KEEP UP ON THE MAINTENANCE AND OIL CHANGES, CAR IS IN GREAT SHAPE. I WAS NOT EXPERIENCING ANY ISSUES, WARNINGS, NO CHECK ENGINE/OIL LIGHTS, NO NOISES, ABSOLUTELY NOTHING. **THEN LAST NIGHT MY CAR JUST SPUTTERED AND CUT OFF WHILE BEING DRIVEN. APPARENTLY WHEN THE ENGINE CUTS OFF, SO DOES THE BRAKES. THERE WAS NO WAY TO PUSH THE BRAKES, SO I HAD TO TRY TO SAFELY COAST TO THE SIDE OF THE ROAD, WITH NO BRAKES AND NO POWER STEERING.** I FINALLY PULLED OVER, TRIED TO RESTART THE CAR AND THERE WAS SUCH A LOUD KNOCKING NOISE, AND SOME SQUEALING NOISES AS WELL. THE CAR WILL NO LONGER START EITHER. I HAD A MECHANIC LOOK AT IT TODAY AND SAYS THE ENGINE IS "JUST GONE." NO EXPLANATIONS AT ALL. I VERIFIED THAT THE KIA OPTIMA AND THE HYUNDAI SONATA ARE THE SAME MANUFACTURER AND USE THE SAME ENGINES. I SEE THERE ARE WAY MORE COMPLAINTS ABOUT THE 2011 HYUNDAI SONATA WITH THIS SAME ISSUE. I WILL TRY TO NOTIFY KIA AND SEE IF THEY ARE WILLING TO STEP UP AND CORRECT THIS EVEN WITH THE WARRANTY EXPIRING 7,000 MILES AGO, SINCE I AM THE SECOND OWNER. I HAVE FOUND MANY COMPLAINTS ABOUT THIS SAME THING FOR BOTH THE 2011 OPTIMAS AND SONATAS. THIS IS SO DANGEROUS BECAUSE THERE ARE NO WARNINGS, AND THE ENGINE CUTS OFF IN TRAFFIC, WHICH ALSO CAUSES THE BRAKES AND STEERING TO GO OUT. NOT SAFE AT ALL.

Vehicle: 2011 Kia Optima
Date Complaint Filed: 08/24/2015
Date of Incident: 08/24/2013
Component(s): ENGINE

-44-

NHTSA ID Number: 10778079
  SUMMARY:
  DRIVING DOWN EXPRESS WHEN ENGINE STARTED TO
  LOOSE OIL. PULLED OVER ON SHOULDER, NOTICE A
  CLICKING NOISE AND SMELLED BURNING OIL.
  DEALER FOUND HOLE IN SIDE OF ENGINE BLOCK.
  STATED NEEDS NEW ENGINE AND QUOTED AND
  ESTIMATED PRICE OF $5,875.64 FOR A USED ENGINE
  WITH 46,000 MILES INSTALLED. HAD CAR REPAIRED
  AT ANOTHER PLACE FOR $5477.06 WITH 41,000 MILES.
  THIS SHOP SAID THE ENGINE HAD A ROD KNOCK
  THEN LOCKED UP. NEEDS THE ENGINE REPLACED.
  **THIS IS THE SAME 2.4 LITER ENGINE THAT IS
  BEING RECALLED FOR THE HYUNDAI SONATAS.**

Vehicle: 2011 Kia Optima
Date Complaint Filed: 09/29/2015
Date of Incident: 06/21/2015
Component(s): ENGINE
NHTSA ID Number: 10778375
  SUMMARY:
  TL* THE CONTACT OWNS A 2011 KIA OPTIMA. **WHILE
  DRIVING AT APPROXIMATELY 40 MPH, THE CHECK
  ENGINE WARNING LIGHT ILLUMINATED. THE
  DRIVER SHUT OFF THE VEHICLE AND IT FAILED
  TO RESTART.** THE VEHICLE WAS TOWED TO A
  DEALER WHO DIAGNOSED THAT THE ENGINE
  NEEDED TO BE REPLACED. THE MANUFACTURER
  WAS NOTIFIED OF THE FAILURE. THE VEHICLE WAS
  NOT REPAIRED. THE FAILURE MILEAGE WAS 71,106.

Vehicle: 2011 Kia Optima
Date Complaint Filed: 11/09/2015
Date of Incident: 10/31/2015
Component(s): ELECTRICAL SYSTEM , ENGINE
NHTSA ID Number: 10789435
  SUMMARY:

**WHILE DRIVING 70 MPH ON THE HIGHWAY MY 2011 KIA OPTIMA ENGINE SHUT DOWN AND WOULD NOT ACCELERATE AND THE BRAKES WOULD NOT FUNCTION.** LUCKILY, I SAFELY MADE IT TO THE FAR SHOULDER OF THE HIGHWAY ONLY TO FIND THAT MY CAR WAS SMOKING AND SMELLED LIKE SOMETHING WAS BURNING. HAD TO GET THE CAR TOWED TO THE DEALERSHIP AND THEY INFORMED THE ENGINE NEEDS TO BE REPLACED AND THE STARTER IS ALSO FRIED. I HAVE SEEN FOUR COMPLAINTS SO FAR OF 2011 KIA OPTIMA'S WITH THE SAME ISSUE AND AM SURE I WILL FIND MORE. THAT SEEMS LIKE TOO MUCH OF A COINCIDENCE THAT IT HAPPENS SO FREQUENTLY WITH THESE MODELS AND THERE ISN'T ANY SORT OF RECALL. NO BREAKS AT 70 MPH IS PRETTY DANGEROUS. I HAVE CONTACTED MY ATTORNEY AND HOPE THIS MANUFACTURER WILL DO THE RIGHT THING.

Vehicle: 2011 Kia Optima
Date Complaint Filed: 12/13/2015
Date of Incident: 12/06/2015
Component(s): ENGINE
NHTSA ID Number: 10809924
   **SUMMARY:**
WAS DRIVING DOWN THE INTERSTATE AND THE CAR DIED AFTER PULLING OFF TO THE SHOULDER TRIED TO START THE CAR AND ALL IT WOULD DO WAS CLICK. TOWED THE CAR HOME THINKING IT WAS AN ALTERNATOR OR SOMETHING SIMPLE. NEXT MORNING LOOKED AT THEN CHANGED THE BATTERY AND TRIED TO GET IT STARTED IN SLIGHTLY TURNED OVER BUT NOT ENOUGH TO START CALLED THE DEALER TO DROP IT OFF AND THEY SAID CAR WAS SEIZED OUT OF WARRANTY AND NEEDS THE ENGINE REPLACED. **AFTER SEARCHING ON THE INTERNET AND LOOKING AT COMPLAINTS FOUND THAT MY ENGINE WAS BUILT AT THE SAME PLANT AS THE HYUNDAI SONATA**

-46-

**SAME ENGINE, WHICH IS RECALLED FOR THIS SAME EXACT PROBLEM . I AM WONDERING WHY KIA ACTED LIKE THE CANT BELIEVE THIS WOULD HAPPEN WHEN THESE CARS SHOULD BE RECALLED** ALSO . WHAT CAN BE DONE HERE ? I WILL NOT LET THIS GO IT IS WRONG KIA'S SHOULD BE LOOKED INTO AND RECALLED

Vehicle: 2011 Kia Optima
Date Complaint Filed: 02/29/2016
Date of Incident: 05/09/2015
Component(s): ENGINE
NHTSA ID Number: 10838965
    **SUMMARY:**
    TL-THE CONTACT OWNS A 2011 KIA OPTIMA. **THE CONTACT STATED THAT WHILE DRIVING APPROXIMATELY 60 MPH, AN ABNORMAL SOUND EMITTED FROM UNDER THE HOOD OF THE VEHICLE AS THE CHECK ENGINE OIL WARNING LIGHT FLICKERED.** THE VEHICLE WAS TAKEN TO AN INDEPENDENT MECHANIC WHERE IT WAS DIAGNOSED THAT THE CONNECTING ROD FAILED AND THE ENGINE NEEDED TO BE REPLACED. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS 92,000. SS

Vehicle: 2012 Kia Optima
Date Complaint Filed: 09/23/2014
Date of Incident: 09/22/2014
Component(s): ENGINE
NHTSA ID Number: 10638362
    **SUMMARY:**
    **DRIVING VEHICLE AT 35-40 MPH. ALL OF A SUDDEN ENGINE STOPPED.** THERE WAS HEAVY SMOKE COMING FROM UNDER THE HOOD AND SMELLED OF AN ELECTRICAL FIRE. SMOKE DISSIPATED AFTER 15

-47-

MINUTES. VEHICLE WAS UNABLE TO BE RESTARTED
AND HAD TO BE TOWED TO KIA DEALERSHIP IN
TURNERSVILLE NJ. SPOKE WITH DEALERSHIP ON 9/23
AND WAS TOLD STARTER AND ENGINE NEEDS TO BE
REPLACED. *TR

Vehicle: 2012 Kia Optima
Date Complaint Filed: 09/26/2014
Date of Incident: 09/11/2014
Component(s): ENGINE
NHTSA ID Number: 10639417
    **SUMMARY:**
    TL* THE CONTACT OWNS A 2012 KIA OPTIMA. **THE
CONTACT STATED THAT WHILE DRIVING AT
APPROXIMATELY 70 MPH, THE ENGINE STALLED
WITHOUT WARNING.** IN ADDITION, A STRONG
ELECTRICAL BURNING ODOR EMITTED INSIDE OF
THE VEHICLE. THE VEHICLE WAS TOWED TO A
DEALER FOR DIAGNOSIS. THE MECHANIC INFORMED
THAT THE STARTER AND ASSOCIATED FUSES WERE
COMPLETELY BURNT. THE VEHICLE WAS REPAIRED.
THE CONTACT STATED THAT AFTER THE REPAIRS
WERE PERFORMED, THE VEHICLE FAILED TO START.
THE VEHICLE WAS TAKEN BACK TO THE DEALER
WHO RECOMMENDED THE ENGINE NEEDED TO BE
REPLACED. THE VEHICLE WAS NOT REPAIRED. THE
MANUFACTURER WAS NOTIFIED OF THE FAILURE.
THE VIN WAS UNAVAILABLE. THE APPROXIMATE
FAILURE MILEAGE WAS 55,000.

Vehicle: 2012 Kia Optima
Date Complaint Filed: 09/30/2015
Date of Incident: 08/02/2015
Component(s): ENGINE
NHTSA ID Number: 10778891
    **SUMMARY:**

-48-

I WAS DRIVING ON I 95 ON OUR WAY HOME FROM FLORIDA. WE WERE PASSING FAYETTSVILLE ,NC WHEN MY CAR ENGINE MADE SOME KNOCKING NOISE AND THEN THE ENGINE LIGHT CAME ON, BEFORE I CAN PULL TO THE SHOULDER, **THE CAR STALLED,LOST POWER AT 70 MLS PER HR. WE WERE LUCKY NO ONE HIT US AS I WAS SLOWLY NAVIGATING TO THE SHOULDER.** I HAD IT TOWED TO A KIA DEALERSHIP IN FAYETTSVILLE,NC. THEY SAID ENGINE SEIZED UP AND NEEDS TO BE REPLACE. THE CAR HAS 71,000MLS BUT KIA DENIED MY WARRANTY CLAIM SO I END UP PAYING $5,700 FOR A REMANUFACTURED ENGINE.

---

Vehicle: 2012 Kia Optima
Date Complaint Filed: 12/14/2015
Date of Incident: 11/28/2015
Component(s): ENGINE
NHTSA ID Number: 10809989
    **SUMMARY:**
THE VEHICLE HIT 63,000 MILES DURING THIS INCIDENT. AS I WAS MERGING ONTO THE EXPRESSWAY AT 50MPH, **I GOT THE VEHICLE TO 60MPH AND THE SPEEDOMETER GAUGE FROZE AT 60MPH. THEN, THE RPM GAUGE DROPPED TO 0. SUDDENLY THE ENGINE LOST POWER, THE BRAKES LOCKED UP AND BEFORE I GOT THE CAR OFF TO THE SHOULDER AT A COMPLETE STOP, THE ENGINE CUT OUT COMPLETELY.** THE ENGINE WOULD NOT START AT ALL AFTER IT CUT OUT. I THEN BROUGHT THE VEHICLE TO A DEALERSHIP WHERE THEY DEEMED A NEW ENGINE AS THE CURRENT ENGINE BLEW.

---

Vehicle: 2012 Kia Optima
Date Complaint Filed: 01/21/2016
Date of Incident: 01/13/2016

-49-

Component(s): ENGINE
NHTSA ID Number: 10821364
   **SUMMARY:**
   **DRIVING AT APPROXIMATELY 50 MPH ON THE**
   **PARKWAY, ENGINE STALLED WITHOUT WARNING**
   **AND WOULD NOT RE-START.** I HAD THE CAR TOWED
   TO A SHOP WHERE THEY INFORMED ME THE ENGINE
   HAD SEIZED. THERE WAS DEFINITELY OIL IN THERE
   AS I HAD AN OIL CHANGE WITHIN THE LAST COUPLE
   OF WEEKS,. THE CAR HAS 72K MILES ON IT AND I AM
   THE SECOND OWNER SO NOT COVERED BY KIA'S
   NON-TRANSFERABLE 10YR/100K MI WARRANTY.
   WORKING WITH KIA CUSTOMER SERVICE, WAITING
   TO HEAR BACK FROM A SUPERVISOR.

Vehicle: 2013 Kia Optima
Date Complaint Filed: 06/14/2013
Date of Incident: 06/12/2013
Component(s): ENGINE
NHTSA ID Number: 10519827
   **SUMMARY:**
   DRIVING ON A CITY ROAD DURING NORMAL TRAFFIC
   (4:30PM EST) MY VEHICLE BEGAN TO MAKE LARGE
   RATTLING NOISE FROM THE ENGINE COMPARTMENT.
   AT FIRST I THOUGHT I HAD PICKED UP SOMTHING ON
   THE ROAD, BUT AS I ACCELERATED/DECCELERATED
   THE NOISE BECAME LOUDER/SOFTER. I
   IMMEDIATLEY CONTACTED MY KIA DEALERSHIP.
   AFTER SPEAKING TO THE SERVICE MANAGER HE
   TOLD ME TO BRING THE VEHICLE IN NEXT WEEK
   SINCE THAT WOULD BE THE SOONEST IT COULD BE
   LOOKED AT. I INFORMED HIM THAT I DID'NT THINK I
   COULD EVEN MAKE IT HOME LET ALONE WAIT A
   WEEK TO BRING THE VEHICLE IN. HE STATED I
   COULD DROP IT OFF, BUT IT WOULD NOT BE LOOKED
   AT UNTIL NEXT WEEK. EITHER WAY, WITHIN 10
   MIUTES OF DRIVING A LARGE BANGING NOISE WENT
   OFF UNDER THE HOOD, ENGINE OIL SPRAYED
   THROUGHT THE ENGINE COMPARTMENT AND I HAD

-50-

COMPLETE LOSS OF POWER. KIA ROADSIDE
ASSISTANCE TOWED THE VEHICLE TO THE
DEALERSHIP WHERE THEY HAVE INFORMED ME
THAT THE ENGINE NEEDS TO BE REPLACED. THE
VEHICLE IS LESS THAN 2 WEEKS OLD AND HAD 600
MILES WHEN THIS OCCURED. I INFORMED THE
DEALERSHIP I WOULD NOT WANT A VEHICLE WITH A
REPLACED ENGINE AND THEY HAVE INFORMED ME
THAT IS MY ONLY OPTION. I WILL NOT BE
PURCHASING FROM KIA AGAIN AS THERE WAS NO
SUPPORT FROM THEIR CORPORATE CUSTOMER
SERVICE EITHER. *TR

Vehicle: 2013 Kia Optima
Date Complaint Filed: 08/17/2015
Date of Incident: 08/12/2015
Component(s): ENGINE
NHTSA ID Number: 10749310
  **SUMMARY:**
  THE EVENING OF 8/12/15 **I WAS DRIVING DOWN A 4**
  **LANE CITY ROAD, 2 LANES EACH DIRECTION. THE**
  **ENGINE COMPLETELY SHUT OFF LEAVING ME**
  **WITH NO POWER AND IN A VERY DANGEROUS**
  **SITUATION WITH SUDDEN DECELERATION AND**
  **VEHICLES COMING UP FROM BEHIND.**
  FORTUNATELY, NO ONE HIT ME AND I WAS ABLE TO
  MOVE THE CAR OUT OF TRAFFIC. NO ENGINE
  MAINTENANCE/WARNING LIGHTS CAME ON PRIOR
  TO THE ENGINE FAILURE. WE HAVE BEEN INFORMED
  THE ENGINE IS LOCKED UP AND WILL NEED
  COMPLETELY REPLACE WITH A NEW ENGINE.
  ROUTINE MAINTENANCE, INCLUDING KIA'S 22,500
  MILE RECOMMENDED MAINTENANCE WAS
  PERFORMED ONLY 16 DAYS PRIOR ON 7/27/15. DAVE
  GREEN, KIA ARAPAHOE SERVICE MANAGER,
  INFORMED TODAY (8/17/15) THAT THEY HAVE SEEN
  SEVERAL INSTANCES OF THIS IN THE PAST WEEK.
  THEY BELIEVE THERE IS A CONNECTION TO THE HOT
  WEATHER. WHAT EVER THE CAUSE THIS HAS A VERY

-51-

HIGH POTENTIAL TO CAUSE DEATH OR EXTREME INJURY

Vehicle: 2011 Kia Sorento
Date Complaint Filed: 10/11/2011
Date of Incident: 07/18/2011
Component(s): ENGINE AND ENGINE COOLING
NHTSA ID Number: 10429442
  **SUMMARY:**
  WHILE DRIVING DOWN THE EXPRESSWAY, WITHOUT
  WARNING, THERE WAS A CATASTROPHIC ENGINE
  FAILURE CAUSING ONE OR TWO OF THE
  CONNECTING RODS TO BLOW THROUGH THE OIL PAN
  AND START A FIRE FROM THE FRONT OF THE
  VEHICLE TO THE BACK UNDERNEATH THE
  CARRIAGE. THE FLAMES CAME UP THE SIDES AND
  BACK OF THE CAR. NEEDLESS TO SAY IT WAS
  EXTREMELY FRIGHTENING. LOOKING AT THE
  DAMAGE OF THE CAR I NEVER EXPECTED THEM TO
  ATTEMPT TO REPAIR THIS CAR YET THEY DID. THE
  CAR WAS DOWN FOR ALMOST TWO MONTHS, THE
  SECOND ENGINE AND POWER STEERING FAILED
  BEFORE WE EVEN DROVE THE REPAIRED CAR OFF
  THE LOT. KIA STILL DID NOT WANT TO DO
  ANYTHING BUT REPAIR THE CAR AGAIN. THEY SAID,
  "THESE THINGS HAPPEN THATS WHY YOU HAVE A
  WARRANTY". THESE THINGS HAVE NEVER
  HAPPENED TO ME OR ANYONE I KNOW IN THE 30
  YEARS I HAVE BEEN DRIVING. YOU BUY A NEW CAR
  TO AVOID SUCH PROBLEMS. THE CAR HAS NOW
  BEEN RETURNED TO ME AND IT IS STILL NOT RIGHT. I
  JUST TOOK IT IN FOR THEM TO BLOW OUT THE
  VENTS AND FILTERS. THERE WAS STILL REMNANTS
  OF THE FIRE EXTINGUISHER COMING OUT WHEN
  YOU TURNED ON THE AIR. THIS CAR IS DEFECTIVE
  AND SHOULD HAVE A SALVAGED TITLE. I WAS
  FORCED TO PUT IN A LAW SUIT. *KB

Vehicle: 2011 Kia Sorento
Date Complaint Filed: 08/02/2017
Date of Incident: 03/16/2016
Component(s): ENGINE
NHTSA ID Number: 11012248
    SUMMARY:
    BEGINNING MARCH OF 2016, LOUD BANGING AND
    CLANKING WHEN STARTING ENGINE. I TOOK IT TO
    DEALERSHIP WHERE THEY DIAGNOSED IT WITH
    BEARING PROBLEM WHICH COULD POTENTIALLY
    CAUSE ENGINE FAILURE. VEHICLE OUT OF
    WARRANTY SO NO COVERAGE FOR AN ESTIMATED
    6,000.00 REPAIR. WHEN MENTION OF RECALL CAME
    OUT I WAS RELIEVED AS I AM STILL DRIVING THE
    VEHICLE. HOWEVER, IT SEEMS THAT THE RECALL
    ONLY COVERS 2012 OR NEWER MODELS. THE 2011'S
    HAVE MAJOR ENGINE ISSUES AS WELL AND NEED TO
    BE INCLUDED IN THE RECALL

Vehicle: 2011 Kia Sorento
Date Complaint Filed: 05/15/2017
Date of Incident: 05/07/2017
Component(s): ENGINE
NHTSA ID Number: 10985666
    SUMMARY:
    TL* THE CONTACT OWNS A 2011 KIA SORENTO. THE
    CONTACT STATED THAT A METAL BANGING NOISE
    WAS HEARD UNDERNEATH THE HOOD OF THE
    VEHICLE. THE CONTACT TOOK THE VEHICLE TO THE
    DEALER WHERE IT WAS DIAGNOSED THAT THE
    MOTOR FAILED AND NEEDED TO BE REPLACED. THE
    VEHICLE HAD NOT BEEN REPAIRED. THE
    MANUFACTURER OPENED CASE NUMBER: K3454763.
    THE APPROXIMATE FAILURE MILEAGE WAS 63,000.

Vehicle: 2011 Kia Sorento
Date Complaint Filed: 04/20/2017

-53-

Date of Incident: 03/27/2017
Component(s): ENGINE
NHTSA ID Number: 10979469
**SUMMARY:**
TL* THE CONTACT OWNS A 2011 KIA SORENTO.
WHILE DRIVING 55 MPH, THE ENGINE STALLED AND
THE WARNING INDICATOR ILLUMINATED. THE
CONTACT PULLED THE VEHICLE OVER TO THE SIDE
OF THE ROAD. THE VEHICLE FAILED TO RESTART.
THE VEHICLE WAS TOWED TO THE DEALER WHERE
IT WAS DIAGNOSED THAT THE ENGINE NEEDED TO
BE REPLACED. THE VEHICLE WAS NOT REPAIRED.
THE MANUFACTURER WAS MADE AWARE OF THE
FAILURE. THE FAILURE MILEAGE WAS 96,000.

Vehicle: 2011 Kia Sorento
Date Complaint Filed: 04/12/2017
Date of Incident: 04/07/2017
Component(s): ENGINE
NHTSA ID Number: 10972008
**SUMMARY:**
THE ENGINE BEGAN TO BE HARD TO START LEAVING
WORK FOR HOME. THEN THE NEXT MORNING IT WAS
HARD TO START AND WOULD ALMOST STALL AT
IDLE. AFTER PARKING AT WORK I ATTEMPTED TO
START IT AND DRIVE TO THE KIA DEALERSHIP FOR
DIAGNOSIS, IT WOULD NOT KEEP RUNNING MORE
THAN A FEW SECONDS.

THE ENGINE HAS SUFFERED A CATASTROPHIC
FAILURE. THE DEALER SAYS THAT IT IS LIKELY THAT
THE CRANK SHAFT BEARINGS FAILED, OR POSSIBLY
THE CONNECTING ROD BEARINGS. THE ENGINE
NEEDS TO BE REPLACED.

Vehicle: 2011 Kia Sorento
Date Complaint Filed: 04/10/2017

Date of Incident: 02/10/2017
Component(s): ENGINE
NHTSA ID Number: 10971641
**SUMMARY:**
TL* THE CONTACT OWNS A 2011 KIA SORENTO. THE
CONTACT NOTICED SMOKE COMING FROM THE
VEHICLE AND DISCOVERED THAT IT WAS LOW ON
OIL. THE VEHICLE WAS TAKEN TO THE DEALER
WHERE IT WAS DIAGNOSED THAT THE BEARING WAS
FAULTY AND CAUSED AN OIL LEAK. THERE WAS
SLUDGE IN THE MOTOR, WHICH NEEDED TO BE
REPLACED. THE VEHICLE WAS NOT REPAIRED. THE
CONTACT REFERENCED NHTSA CAMPIAGN NUMBER:
17V224000 (ENGINE AND ENGINE COOLING) AS A
POSSIBLE SOLUTION TO THE FAILURE; HOWEVER,
THE VIN WAS NOT INCLUDED. THE MANUFACTURER
WAS NOTIFIED OF THE FAILURE. THE FAILURE
MILEAGE WAS 55,000.

Vehicle: 2011 Kia Sorento
Date Complaint Filed: 03/21/2017
Date of Incident: 02/27/2017
Component(s): ENGINE
NHTSA ID Number: 10967659
**SUMMARY:**
ON FEBRUARY 27, 2017, MY 2011 KIA SORENTO'S
ENGINE DIED. I HAD ONLY ONE WARNING THAT
THERE WAS A PROBLEM AND THAT WAS A LACK OF
POWER. I WAS GOING UP A SLIGHT HILL AND I HAD
TO FLOOR THE GAS PEDAL TO MAINTAIN 20MPH UP
IT. I WENT OUT AT 830PM THAT NIGHT TO TAKE IT TO
MY MECHANIC AND MY SORENTO WOULD NOT
START. I HAD IT TOWED TO GORRING AUTOMOTIVE
AT 1030PM. ON MARCH 1, 2017, MR. GORRING CALLED
AND TOLD ME I WOULD NEED A NEW ENGINE. I
CONTACTED CENTURY 3 KIA AND SPOKE TO THE
SERVICE MANAGER DAN. HE STATED THAT I NEEDED
TO BRING IT BACK TO THE DEALERSHIP TO HAVE IT
LOOKED AT. I ALSO CONTACTED KIA CONSUMER

-55-

NUMBER AND SPOKE TO ERIC. ERIC TOLD ME THE
SAME INFORMATION AND I STATED I DID NOT WANT
TO PAY FOR THE DIAGNOSIS AGAIN. I HAD MY
SORENTO TOWED TO CENTURY 3 KIA ON MARCH 1,
2017. DAN STATED THAT HE WAS SURPRISED THAT
MY VIN WAS NOT ON THE EXTENDED WARRANTY
LIST. ON MARCH 3, 2017, DAN FROM CENTURY 3 KIA
CALLED ME AND SAID THAT I DID NEED A NEW
ENGINE. CHARLES FROM KIA'S CONSUMER NUMBER
AND DAN FROM CENTURY 3 KIA BOTH STATED THAT
IF I WAS THE ORIGINAL OWNER THEY WOULD
REPLACE THE ENGINE AT NO COST TO ME BUT SINCE
I AM THE SECOND OWNER OF THE SORENTO, IT
WOULD BE MY RESPONSIBILITY. I INQUIRED AT THE
COST OF LABOR AND WAS TOLD 15 HOURS AT $108
AN HOUR. I HAVE LOOKED AROUND AND FOUND
THAT MOST ENGINES WITH ROUGHLY THE SAME
MILEAGE AS MINE ARE AROUND $2,500. THE TOTAL
COST WILL ROUGHLY BE BETWEEN $4,500 AND $6,500
TOTAL WITH ALL THE FLUIDS AND OTHER PARTS
NEEDED TO RETURN MY SORENTO TO A
FUNCTIONAL STATE. I PURCHASED THE SORENTO
WITH 53,857 MILES ON IT AND HAD IT FOR ONE YEAR.
I PUT 12,000 MILE ON IT ROUGHLY. MY SORENTO HAD
ROUGHLY 65,500 MILES ON IT WHEN THIS HAPPENED.
I HAVE DONE SOME RESEARCH AND FOUND THIS TO
BE A COMMON PROBLEM WITH THE 2.4L ENGINES. IF
THIS IS TRUE, WHY HAS KIA NOT DONE ANYTHING
ABOUT IT.

Vehicle: 2011 Kia Sorento
Date Complaint Filed: 01/02/2017
Date of Incident: 12/07/2016
Component(s): ENGINE
NHTSA ID Number: 10939102
   **SUMMARY:**
THE CAR WAS NOT ALWAYS RESPONDING TO ME
WHEN I WANTED TO ACCELERATE, I WOULD HEAR
THE RPMS GOING UP BUT THE CAR WOULD NOT GO

-56-

FASTER, THEN A PUFF OF WHITE SMOKE WOULD COME OUT THE TAIL PIPE. THEN ONE DAY, I WAS DRIVING THE CAR AND IT STARTED MAKING A CLANKING NOISE WHEN I WOULD PUSH THE GAS PEDAL. IT SOUNDED LIKE THE NOISE A ROLLER COASTER MAKES WHEN YOU ARE CLANKING UP THE HILL AT THE BEGINNING. TOOK THE CAR TO THE DEALERSHIP AND THEY TOOK THE ENGINE APART TO FIND THE PROBLEM. THE CAR HAS AN ENGINE DEFECT THAT WAS DIAGNOSED BY A KIA DEALER AS A MANUFACTURERS DEFECT. NOW THE CAR IS NOT DRIVABLE AND KIA IS REFUSING TO PAY FOR A NEW ENGINE. KIA NEEDS TO RECALL ALL VEHICLES WITH THESE ENGINES. THEY ARE BUILT BY HYUNDAI AND THEY RECALLED THEIR VEHICLES WITH THE SAME ENGINES. *TR

Vehicle: 2011 Kia Sorento
Date Complaint Filed: 07/21/2016
Date of Incident: 07/18/2016
Component(s): ENGINE
NHTSA ID Number: 10887421
**SUMMARY:**
ENGINE WAS MAKING A CYCLICAL CLICKING/KNOCKING NOISE. WE TOOK THE VEHICLE TO KIA DEALERSHIP AND THEY SAID THEY COULD NOT FIND ANY ISSUES WITH THE CAR. ABOUT A WEEK LATER THE CAR BROKE DOWN WHILE DRIVING AT HIGHWAY SPEEDS. AFTER HAVING IT TOWED TO AN INDEPENDENT GARAGE, WE WERE INFORMED THE ENGINE HAD A CONNECTING ROD FAILURE. THIS IS THE EXACT SAME PROBLEM THE HYUNDAI SONATA HAS WITH THE EXACT SAME THETA 2.4 LITER ENGINE. HYUNDAI HAS ISSUES A RECALL BUT KIA FAILS TO ACKNOWLEDGE THE ISSUE.

Vehicle: 2011 Kia Sorento
Date Complaint Filed: 05/12/2016
Date of Incident: 05/02/2016
Component(s): ENGINE
NHTSA ID Number: 10864508

**SUMMARY:**

AT 68,000 MILES THE OIL PRESSURE SENSOR (PART #94750-37100) FAILED AND CAUSED A SUDDEN AND IMMEDIATE LOSS OF ALL ENGINE OIL. IN THE HALF MILE IT TOOK US TO SAFELY PULL OVER THE OIL PRESSURE LIGHT ACTIVATED AND THE DIP STICK READ BONE DRY. I HAVE RESEARCHED THE ISSUE AND FOUND IT TO BE A COMMON PROBLEM WITH KIA'S, A RECALL SHOULD BE ISSUED TO REPLACE THE PART WITH A BETTER ENGINEERED VERSION. HAD WE NOT BEEN ALERT / AWARE OF WHAT WAS GOING ON THE ENGINE COULD HAVE SEIZED AND ALL POWER COULD HAVE BEEN LOST WHILE IN MOTION.

Vehicle: 2011 Kia Sorento
Date Complaint Filed: 02/16/2016
Date of Incident: 01/31/2016
Component(s): ENGINE
NHTSA ID Number: 10836400

**SUMMARY:**

ON 1-31-16 HEARD A PINGING NOISE ON THE HIGHWAY; THEN THE CAR STALLED AT THE EXIT LIGHT; STARTED IT AGAIN AND LOUD BANG BLOW A ROD AFTER GETTING BACK ON THE HIGHWAY TO DRIVE IT TO A SHOP. DIED ON THE SIDE OF THE HIGHWAY AND HAD TO HAVE IT TOWED TO KIA IN AUBURN WA. KIA STATED THEY WILL NOT FIX UNDER THE WARRANTY BECAUSE THE WRONG OIL FILTER WAS INSTALLED AND I DIDN'T PROVIDE PROPER MAINTENANCE; WHICH I TOOK IT IN EACH AND EVERY TIME FOR OIL CHANGES TO MY AUTO SHOP. SAME OIL FILTER HAS BEEN PUT INTO MY CAR SINCE 2011. WENT BACK TO MY AUTO SHOP

-58-

INFORMED THEM THEY STARTED THE PROCESS OF
SENDING THE OIL FILTER IN TO BE CHECKED FOR
DEFECTS, ALSO FOUND ON 3 DIFFERENT WEB SITES
THE FILTER CAN BE USED FOR MY MAKE AND
MODEL. NOW KIA WANT FIX MY CAR; IT HAS BEEN 3
WEEKS WITHOUT A VEHICLE AND NO WORD FROM
KIA; NOT EVEN FROM THEIR HEADQUARTERS. KIA
WILL NOT PROVIDE THE WORK ORDER STATING
THEY ARE NOT ALLOWED TO GIVE TO THIRD PARTY.

Vehicle: 2011 Kia Sorento
Date Complaint Filed: 03/13/2015
Date of Incident: 03/02/2015
Component(s): ENGINE
NHTSA ID Number: 10694186
    SUMMARY:
    TL* THE CONTACT OWNS A 2011 KIA SORENTO.
WHILE TRAVELING APPROXIMATELY 40 MPH, THERE
WAS A LOUD NOISE COMING FROM THE FRONT OF
THE VEHICLE. ALSO, THE CONTACT MENTIONED
THAT SMOKE EMITTED FROM THE ENGINE
COMPARTMENT. UPON PULLING THE VEHICLE OVER,
IT WAS FURTHER NOTICED THAT THE ENGINE
COMPARTMENT WAS ON FIRE. THE VEHICLE WAS
TOWED TO AN INDEPENDENT MECHANIC, WHO
DIAGNOSED THAT A ROD FRACTURED INTO THE
ENGINE AFFECTING THE OTHER COMPONENTS
CAUSED A FIRE. ALSO, THE MECHANIC DIAGNOSED
THAT THE PISTONS MAY NEED TO BE REPLACED BUT
FURTHER EXTENSIVE DIAGNOSIS WAS REQUIRED TO
REPAIR THE VEHICLE. THE CONTACT WAS NOT
INCLUDED IN NHTSA CAMPAIGN NUMBER: 10V388000
(ELECTRICAL SYSTEM). THE MANUFACTURER WAS
NOTIFIED OF THE FAILURE. THE APPROXIMATE
FAILURE MILEAGE WAS 102,000.

Vehicle: 2012 Kia Sorento

Date Complaint Filed: 10/23/2017
Date of Incident: 02/20/2017
Component(s): ENGINE
NHTSA ID Number: 11035862

**SUMMARY:**

OUR 2012 KIA SORENTO WAS IN MOTION ON THE HIGHWAY WHEN A LOUD KNOCKING SOUND BEGAN. AT THIS POINT THE ENGINE SEIZED AND THE CAR STALLED. IT HAD TO BE TOWED TO THE KIA DEALER AND A NEW ENGINE HAD TO BE PUT IN. WE WERE TOLD BY THE SERVICE MANAGER AT THE KIA DEALERSHIP THAT RECALL SC147 ADDRESSES 2012 KIA SORENTO'S AND THE EXACT SAME ISSUE AS OUR CAR HAD. HOWEVER, THE RECALL DOES NOT INCLUDE HER ENGINE TYPE. GIVEN WHAT HAPPENED TO OUR 17 YEAR OLD DAUGHTER AND THE DANGEROUS SITUATION THAT SHE WAS PUT IN, WE FEEL THAT THESE SORENTO ENGINE TYPES SHOULD ALSO BE INCLUDED IN THE RECALL. KIA CONSUMER AFFAIRS WAS CONTACTED AND THEY REFUSED TO PROVIDE ANY TYPE OF COMPENSATION OR ADD THIS VEHICLE ENGINE TYPE TO THE RECALL.

Vehicle: 2012 Kia Sorento
Date Complaint Filed: 09/26/2017
Date of Incident: 09/24/2017
Component(s): ENGINE
NHTSA ID Number: 11030026

**SUMMARY:**

AFTER 88,000 MILES, THE SORENTO'S ENGINE STARTED MAKING A LOUD SOUND WHILE DRIVING AT HIGHWAY SPEED. THE ENGINE STAYED ON BUT CONTINUED TO MAKE A LOUD SOUND. THE CAR WAS TOWED TO PEAK KIA IN LITTLETON, CO WHERE IT WAS DETERMINED THAT A NEW ENGINE WAS NEEDED AT A COST OF $7000-$10,000 DOLLARS. THE VEHICLE HAD REGULAR OIL CHANGES UP TO THIS POINT. THE DEALERSHIP CHECKED AN MY VIN NUMBER AND SAID THAT I DIDN'T QUALIFY FOR THE

-60-

RECALL FOR ENGINE PARTICLES. AS A SECOND OWNER, I DID NOT HAVE ACCESS TO THE 10 YEAR WARRANTY. I FEEL AS IF THE RECALL NEEDS TO BE EXPANDED AND HONORED. MY 5 YEAR OLD WELL MAINTAINED CAR HAD NO REASON TO HAVE CATASTROPHIC ENGINE FAILURE. I BELIEVE THIS IS A MANUFACTURING DEFECT THAT IS DANGEROUS AND THAT IS EFFECTING OWNERS ACROSS THE COUNTRY.

Vehicle: 2012 Kia Sorento
Date Complaint Filed: 09/11/2017
Date of Incident: 09/10/2017
Component(s): ENGINE
NHTSA ID Number: 11022610
**SUMMARY:**
ON 09/10/2017 WHILE DRIVING A 2012 KIA SORENTO DOWN THE HIGHWAY I HEARD A RATTLING NOISE FROM THE ENGINE WITH A LOUD BANG A FEW SECONDS LATER.THERE WAS SMOKE COMING FROM UNDER THE HOOD. I RESEARCHED AND FOUND THAT ON 03/17/2017 KIA ANNOUNCED A RECALL FOR 2012 SORENTOS. KIA'S RECALL: SC147: " BEARING WEAR MAY RESULT IN ENGINE SEIZURE" THIS IS ON KIA'S AND NHTSA'S WEBSITES. [ NHTSA CAMPAIGN # 17V224000 "MACHINING ERRORS DURING THE ENGINE MANUFACTURING PROCESS MAY CAUSE PREMATURE BEARING WEAR WITHIN THE ENGINE"] I CONTACTED KIA'S CUSTOMER SERVICE AT 1800-333-4542 AND BETHANY TOLD THAT MY 2012 KIA SORENTO WAS NOT ELIGIBLE FOR THE RECALL BECAUSE THE VIN # WAS NOT PART OF THE RECALL. SHE SAID THAT I COULD TAKE IT TO THE DEALER AND THEY WOULD CHECK THE OTHER 2 RECALL THOUGH. WHEN THE VEHICLE WAS TOWED I LOOKED UNDER THE VEHICLE TO SEE OIL POURING OUT FROM A 3 INCH HOLE IN THE BLOCK, TOWARD THE REAR OF THE VEHICLE, WHERE THE THROWN ROD BROKE THE BLOCK. OIL IS CHANGED EVERY

-61-

THREE MONTHS AND THE VEHICLE HAS 120,129 MILES ON IT. THE COST OF A USED ENGINE ALONE IS NEAR $3000, PLUS LABOR TO INSTALL A MOTOR THAT COULD DO THE SAME THING. I WOULD LIKE KIA MOTORS TO REPLACE THE DEFECTIVE ENGINE WITH A NEW ENGINE AT NO COST.

Vehicle: 2012 Kia Sorento
Date Complaint Filed: 08/16/2017
Date of Incident: 08/10/2017
Component(s): ENGINE
NHTSA ID Number: 11015830
**SUMMARY:**
ON 08/10/12017 WHILE DRIVING MY 2012 KIA SORENTO ON I-40. I HEARD A "RATTLING NOISE" FROM THE ENGINE. AS I SLOWED DOWN THE SOUND GOT LOUDER. I TURNED ON A SIDE STREET INTO A SAFE AREA AND PARKED MY VEHICLE. THERE WAS SMOKE COMING FROM UNDER MY HOOD. I OPENED THE HOOD AND SAW 2 SMALL PATCHES OF FIRE. I WAS ABLE TO PUT THEM OUT, THEN RAN TO A BEST WESTERN HOTEL AND ASKED FOR A FIRE EXTINGUISHER IN CASE A FIRE WOULD ERUPT AGAIN. I RESEARCHED AND DISCOVERED THAT ON 03/17/2017 KIA ANNOUNCED A RECALL FOR 2012 SORENTOS. KIA'S RECALL: SC147: " BEARING WEAR MAY RESULT IN ENGINE SEIZURE" THIS IS ON KIA'S, NHTSA'S , PBS AND FORBES WEBSITES. [ NHTSA CAMPAIGN # 17V224000 "MACHINING ERRORS DURING THE ENGINE MANUFACTURING PROCESS MAY CAUSE PREMATURE BEARING WEAR WITHIN THE ENGINE"] I CONTACTED KIA'S CONSUMER AFFAIRS # AND THE PERSON TOLD THAT MY 2012 KIA SORENTO WAS NOT ELIGIBLE FOR THE RECALL. HE SAID MY VIN # WAS NOT PART OF THE RECALL. I HAD JUST RETURNED WITH MY FAMILY 1 DAY PRIOR FROM A TRIP TO MOBILE, AL. (1500 MILES ROUND TRIP). ON 08/12/17 I HAD MY VEHICLE TOWED TO BATTLEGROUND KIA WHERE THE ADVISOR &

-62-

TECHNICIAN SHOWED ME THE PROBLEM A "THROWN ROD".THIS HOLE IS 3" TO 4" DIAMETER. (PICTURES ATTACHED). I ASKED WHAT COULD HAVE CAUSED THE ROD TO BE THROWN? I HAD MY OIL CHANGED ON SCHEDULE THE LATEST WAS 07/26/2017. THIS VEHICLE HAS 123,937 MILES ON IT. HE REPLIED HE DIDN'T KNOW WHAT CAUSED IT. ON 08/15/2017 I WAS INFORMED THAT TO REPLACE THE ENGINE WITH A USED ONE WITH 99,000 MILES WAS $6400 PLUS LABOR. [THAT IS ABOUT 24,000 MILES LESS THAN MINE CURRENT MILEAGE WITH THE SAME POTENTIAL PROBLEM LINGERING TO HAPPEN AGAIN] IT IS OBVIOUS THAT THE PROBLEMS WITH THE RECALL ENGINES ARE IDENTICAL WITH MINE. I WOULD LIKE KIA MANUFACTURING TO REPLACE MY DEFECTIVE ENGINE WITH A NEW ENGINE AND RENTAL VEHICLE AT NO COST TO ME. I'LL LIKE TO PARTNER WITH THE LOCAL DEALERSHIP TO RECTIFY THIS.

UPDATED 08/31/2017*JS

---

Vehicle: 2012 Kia Sorento
Date Complaint Filed: 08/05/2017
Date of Incident: 08/02/2017
Component(s): ENGINE
NHTSA ID Number: 11013013
  **SUMMARY:**
  AS I CAME AROUND A BEND AT ABOUT 20 MPH, MY 2012 KIA SORENTO DIED. THERE WAS NO WARNING, AND NO CHECK ENGINE LIGHT. I WAS ON A CITY STREET, AND HAD JUST PRESSED THE BRAKE PEDAL TO SLOW DOWN FOR THE TURN. THANKFULLY I WAS ABLE TO PULL INTO A PARKING LOT, AND NOT DRIVING ON THE HIGHWAY WITH MY CHILDREN. I TRIED TO CRANK THE CAR AGAIN, AND IT STARTED, RAN FOR A BRIEF MOMENT, SOUNDED NORMAL, THEN DIED. I TRIED TWICE MORE WITH THE SAME RESULT, THEN CALLED A TOW TRUCK TO GET HOME.

-63-

WE CALLED THE DEALERSHIP THE NEXT DAY TO
NOTIFY THEM OF THE ISSUE, AND THEY SENT OUT A
TOW TRUCK. WHEN THEY TRIED TO CRANK IT, IT
RAN ROUGH AND THEN DIED. WE ARE AWAITING
APPROVAL FROM CORPORATE KIA, AS WE BELIEVE
THAT THIS IS RELATED TO THE ENGINE RECALL
THEY HAVE ISSUED.

Vehicle: 2012 Kia Sorento
Date Complaint Filed: 07/03/2017
Date of Incident: 01/14/2017
Component(s): ENGINE
NHTSA ID Number: 11002875
  **SUMMARY:**
  TL* THE CONTACT OWNS A 2012 KIA SORENTO.
  WHILE DRIVING 90 MPH, THE ENGINE FAILED
  WITHOUT WARNING. THE CONTACT STATED THAT
  THERE WAS A KNOCKING NOISE FROM INSIDE THE
  ENGINE AND THE VEHICLE LOST POWER. IN
  ADDITION, THE VEHICLE WOULD NOT SWITCH
  GEARS AND DECREASED IN ACCELERATION UNTIL
  THE CONTACT REACHED THE DEALER. CATHEDRAL
  CITY KIA OF CATHEDRAL CITY, CALIFORNIA
  REPLACED THE ENGINE IN THE VEHICLE. THE
  MANUFACTURER WAS MADE AWARE OF THE ISSUE
  AND STATED THAT THE FAILURE WAS INCLUDED IN
  AN UNKNOWN RECALL; HOWEVER, THE CONTACT'S
  VIN WAS NOT INCLUDED. THE FAILURE MILEAGE
  WAS 97,000.

Vehicle: 2012 Kia Sorento
Date Complaint Filed: 06/27/2017
Date of Incident: 06/22/2017
Component(s): ENGINE
NHTSA ID Number: 11001807
  **SUMMARY:**
  MY ENGINE SEIZED WHILE DRIVING ON TO RAMP TO

-64-

HIGHWAY. MY CAR CUT OFF AND WAS UNRESPONSIVE. I FORCED THE CAR TO THE SIDE OF THE ON-RAMP DURING RUSH HOUR TRAFFIC. AT THIS TIME, I HAD TO HAVE MY VEHICLE TOWED. THERE IS A RECALL ON THE 2012 KIA SORENTO ENGINE FOR IT STALLING WHILE DRIVING. I CALLED KIA CORPORATE FOR ASSISTANCE WITH THIS MATTER AND THEY ARE GIVING US THE RUN-AROUND. I HAVE HAD THE VEHICLE BORE SCOPED, PROVING SEIZING OF THE ENGINE. IN ADDITION, I AM A LICENCES AIR-FRAME AND POWER-PLANT MECHANIC SO I KNOW MY WAY AROUND A CAR. THIS WAS VERY DANGEROUS AND UNEXPECTED SITUATION TO BE IN.

Vehicle: 2012 Kia Sorento
Date Complaint Filed: 07/27/2017
Date of Incident: 06/23/2017
Component(s): ENGINE
NHTSA ID Number: 11001733
 **SUMMARY:**
 MY VEHICLE IS AT 117K MILES. IT USES APPROX 6 QTS OF OIL/3000 MILES.I CANNOT GET UP TO SPEED ON THE HIGHWAY AS IT WILL NOT AUTO SHIFT DOWN WITH ANY ACCELERATION RPMS RUN AND STAY AT 6,000 WHEN TRYING TO GET TO 70MPH - IT IS INCLUDED IN SC147 RECALL, HOWEVER THE DEALERSHIP IS STATING IT PASSED THE RECALL TEST AND IT'S THE TRANSMISSION NOT THE ENGINE. TRANSMISSION DOES NOT BURN OIL AT 6 QTS/3000 MILES

Vehicle: 2012 Kia Sorento
Date Complaint Filed: 06/23/2017
Date of Incident: 06/14/2017
Component(s): ENGINE
NHTSA ID Number: 11000841
 **SUMMARY:**

Consolidated Class Action Complaint
Case No. 8:17-cv-02208-JLS-JDE

TL* THE CONTACT OWNS A 2012 KIA SORENTO. WHILE DRIVING ON THE HIGHWAY, THE MOTOR SEIZED. THE VEHICLE WAS UNABLE TO BE DRIVEN AND WAS TOWED TO AN INDEPENDENT REPAIR SHOP WHO INDICATED THAT THE VEHICLE NEEDED TO BE SERVICED BY AN AUTHORIZED DEALER. THE CONTACT WAS INCLUDED IN NHTSA CAMPAIGN NUMBERS: 17V224000 (ENGINE AND ENGINE COOLING) AND 15V626000 (POWER TRAIN), BUT THE CONTACT WAS UNABLE TO RECEIVE THE REMEDY AND PARTS FOR THE RECALL REPAIR. THE VEHICLE WAS TOWED TO MEDVED KIA (11201 W INTERSTATE 70 FRONTAGE RD N, WHEAT RIDGE, CO 80033, (303) 421-0100). THE CONTACT WAS WAITING ON A RESPONSE FROM THE MANUFACTURER TO PROVIDE A REMEDY FOR THE TWO RECALL REPAIRS. THE MANUFACTURER STATED THAT THEY WOULD RESPOND, BUT THE CONTACT HAD NOT RECEIVED THE REPAIRS SINCE JUNE OF 2016. THE APPROXIMATE FAILURE MILEAGE WAS 104,000. PARTS DISTRIBUTION DISCONNECT.

Vehicle: 2012 Kia Sorento
Date Complaint Filed: 06/19/2017
Date of Incident: 03/31/2017
Component(s): ENGINE
NHTSA ID Number: 10995819
   **SUMMARY:**
   TL* THE CONTACT OWNS A 2012 KIA SORENTO. THE CONTACT STATED THAT THE ENGINE MADE AN ABNORMAL NOISE AND STALLED SEVERAL TIMES WITHOUT WARNING. THE VEHICLE WAS UNABLE TO BE DRIVEN AND WAS TOWED TO THE DEALER (MORITZ KIA FORT WORTH 501 WEST FWY, FORT WORTH, TX 76116 (817) 560-6000). IT WAS DIAGNOSED THAT THE ENGINE ASSEMBLY NEEDED TO BE REPLACED. THE DEALER INDICATED THAT THEY WERE UNCERTAIN OF WHEN THE PART WOULD BE PRODUCED. THE CONTACT WAS PROVIDED WITH A

-66-

LOANER VEHICLE, BUT WAS UNABLE TO DETERMINE
A REASONABLE TIME FRAME FOR WHEN THE
VEHICLE WOULD BE REPAIRED. THE
MANUFACTURER WAS NOTIFIED OF THE FAILURE.
THE APPROXIMATE FAILURE MILEAGE WAS 78,000.
UPDATED 08/30/17*LJ

Vehicle: 2012 Kia Sorento
Date Complaint Filed: 06/16/2017
Date of Incident: 05/01/2017
Component(s): ENGINE
NHTSA ID Number: 10995476
**SUMMARY:**
TL* THE CONTACT OWNS A 2012 KIA SORENTO.
WHILE OPERATING THE VEHICLE, A LOUD TICKING
NOISE WAS PRESENT COMING FROM THE ENGINE
AND THE VEHICLE SUDDENLY SHUT OFF. THE
VEHICLE WAS TOWED TO SOUTHWEST KIA OF
ROUND ROCK, TEXAS WHERE IT WAS DIAGNOSED
THAT THE ENGINE WAS FAULTY AND NEEDED TO BE
REPLACED. THE VEHICLE WAS NOT REPAIRED. THE
MANUFACTURER WAS NOTIFIED OF THE FAILURE.
THE FAILURE MILEAGE WAS 103,000.

Vehicle: 2012 Kia Sorento
Date Complaint Filed: 06/12/2017
Date of Incident: 05/06/2017
Component(s): ENGINE
NHTSA ID Number: 10994530
**SUMMARY:**
ON TUESDAY MAY 16TH, 2017 AT ABOUT 10:30 PM I
WAS DRIVING DOWN THE HIGHWAY IN MY KIA ALL
OF A SUDDEN LOST POWER. THERE WAS NO
INDICATION THAT A PROBLEM EXISTED. I WAS
DRIVING EAST ON THE INTERSTATE AT ABOUT 70
MPH BUT I WAS ABLE TO MANEUVER TO THE SIDE OF
THE ROAD AFTER THE LOSS OF POWER AND

-67-

AVERTED BEING HIT FROM BEHIND FROM A SEMI. I
HAD 5 OTHER OCCUPANTS IN THE CAR AS WE WERE
COMING HOME FROM A BALL GAME. A GOOD
SAMARITAN HAPPENED ALONG AND TOOK THE
OCCUPANTS TO A WAFFLE HOUSE WHILE I WAITED
WITH MY WIFE FOR A TOW TRUCK. WE TOOK THE
CAR TO MY MECHANIC WHO INFORMED ME THAT
THE ENGINE HAD SEIZED. HE NOTICED THAT THERE
WERE BITS OF METALLIC IN THE OIL AND SAID IT
WOULD BE BEST TO HAVE IT REPLACED. WE HAD
STARTED INVESTIGATING THE COST OF A USED
ENGINE WHEN I READ ABOUT A CLASS ACTION SUIT
INVOLVING KIA AND OWNERS OF CARS WITH A 2.4
GDI ENGINE. THEIR COMPLAINTS PARALLELED
WHAT I HAD JUST WITNESSED. THE RECALL NUMBER
FOR THIS IS IS NHTSA 17V-224.

Vehicle: 2012 Kia Sorento
Date Complaint Filed: 06/01/2017
Date of Incident: 05/19/2017
Component(s): ENGINE
NHTSA ID Number: 10992669
   **SUMMARY:**
   TL* THE CONTACT OWNS A 2012 KIA SORENTO.
WHILE DRIVING 45 MPH, THE CRANK CASE BEARING
IN THE ENGINE DISINTEGRATED AND RUINED THE
MOTOR. THE VEHICLE WAS TOWED TO OXONDALE
KIA IN FLAGSTAFF ARIZONA WHERE IT WAS
DIAGNOSED THAT METAL FRAGMENTS ENTERED
INTO THE ENGINE OIL DEPOSIT, WHICH CAUSED
FURTHER DAMAGE TO THE VEHICLE. THE SERVICE
MANAGER AT THE DEALER STATED THAT THERE
WAS A RECALL FOR THE FAILURE, BUT THE
CONTACT'S VIN WAS NOT INCLUDED. THE
MANUFACTURER WAS MADE AWARE OF THE
FAILURE. THE RECALL DETAILS WERE NOT
PROVIDED. THE FAILURE MILEAGE WAS
APPROXIMATELY 81,000.

-68-

Vehicle: 2012 Kia Sorento
Date Complaint Filed: 03/31/2017
Date of Incident: 03/30/2017
Component(s): ENGINE
NHTSA ID Number: 10992492
   **SUMMARY:**
   5/30/2017 I WAS DRIVING AND I WAS MERGING ONTO
   THE FREEWAY SO I GAVE MY CAR ABOUT HALF
   THROTTLE AND AS SOON AS THE CAR STARTED TO
   ACCELERATE THE ENGINE STOPPED ACCELERATING
   WHILE MY FOOT WAS STILL ON THE GAS AND ALL OF
   THE LIGHT WENT ON ON MY DASHBOARD AND THE
   ENGINE COMPLETELY SHUT OFF. THE RPM'S
   DROPPED COMPLETELY BUT EVERYTHING ELSE
   STAYED ON, LIGHTS,STEERING,BRAKES,INTERIOR
   ELECTRONICS, EVERYTHING BUT THE ENGINE ITSELF
   REMAINED ON. I WENT TO START THE CAR AFTER I
   CAME TO A COMPLETE STOP AND IT MAKE SOME
   WEIRD TICKING NOISES BEFORE IT ACTUALLY
   TURNED ON AND IT IDLED, BUT AS SOON AS I GAVE
   IT SOME GAS THE ENGINE SHUT OFF.

   DEALER SAID ENGINE WAS SEIZED AND THERE WAS
   SLUDGE IN THE OIL, DID NOT PHYSICALLY SEE THIS
   MY SELF

Vehicle: 2012 Kia Sorento
Date Complaint Filed: 05/24/2017
Date of Incident: 05/15/2017
Component(s): ENGINE
NHTSA ID Number: 10991363
   **SUMMARY:**
   TL* THE CONTACT OWNS A 2012 KIA SORENTO. THE
   CONTACT STATED THAT WHILE DRIVING AT
   APPROXIMATELY 60 MPH, ALL THE WARNING
   INDICATORS ILLUMINATED AND THE VEHICLE LOST

-69-

ACCELERATION POWER. THE CONTACT COASTED TO
THE SIDE OF THE ROAD. THE VEHICLE WAS TOWED
TO THE RESIDENCE. THE FOLLOWING DAY THE
VEHICLE WAS TOWED TO THE DEALER WHERE IT
WAS DIAGNOSED THAT THE ENGINE NEEDED TO BE
REPLACED. THE VEHICLE WAS NOT REPAIRED. THE
MANUFACTURER WAS NOTIFIED OF THE FAILURE.
THE APPROXIMATE FAILURE MILEAGE WAS 82,000.

Vehicle: 2012 Kia Sorento
Date Complaint Filed: 05/16/2017
Date of Incident: 03/16/2017
Component(s): ENGINE
NHTSA ID Number: 10985936
 **SUMMARY:**
I HAVE CONTACTED THE KIA DEALERSHIP THREE
TIMES ABOUT THIS CAR BURNING OIL. THEY TOLD
ME THIS IS NORMAL FOR A VEHICLE THAT HAS 90,000
MILES ON IT. ONE TIME I HAD TO PUT 2 QUARTS OF
OIL IN IT AND THEN AFTER DRIVING 400 MILES I HAD
TO PUT ANOTHER 1 QUART OF OIL IN IT. I
UNDERSTAND THEY COULD BE A PROBLEM WITH
THE 2.4 ENGINE IN THIS VEHICLE. ALL I AM ASKING
IS FOR THEM TO DO A COMBUSTION TEST ON THE
ENGINE WHILE IT IS STILL UNDER WARRANTY.

Vehicle: 2012 Kia Sorento
Date Complaint Filed: 05/08/2017
Date of Incident: 05/01/2017
Component(s):
NHTSA ID Number: 10984187
 **SUMMARY:**
TL* THE CONTACT OWNS A 2012 KIA SORENTO. THE
CONTACT STATED THAT THERE WAS A SUDDEN LOSS
OF POWER WHEN APPLYING THE ACCELERATOR
PEDAL. THE DRIVER NOTICED THAT SMOKE WAS
EMITTING UNDER THE HOOD OF THE VEHICLE, THE

-70-

CHECK ENGINE WARNING LIGHT ILLUMINATED AND
A FIRE ERUPTED UNDER THE HOOD. A PASSERBY
STAYED WITH THE DRIVER UNTIL A STATE TROOPER
WAS PRESENT AS THE VEHICLE WAS ON FIRE AND
THE FLAMES WENT OUT OVER TIME. THE DRIVER
WAS ABLE TO EXIT THE VEHICLE. THE VEHICLE WAS
TOWED TO A MECHANIC YARD. THE VEHICLE WAS
NOT INCLUDED IN NHTSA CAMPAIGN NUMBER:
17V224000 (ENGINE AND ENGINE COOLING). THE
CONTACT WAS WAITING TO DETERMINE A RESPONSE
FROM THE MANUFACTURER TO DIAGNOSE HOW THE
FAILURE OCCURRED. THE APPROXIMATE FAILURE
MILEAGE WAS 103,000. ..UPDATED 06/27/17 *BF

Vehicle: 2012 Kia Sorento
Date Complaint Filed: 04/27/2017
Date of Incident: 04/01/2017
Component(s): ENGINE
NHTSA ID Number: 10981104
**SUMMARY:**
CAR NEVER GAVE A WARNING THAT ANYTHING WAS
WRONG, TOOK IT TO GET REGULAR OIL CHANGES AS
NEEDED AND SUDDENLY IN TRAFFIC WHILE MOVING
FORWARD, THE CAR BEGAN BUCKING AND JUMPING,
THE NOISE SOUNDED LIKE A CLUCK. I THOUGHT
SOMETHING HAD FALLEN OFF AS THE CAR WAS
ORIGINALLY DRIVING SMOOTHLY. I HAD IT TOWEDT
TO KIA AND IT WAS SAID THE ENGINE WAS NO
GOOD. NO WARNING LIGHTS OR ENGINE LIGHTS
EVER CAME ON TO FOREWARN OF ANY ISSUES EVER
WITH THE CAR.

Vehicle: 2012 Kia Sorento
Date Complaint Filed: 04/19/2017
Date of Incident: 04/17/2017
Component(s): ENGINE
NHTSA ID Number: 10979270

-71-

**SUMMARY:**

BOUGHT MY SORENTO BRAND NEW. HAVE HAD FOR 5 YEARS AND HAVE 1 YEAR LEFT ON LOAN. I HAVE RECORDS OF TAKING VEHICLE TO DEALERSHIP AND HAD SEVERAL COMPLAINTS OF HEARING RATTLE LIKE A PAINT CAN.. YET THEY BLEW ME OFF. GAVE ME POOR EXCUSES FOR REASONING AND STATED THIS WAS NORMAL SOUND.. I FELT THAT THERE WAS AN ISSUE YET BELIEVED THE TECHNICIAN OVER MY CONCERNS.. NOISES CONT FOR COUPLE YEARS YET NOTHING GOT WORSE. THEN SHE. I WAS AT 128 K MILES KIA SENDS OUT THE EXTENDED WARRANTY LETTER AND I TOOK MY VEHICLE TO ANOTHER DEALER TO GET AN UNDERSTANDING THAT THIS ISN'T A NORMAL SOUND AND THAT THERE WAS SOMETHING SERIOUSLY WRONG YET THEY BELIEVED A ENGINE FLUSH WOULD GET RID OF CARBON BUILD UP AND ALL WOULD BE GOOD.. AFTER PAYING OUT OF POCKET FOR THIS NOTHING CHANGED AND I GOT LITTLE TO NO ASSISTANCE W THE NEW DEALER I TRAILED. I DON'T TO DRIVE THE VEHICLE BC I HAD NO OPTIONS. NO MONEY LEFT TO FIX MY CAR IN WHICH CAST ME MONTHLY... REPAIRED ALL THINGS NEEDED BY THE KIA BOOK AND AS REQUIRED BY SERVICING W FUEL ADDITIVES AS RECOMMENDED YET NOW I HAVE A COMPLETE BLOWN ENGINE. STILL OWE AND NOW FIGHTING TO GET KIA TO HELP ME. THE RECALL LETTER ISN'T OUT YET THERE IS EXPECTED A RECALL.. I NOW HAVE 141K MILES AND NEED HELP.. I'M LUCKY THAT WE WERE NOT HURT.. OUR ENGINE BLEW IN THE MOUNTAINS.. TOOK ME AAA.. 150 BUCKS AND 6HRS TO GET HOME W FRIENDS ASSISTANCE..

Vehicle: 2012 Kia Sorento
Date Complaint Filed: 04/07/2017
Date of Incident: 08/07/2014
Component(s): ENGINE

-72-

NHTSA ID Number: 10971238

**SUMMARY:**

I USED MOBILE ONE 5W30, I USED KIA OIL FILTERS (2 GENERIC), I HAD 44,516K MILES ON IT ON AUGUST 7, 2014. I DID 8 OIL CHANGES. MY CAR WAS RUNNING PERFECTLY FINE. NO WHITE OR BLACK SMOKE, NO DASHBOARD LIGHTS, NOT SLUGGISH, NOTHING AND THE ENGINE SEIZED WITHOUT WARNING. I WAS ON THE HIGHWAY DOING ABOUT 65 WHEN I HEARD A FLUTTERING NOISE THAT VERY QUICKLY TURNED INTO A KNOCKING NOISE. I COULD BARELY PULL OVER WITHOUT ALMOST GETTING HIT TWICE. I HAD IT TOWED TO THE DEALERSHIP AND THEY SAID I NEVER DID ANY OIL CHANGES AND THERE WAS APPROXIMATELY 20K MILES WORTH OF SLUDGE IN MY ENGINE. MY OIL WAS CHANGED AROUND MARCH 7, 2014. KIA MOTORS DOWN RIGHT REFUSED TO EVEN LOL AT IT. I HIRED AND ATTORNEY WHO WROTE A DEMAND LETTER AND 4 MONTHS LATER THEY DOWN RIGHT REFUSED TO FIX IT UNDER THE WARRANTY. MY CAR SAT IN MY DRIVEWAY FOR OVER 15 MONTHS. I REPORTED THIS TO NHTSA BACK IN LATE 2012 EARLY 2013. I WORE A LETTER TO THE OWNER OF THE DEALERSHIP AND SHE PUT A USED ENGINE IN IT AND PAID FOR HALF. NEEDLESS TO SAY I'M HAPPY I HAVE MY CAR BACK BUT I DON'T TRUST IT. I HAVE THE TOP OF THE LINE SX AWD AND I ALSO ADDED THE AMBIENT LIGHTING AND TINTED THE FRONT WINDOWS. I LOVE MY CAR BUT FEEL I SHOULD BE COMPENSATED FOR THE SHEAR HELL AND HUGE FINANCIAL BURDEN IT HAS CAUSED MY FAMILY. I'VE HAD IT BACK SINCE NOVEMBER 12, 2016 AND THE FINANCIAL BURDEN IS STILL HAUNTING MY FAMILY.

Vehicle: 2012 Kia Sorento
Date Complaint Filed: 03/03/2017
Date of Incident: 02/24/2017
Component(s): ENGINE

NHTSA ID Number: 10958352
   **SUMMARY:**
   COMPLETE ENGINE FAILURE. WHILE PASSING A
   LARGE TRUCK ON A NARROW TWO LANE HIGHWAY
   THE ENGINE COMPLETELY SHUT DOWN MIDWAY
   THROUGH THE PASS. MOMENTUM ALLOWED THE
   CAR TO COMPLETE THE PASS, BUT DUE TO THE
   SPEED AND WITHOUT POWER STEERING IT WAS
   VERY DIFFICULT TO MANEUVER. FORTUNATELY I
   WAS FAMILIAR WITH THE ROAD AND ABLE TO MAKE
   IT SAFELY TO A PULL OFF. MY LOCAL REPAIR
   GARAGE DETERMINED THE ENGINE IS SEIZED, WITH
   METAL FRAGMENTS IN THE OIL. HAVE MADE
   MULTIPLE ATTEMPTS TO CONTACT THE DEALER
   WHERE THE CAR WAS PURCHASED. TO DATE, NO
   RESPONSE. CAR IS CURRENTLY NOT DRIVABLE.

Vehicle: 2012 Kia Sorento
Date Complaint Filed: 03/02/2017
Date of Incident: 03/02/2017
Component(s): ENGINE
NHTSA ID Number: 10958256
   **SUMMARY:**
   VEHICLE WAS ON THE HIGHWAY AT
   APPROXIMATELY 55 MPH, READY TO GET OFF OFF
   RAMP WHEN VEHICLE STARTED RUNNING ROUGH
   AND TURNED OFF, ON 2-28-17 IN THE MORNING. WE
   TOWED IT TO THE KIA SERVICE. THEY DIAGNOSED
   SLUDGE IN THE ENGINE AND THAT IT HAS TO BE
   REPLACED. THE VEHICLE ONLY HAS 84K MILES AND
   THE OIL CHANGES HAVE BEEN DONE EVERY 3 TO 4 K.
   THEY REQUESTED ALL THE OIL SERVICE RECORDS.

Vehicle: 2012 Kia Sorento
Date Complaint Filed: 02/18/2017
Date of Incident: 06/04/2016
Component(s): ENGINE

Consolidated Class Action Complaint
Case No. 8:17-cv-02208-JLS-JDE

NHTSA ID Number: 10955428
   **SUMMARY:**
   ENGINE FAILURE ENGINE STOPPED IN MIDDLE OF
   HIGHWAY TRAVELING AT 55 MPH STRAIGHT
   HIGHWAYPUT FAMILY IN DANGER 2016 JUNE OIL
   LEAKING ALL OVER GROUND AND ELECTRICAL
   FAILURE PUSHED CAR TO SIDE OF HIGHWAY .140000
   MILE PAST WARRANTY KIA REFUSE TO FIX.

Vehicle: 2012 Kia Sorento
Date Complaint Filed: 01/06/2017
Date of Incident: 12/30/2016
Component(s): ENGINE
NHTSA ID Number: 10940101
   **SUMMARY:**
   I NOTICED THAT UPON STARTING , MY KIA LET OUT
   BLUE SMOKE. I SAW NO WARNING LIGHTS, NO OIL
   ON THE GROUND, NO INDICATION OF A SERIOUS
   PROBLEM OTHER THAN THE SMOKE.

   I HAVE A LITTLE OVER 95,000 MILES ON THE CAR
   AND A 100,000 MILE WARRANTY

   I MADE AN APPOINTMENT TO SERVICE THE CAR AND
   HAVE IT LOOKED AT. EVERYTHING WAS RUNNING
   FINE AND DRIVING FINE.

   THREE DAYS LATER, THE CHECK ENGINE LIGHT
   CAME ON. NO OTHER INDICATORS WERE PRESENT. I
   DROVE THE CAR A SHORT DISTANCE AND IT SEIZED
   UP WHILE I WAS TRAVELING AT ABOUT 45 MPH.

   I CHANGED THE OIL ON A REGULAR BASIS & DID THE
   NORMAL SERVICE WORK.

   THE CAR WAS TOWED TO THE DEALER. THE DEALER
   INSPECTED THE CAR AND SAID IT NEEDED A NEW
   ENGINE AND REAR END. THE REAR END WOULD BE
   COVERED UNDER WARRANTY BUT THE ENGINE

-75-

WOULD NOT. I DID NOT HAVE MY RECEIPTS FOR OIL
CHANGES.

I AM TRYING TO GET KIA TO HONOR THE
WARRANTY. THEY WILL COVER THE REAR END BUT
NOT THE ENGINE AT THIS POINT. *TR

Vehicle: 2012 Kia Sorento
Date Complaint Filed: 12/09/2016
Date of Incident: 12/08/2016
Component(s): ENGINE
NHTSA ID Number: 10934130
   **SUMMARY:**
CATASTROPHIC ENGINE FAILURE, STATIONARY,
ENGINE SEIZED UP AFTER OWNING IT FOR 10
MONTHS. 104,000 MILES, OIL CHANGES REGULAR,
METAL SHAVINGS IN OIL, NO OIL LIGHTS OR ENGINE
LIGHTS ON. *TR

Vehicle: 2012 Kia Sorento
Date Complaint Filed: 10/12/2016
Date of Incident: 10/9/2016
Component(s): ENGINE
NHTSA ID Number: 10915477
   **SUMMARY:**
10/09/2016 DRIVING HOME FROM BEING EVACUATED
BECAUSE OF HURRICANE MATTHEW, WITH MY
DAUGHTER, SON-IN-LAW AND GRANDBABY. WHILE
GOING DOWN THE HWY 65 MILES PER HOUR, WE
HEARD A LOUD NOISE, I FELT A THUMP UNDER MY
FOOT ON THE PASSENGER SIDE. WE LATER LEARNED
IT WAS THE ROD THAT WENT THROUGH THE ENGINE.
THANK GOD MY HUSBAND COSTED THE CAR OVER
TO THE SIDE, IT WOULD NOT START. WE CALLED FOR
HELP FROM A FRIEND THEY PICKED US UP. TOWED
THE CAR TO KIA DEALERSHIP IN MYRTLE BEACH.

-76-

WE HAVE JUST LEARNED THEY ARE NOT GOING TO PAY FOR A NEW MOTOR. THEY HAVE DETERMINED IT WAS NOT THEIR FAULT!! HOW IS THIS POSSIBLE?? WITH ALL THESE COMPLAINTS. WHY IS THERE NOT A CLASS ACTION LAW SUITE?

Vehicle: 2012 Kia Sorento
Date Complaint Filed: 09/22/2016
Date of Incident: 09/22/2016
Component(s): ENGINE
NHTSA ID Number: 10908736
   **SUMMARY:**
   TL* THE CONTACT OWNS A 2012 KIA SORENTO. WHILE DRIVING VARIOUS SPEEDS, AN ABNORMAL SOUND WAS HEARD COMING FROM THE BOTTOM OF THE VEHICLE. THE VEHICLE STALLED WITHOUT WARNING. THE CONTACT PULLED OVER TO THE SHOULDER, BUT THE VEHICLE FAILED TO RESTART. THE VEHICLE WAS TOWED TO THE DEALER WHERE IT WAS DIAGNOSED THAT THERE WAS A HOLE IN THE ENGINE BLOCK, THE RODS CAME APART, AND THERE WAS NO OIL IN THE VEHICLE. THE DEALER STATED THAT THE ENGINE BLOCK WOULD HAVE TO BE REPLACED. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 14,000.

Vehicle: 2012 Kia Sorento
Date Complaint Filed: 09/22/2016
Date of Incident: 09/02/2016
Component(s): ENGINE
NHTSA ID Number: 10908752
   **SUMMARY:**
   TL* THE CONTACT OWNS A 2012 KIA SORENTO. WHILE DRIVING 80 MPH, THE VEHICLE

-77-

DECELERATED AND STALLED WITHOUT WARNING. THE VEHICLE WAS TOWED TO THE DEALER WHERE IT WAS DIAGNOSED THAT A ROD WENT THROUGH THE ENGINE BLOCK. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS 144,000.

Vehicle: 2012 Kia Sorento
Date Complaint Filed: 08/12/2016
Date of Incident: 08/07/2016
Component(s): ENGINE
NHTSA ID Number: 10895275
    **SUMMARY:**
WHILE DRIVING 70MPH ON THE HIGHWAY THE ENGINE SHUT DOWN NO WARNING LIGHTS, NO CHECK ENGINE LIGHTS, NO WARNING WHAT SO EVER. WE HAD A NEAR MISS WITH THE PERSON BEHIND US BUT WERE ABLE TO GET TO THE SIDE OF THE ROAD WITHOUT INCIDENT. THE VEHICLE WOULD NOT START. AFTER WAITING 15 MINUTES I WAS ABLE TO GET THE VEHICLE TO START, IT NOW HAS A LOUD CLANK COMING FROM THE ENGINE AND STILL NO POWER. WE WERE STRANDED UNABLE TO DRIVE IT. WE HAD IT TOWED TO THE DEALERSHIP. THE SERVICE DEPARTMENT LOOKED AT IT AND FOUND METAL SHAVINGS IN THE MOTOR, SAID HE HAS HAD TO FIX MANY OF THESE ISSUES ON THIS PARTICULAR MOTOR, GDI 2.4 L AND THAT IT IS A MANUFACTURING ISSUE NOTHING WE DID. THE CAUSE WAS FROM METAL SHAVINGS BLOCKING OIL PASSAGE TO THE RODS AND THE ROD BEARINGS WENT OUT CAUSING A CATASTROPHIC ENGINE FAILURE WITHOUT WARNING.

Vehicle: 2012 Kia Sorento
Date Complaint Filed: 08/06/2016

Date of Incident: 08/02/2016
Component(s): ENGINE
NHTSA ID Number: 10893682
    **SUMMARY:**
THE CAR WOULD LOSE POWER WHILE DRIVING THEN
ACCELERATE TO SPEED. THIS WAS FOLLOWED BY
SMOKE FROM THE TAIL PIPE. I HAVE RETURNED TO
THE YONKERS KIA DEALERSHIP ON CENTRAL PARK
AVENUE IN YONKERS NY ON AUGUST 5TH, 2016 TO
LOOK INTO A PROBLEM. A DIAGNOSTIC WAS DONE
AND IT WAS DETERMINED THE ENGINE WAS RUINED
DO TO SLUG BUILD UP. I WAS TOLD THAT A
REPLACEMENT WOULD COAST ABOUT $10,000. ODD
FOR ME BECAUSE MY WIFE AND I TOOK THE CAR IN
FOR REGULAR OIL CHANGES AND NO INDICATION OF
ENGINE ISSUES DISPLAYED ON THE DASHBOARD.

AFTER SPEAKING TO A SERVICE REPRESENTATIVE
HE STATED THAT I WOULD HAVE TO SUPPORT PROOF
OF MAINTENANCE ON MY CAR WHICH WOULD
ALLOW MY REPAIRS DONE UNDER OUR WARRANTY.
I BECAME EXTREMELY DISILLUSIONED AFTER
BRINGING THE CAR INTO KIA DUE TO AN ISSUE THAT
CAN BE TIED TO THE MANUFACTURER. WE WERE
DENIED SERVICE UNDER THE WARRANTY WHICH WE
ARE STILL UNDER. OUR CAR IS FAIRLY NEW WITH
LESS THAN 25K MILES. WE CARRIED OUT ALL OF THE
STEPS THUS FAR INCLUDING TAKING CARE OF OUR
INVESTMENT, PROVING OUR CAR HAS BEEN TAKEN
CARE OFF INCLUDING KEEPING METICULOUS
ANNOTATIONS (KEPT IN THE LOG PROVIDED BY KIA)
AND RECEIPTS TO DATE. THIS IS ANOTHER EXAMPLE
OF BIG COMPANIES LOOKING FOR LOOPHOLES AND
USING TACTICS TO SWINDLE PEOPLE OF THEIR HARD
EARNED PAYCHECKS.

HOWEVER, KIA DOES NOT WANT TO HONOR US. OUR
PAPERWORK/LOG/RECEIPTS ARE BEING TAKEN
APART WITH PREJUDICE IN ORDER TO NOT PROVIDE
SERVICES AND RECTIFY THIS ISSUE THAT IS PROVEN

-79-

TO BE A DEFECT.

WE ARE CONCLUDING THAT BASED ON THE POOR
HANDLING OF OUR CASE AND MANY OTHERS LIKE
OURS, KIA AND ITS AFFILIATES /DEALERS AND
CORPORATE, ARE NOT ABOUT SAFETY AND
CUSTOMER SATISFACTION. ALL WE ASK IS THAT KIA
HONORS ITS WARRANTY RATHER THAN FINAGLE
USE ON THE FABRICATED NOTION THAT WE ARE AT
FAULT RATHER THAN POOR ENGINEERING.

Vehicle: 2012 Kia Sorento
Date Complaint Filed: 07/29/2016
Date of Incident: 07/05/2016
Component(s): ENGINE
NHTSA ID Number: 10891685
    **SUMMARY:**
    TL* THE CONTACT OWNS A 2012 KIA SORENTO.
WHILE DRIVING 70 MPH, THE VEHICLE RANDOMLY
STALLED WITHOUT WARNING. THE VEHICLE WAS
UNABLE TO BE DRIVEN DUE TO THE FAILURE AND
WAS TOWED TO THE DEALER. THE DEALER
INDICATED THAT THE ENGINE FRACTURED AND
FRAGMENTS ENTERED INTO OTHER AREAS OF THE
VEHICLE. THE DEALER REPLACED THE ENGINE
ASSEMBLY. THE MANUFACTURER WAS NOTIFIED OF
THE FAILURE AND PROVIDED NO SOLUTION. THE VIN
WAS NOT AVAILABLE. THE APPROXIMATE FAILURE
MILEAGE WAS 67,000. UPDATED 09/23/16*LJ

Vehicle: 2013 Kia Sorento
Date Complaint Filed: 10/05/2017
Date of Incident: 09/22/2017
Component(s): ENGINE
NHTSA ID Number: 11031971
    **SUMMARY:**
    KIA REPLACED MY ENGINE TWICE, DUE TO OIL

-80-

CONSUMPTION. A MONTH AFTER THE FIRST ENGINE
REPLACEMENT, I HAD THE SAME PROBLEMS.. SMOKE
COMING OUT OF EXHAUST, LOSS OF POWER,
STALLING AND OIL CONSUMPTION. I WAS IN AND
OUT OF KIA'S SERVICE DEPARTMENT. THEY TOLD
ME NOTHING WAS WRONG! I MOVED FROM CO TO
NE, MY HUSBAND AND I HAD TO ADD OIL EVERY 100
MILES, WITH SMOKE COMING OUT OF EXHAUST AND
STALLING. LINCOLN NE KIA FOUND AN OIL LEAK AT
THE EXHAUST MANIFOLD RIGHT AWAY! KIA
INSTRUCTS THEN TO REPLACE MY ENGINE AGAIN!
ONCE THEY REPLACED ENGINE, THEY STILL SAW
THE LEAK AT THE EXHAUST MANIFOLD WITH
RESULTED IN MORE GUESSING AND PARTS. THE DAY
AFTER I PICKED IT UP, MY HUSBAND AND I WENT
OUT TO DINNER AND MY SORENTO DIED IN THE
MIDDLE OF THE ROAD. RIGHT AWAY CALLED AND
GOT IT BACK IN. AT FIRST THEY COULD NOT
DUPLICATE, HOWEVER AFTER TAKING IT 50 MILES, IT
DIED 3 TIMES. THEY STILL CAN'T FIND ANYTHING,
BUT FEEL IT MAY BE THE THROTTLE BODY. THEY
PUT A USED ONE ON AND HAVE ME DRIVE IT A FEW
WEEKS, IT DIDN'T DIE DURING THAT TIME, SO THEY
ORDERED A NEW ONE AND INSTALLED. A MONTH
LATER I DRIVE TO CO, I BREAK DOWN, IT'S TOWED
BACK AND KIA CAN'T FIND ANYTHING. I DRIVE IT
AND IT DIES 1/2 DOZEN MORE TIMES, EACH TIME I
TAKE IT RIGHT IN, BUT THE CODE HAS CLEARED AND
THEY CAN'T FIND ANYTHING! FINALLY, IT DOES AND
THE LIGHT STAYS ON, IT SHOWS IT'S THE MAP
SENSOR. KIA HAS A SPECIALIST COME OUT TO
INSTALL THAT AND INSPECT MY CAR. THEY SAY IT'S
FIXED AND SAFE. I DRIVE TO CO ON 9/22/17, 2
MONTHS LATER AND MY ENGINE CATCHES ON FIRE. I
LOSS MY BRAKES, CAN'T PUT IT IN PARK AND
EMERGENCY BRAKE WON'T WORK. FLAMES ARE
EVERYWHERE, SMOKE FILLING MY CAR. I JUMP OUT
OF MY BURNING, MOVING CAR AND SECONDS LATER
THE WHOLE THING ENGULFS IN FLAMES! MOST
HORRIFIC, AWFUL THING EVER! I WAS LUCKY

-81-

ENOUGH TO HAVE MINOR INJURIES. MY MENTAL AND EMOTIONAL STATE ARE A MESS! KIA WON'T DO ANYTHING!

Vehicle: 2013 Kia Sorento
Date Complaint Filed: 09/14/2017
Date of Incident: 06/26/2017
Component(s): ENGINE
NHTSA ID Number: 11023453
    **SUMMARY:**
    MILITARY STATIONED OVERSEAS WITH AN UPCOMING MOVE TO THE USA (MOVED AUGUST 2017).ENGINE LIGHT ILLUMINATED ON JUNE 25 2017. ENGINE KNOCK STARTED ON JUNE 26. TOWED TO DEALERSHIP IN ENGLAND ON JULY 11. CAR WAS RULED INOPERABLE WITH ENGINE FAILURE ON JULY 12. WE WERE FORCED TO LEAVE OUR CAR IN ENGLAND DUE TO PARTS AVAILABILITY AND LACK OF ASSISTANCE FROM KIA. WE STILL HAVE NOT HEARD ABOUT PARTS AVAILABILITY NOR ARE WE IN POSSESSION OF OUR CAR. NEARING 3 MONTHS WITHOUT OUR VEHICLE HAS PUT US IN FINANCIAL DISTRESS.

Vehicle: 2013 Kia Sorento
Date Complaint Filed: 07/2/2017
Date of Incident: 07/16/2017
Component(s): ENGINE
NHTSA ID Number: 11010999
    **SUMMARY:**
    CAR HAS 45K MILES. TOTAL LOSS DUE TO ENGINE FIRE. OIL PAN FAILURE. CAUSE AND ORIGIN REPORT PENDING

Vehicle: 2013 Kia Sorento
Date Complaint Filed: 07/11/2017

Consolidated Class Action Complaint
Case No. 8:17-cv-02208-JLS-JDE

Date of Incident: 06/30/2017
Component(s): ENGINE
NHTSA ID Number: 11004374

**SUMMARY:**

MY HUSBAND AND I WERE DRIVING NORTH ON I-49
IN LOUISIANA WHEN OUR 2013 KIA SORENTO
(APPROXIMATELY 86,000 MILES) BEGAN MAKING A
CLICKING/KNOCKING NOISE UPON ACCELERATION,
THE CHECK ENGINE LIGHT BEGAN BLINKING, AND
THE ENGINE IMMEDIATELY SHUT DOWN. WE PULLED
OVER TO THE SHOULDER, TURNED THE VEHICLE OFF,
AND ATTEMPTED TO RESTART THE VEHICLE;
HOWEVER, THE ENGINE FAILED TO RESTART. WE
TURNED OUR EMERGENCY LIGHTS ON FOR
CAUTIONARY PURPOSES, BUT AFTER
APPROXIMATELY 30 MINUTES, THE LIGHTS
COMPLETELY STOPPED WORKING. THERE WAS
EVIDENCE OF OIL LEAKAGE UNDERNEATH THE
VEHICLE, AS WELL AS OIL SPLATTER UNDERNEATH
THE HOOD OF THE VEHICLE NEAR THE ENGINE AND
OVER THE ENTIRE EXTERIOR OF THE VEHICLE, FROM
THE FRONT HOOD TO THE BACK WINDOW. WE HAD
THE VEHICLE TOWED TO THE NEAREST KIA
DEALERSHIP AND WERE TOLD BY THE SERVICE
DEPARTMENT THAT THE BEARINGS IN THE ENGINE
HAD FAILED, WHICH RESULTED IN "CATASTROPHIC
ENGINE FAILURE," AND THAT ENGINE WILL NEED TO
BE REPLACED. WE WERE ALSO INFORMED THAT THE
ENGINE IN OUR VEHICLE IS A 2.4-L MPI ENGINE,
WHICH IS NOT PART OF THE CURRENT RECALL;
HOWEVER, INDIVIDUALS AT THE DEALERSHIP AND
WITH KIA CUSTOMER SERVICE CONFIRMED THAT
THE PROBLEMS WE EXPERIENCED ARE THE EXACT
SAME PROBLEMS THAT HAVE BEEN REPORTED WITH
THE 2.4-L GDI ENGINES THAT ARE PART OF THIS
RECALL. WE HAVE BEEN EXTREMELY DILIGENT
WITH OIL CHANGES, AND HAD APPROXIMATELY 2000
MILES UNTIL OUR NEXT OIL CHANGE, WHICH WE
CAN SUPPORT WITH DOCUMENTATION. KIA HAS
DENIED OUR REQUEST FOR ASSISTANCE BECAUSE

-83-

1    OUR VEHICLE IS NO LONGER UNDER WARRANTY.

2

3    Vehicle: 2013 Kia Sorento
     Date Complaint Filed: 09/08/16
4    Date of Incident: 08/3016
     Component(s): ENGINE
5    NHTSA ID Number: 10904585
6           SUMMARY:
7    ON TUESDAY, AUGUST 30TH, 2016, MY HUSBAND WAS
     DRIVING IN OUR 2013 KIA SORENTO WITH OUR TWO
8    TODDLERS WHEN THE CAR JUST STOPPED RUNNING
     WITH NO WARNING WHATSOEVER. HE WAS GOING
9    APPROXIMATELY 45 MPH DRIVING STRAIGHT WHEN
10   THE FAILURE OCCURRED. WE LOST ALL POWER
     INCLUDING POWER STEERING SO IT TOOK ALL HE
11   HAD TO COAST AND PULL OVER SAFELY. HE CALLED
     KIA WHO GOT A TOW TRUCK EN ROUTE TO TOW THE
12   VEHICLE TO OUR DEALERSHIP. MY DAD HAD TO
13   COME BY TO PICK UP MY FRIGHTENED GIRLS WHILE
     MY HUSBAND WAITED WITH THE VEHICLE (IT TOOK
14   TWO HOURS). WE HAVE NEVER HAD ANY MAJOR
     ISSUES BEFORE WITH THIS VEHICLE AND
15   FAITHFULLY HAD IT MAINTAINED THROUGH THE
16   DEALERSHIP. THE NEXT DAY, THE SERVICE
     DEPARTMENT GAVE US NEWS WE WERE NOT
17   EXPECTING; THE ENGINE WAS BLOWN AS WE BROKE
18   A CRANKSHAFT. THIS VEHICLE ONLY HAS 36,000
     MILES ON IT!! LUCKILY THIS IS COVERED UNDER THE
19   WARRANTY SINCE THEY VERIFIED THAT IT WAS
20   PROPERLY MAINTAINED BY THEM. FAST FORWARD A
     WEEK AND WE GET THE CALL TONIGHT THAT KIA
21   HAS YET TO RELEASE A NEW ENGINE TO BE
     INSTALLED AND THEY HAVE NO TIME FRAME.
22

23

24

25

26

27   Vehicle: 2014 Kia Sorento
28

-84-

Date Complaint Filed: 08/21/2017
Date of Incident: 08/16/2017
Component(s): ENGINE
NHTSA ID Number: 11018645

**SUMMARY:**

MY CAR STARTING TO BEGIN TO SHOW LACK OF
POWER AT FIRST, WHICH I HAD MENTIONED IN
ADVANCE IN SERVICE APPOINTMENTS. TWO DAYS
BEFORE MY ONE YEAR OF OWNING IT, THE CAR
BEGAN TO STALL OUT WHEN I STOPPED FOR TRAFFIC
LIGHTS WITHIN THE SAME DAY A OIL LIGHT
WARNING FLASHED, AND THE CAR STARTED TO
HAVE A KNOCKING NOISE. I WENT AND ADDED TWO
QUARTS OF OIL. ONCE THE OIL LIGHT DISAPPEARED
BUT THE KNOCKING CONTINUED . I TOOK THE CAR
TO MY REGULAR KIA SERVICE PROVIDER THE SAME
DAY AND IN THE PROCESS OF GOING THERE THE
ENGINE LIGHT CAME ON. I WAS TOLD TO BRING IT IN
THE NEXT DAY, THE ATTENDANT TOLD ME THAT HE
COULD HEAR THE KNOCKING, WHICH SOUNDED
CONCERNING. I BROUGHT THE CAR BACK THE NEXT
DAY AS INSTRUCTED AND WAS TOLD THAT I
SHOULD BE ABLE TO PICK IT UP AT END OF DAY.
TIME PASSED BY AND IT WAS GETTING LATE
TOWARDS CLOSING, SO I CALLED THE SHOP. I WAS
TOLD THAT THE ENGINES HAD SEIZED AND THAT
THE OIL BAY WAS DRY. I HAVE NEVER SEEN
SOMETHING HAPPEN SO FAST. I HAD NO WARNING
OF ANY KIND OF OIL ISSUES UNTIL THE DAY BEFORE,
AND I HAD BEEN TAKING THE CAR IN FOR IT'S
REGULAR SERVICES. THE CAR WAS IN THE KIA
SERVICE SHOP, AND MOVED BY THEM. IT WAS
RUNNING WHEN I BROUGHT IT IN BUT I AM BEING
TOLD THAT THE ENGINE IS SHOT.

Vehicle: 2011 Kia Sportage
Date Complaint Filed: 02/13/2017
Date of Incident: 02/03/2017
Component(s): ENGINE

-85-

NHTSA ID Number: 10954281
SUMMARY:
2011 KIA SPORTAGE - ENGINE FAILED WITHOUT
WARNING WITH TWO TODDLERS IN CAR. LUCKILY
THIS HAPPENED AS I TURNED OFF A HIGHWAY AND
WAS ABLE TO STOP ON THE SHOULDER.
MANUFACTURER REFUSES TO FIX BECAUSE I DON'T
HAVE MAINTENANCE RECORD. I HAVE A FRIEND
WHO HAS BEEN CHANGING OIL/SERVICING CAR. I
HAVE LEARNED THAT MANY OWNERS OF THIS
YEAR/MODEL CAR HAVE SIMILAR EXPERIENCES. I
FEEL THE MANUFACTURER SHOULD DEAL WITH A
PROBLEM AS SEVERE AS THIS IMMEDIATELY!

Vehicle: 2011 Kia Sportage
Date Complaint Filed: 06/20/2016
Date of Incident: 06/15/2016
Component(s): ENGINE
NHTSA ID Number: 10875228
SUMMARY:
ENGINE SHUT DOWN IN THE HIGHWAY CAUSING
LOSS OF POWER STEERING/BRAKES. CAR HAS LESS
THAN 80K MILES, ALL OIL CHANGES PERFORMED PER
SPEC RECENTLY ADTER SWITCHING TO FULL
SYNTHETIC OIL CHANGED EVERY 5000 MILES.
ENGINE SEIZED. VERY SIMILAR TO HYUNDAI RECALL
ISSUED 9/25/2015. SAME ENGINE MANUFACTURED IN
THE SAME PLANT WITH A DIFFERENT NAME BADGE.

Vehicle: 2011 Kia Sportage
Date Complaint Filed: 10/01/2014
Date of Incident: 08/30/2014
Component(s): ENGINE
NHTSA ID Number: 10640483
SUMMARY:
SECOND CATASTROPHIC FAILURE OF 2.0 LITER
TURBOCHARGED ENGINE IN LESS THAN 30,000 MILES

-86-

SERVICE. *TR

Vehicle: 2012 Kia Sportage
Date Complaint Filed: 10/18/2017
Date of Incident: 10/06/2017
Component(s): ENGINE
NHTSA ID Number: 11034261
 SUMMARY:
 MY DAUGHTER WAS DRIVING ON THE HIGHWAY
 AND THE CAR JUST STOPPED, NO WARNING,
 NOTHING. LUCKILY WAS ABLE TO GET TO SIDE OF
 ROAD, TOWED AND MECHANIC SAID THE ENGINE IS
 COMPLETELY BLOWN/SEIZED. WON'T START, STILL
 AT MECHANICS IN ANOTHER STATE. NO WARNINGS
 OR PRIOR ISSUES. CONSISTENT W/OIL CHANGES AND
 UPKEEP

Vehicle: 2012 Kia Sportage
Date Complaint Filed: 07/03/2017
Date of Incident: 02/12/2017
Component(s): ENGINE
NHTSA ID Number: 11002799
 SUMMARY:
 DRIVING DOWN THE ROAD AT APPROXIMATELY 45-
 50 MPH AND THE ENGINE BEGAN KNOCKING. LOST
 ALL POWER TO THE CAR. A FEW MOMENTS LATER,
 THE CAR STOPPED COMPLETELY IN THE MIDDLE OF
 A BUSY INTERSECTION. I GOT OUT OF THE CAR AND
 PUSHED IT INTO A GAS STATION PARKING LOT. THE
 CAR WOULD CRANK BUT THE KNOCKING OF THE
 ENGINE WAS BECOMING WORSE. I HAD THE CAR
 TOWED TO A SHOP WHERE THE PROBLEM WAS
 DIAGNOSED AS "ROD KNOCK" WHICH IS CAUSED BY
 A FAULTY MOTOR, ALLOWING METAL SHAVINGS TO
 ENTER AND BLOCK THE FLOW OF OIL TO THE
 MOTOR. NOT WANTING TO BELIEVE THAT I WAS
 GOING TO HAVE TO PAY $5,000 TO REPLACE THE

-87-

ENGINE, I GOT A SECOND OPINION FROM A KIA DEALERSHIP IN MY HOME TOWN. NOT ONLY DID THEY CONFIRM WHAT THE INITIAL MECHANIC HAD DIAGNOSED, BUT WERE VERY RUDE WHEN ASKING US TO "REMOVE OUR CAR FROM THEIR PARKING LOT BECAUSE UNLESS WE WERE GOING TO PAY THEM TO FIX IT, IT HAD NO BUSINESS BEING THERE." ALL OIL CHANGES HAVE BEEN DONE REGULARLY AND I HAVE DOCUMENTATION FOR THEM ALL. OUR VEHICLE HAD 74,000 MILES ON IT AND WAS KEPT IN EXCELLENT CONDITION. AS OF NOW, KIA HAS DONE NOTHING TO EXPLAIN WHY NOTHING HAS BEEN DONE ABOUT OUR PROBLEM, AS WELL AS MANY OTHERS WHO HAVE HAD THIS SAME PROBLEM.

Vehicle: 2012 Kia Sportage
Date Complaint Filed: 05/27/2017
Date of Incident: 05/24/2017
Component(s): ENGINE
NHTSA ID Number: 10991919

**SUMMARY:**
DRIVING DOWN THE FREEWAY AT 80MPH (SPEED LIMIT IN IDAHO), RPMS STARTED TO REV OVER 6K, HEARD A TICKING SOUND, THEN A VERY LOUD BANG, FOLLOWED BY A BIG PUFF OF BLACK SMOKE, ALL IN THE SPAN OF AROUND 20 SECONDS. CAR DIED ON THE FREEWAY, HAD TO COAST TO GET IN EMERGENCY LANE. THEN THE CHECK ENGINE LIGHT CAME ON. THERE WAS NO INDICATION OF ENGINE ISSUES UNTIL IT WAS FAR TOO LATE. THANKFUL THE CARS BEHIND ME WERE PAYING ATTENTION OR I WOULD HAVE BEEN IN AN AWFUL ACCIDENT WITH AN 18 WHEELER. MECHANIC FOUND THAT ENGINE HAD THROWN A ROD AND PUT A HOLE IN THE ENGINE BLOCK. 106K MILES ON THE VEHICLE, DID NOT EXPECT TO HAVE ENGINE FAILURE THIS EARLY. THIS VIN IS NOT PART OF THE CURRENT RECALL, I BELIEVE IT SHOULD BE, AS IT HAS BEEN PROPERLY MAINTAINED AND SHOULD NOT HAVE FAILED ON

-88-

THE FREEWAY WITH NO INDICATION OF PROBLEMS
UNTIL IT WAS TOO LATE.

Vehicle: 2012 Kia Sportage
Date Complaint Filed: 05/22/2017
Date of Incident: 04/24/2017
Component(s): ENGINE
NHTSA ID Number: 10991094

**SUMMARY:**
CRUISING ALONG AT FREEWAY SPEED, 75 MPH,
VEHICLE MOMENTARILY LOST POWER AS IF IT WAS
GOING TO STALL OR DOWN SHIFT. UPON RESUMING
SPEED, HEARD A TAPPING NOISE AND A LOUD BANG,
SAW SMOKE COMING OUT THE BACK OF THE
VEHICLE AND OBJECTS TOSSED OUT. SAW A
VEHICLE FOLLOWING IN MY LANE, SWERVE AS IF
AVOIDING AN OBJECT BUT DID NOT STOP. COASTED
TO THE SIDE OF THE FREEWAY, NOTICED A TRAIL OF
OIL. UPON PARKING, CHECKED UNDERNEATH THE
ENGINE COMPARTMENT, NOTICED OIL DRIPPING
AND METAL PIECES, AND WHAT APPEARED TO BE A
HOLE IN THE OIL PAN. VEHICLE WAS TOWED TO A
DEALERSHIP AND WAS TOLD, A COUPLE OF DAYS
LATER, THAT THE VEHICLE MAY BE SUBJECT TO A
RECALL FOR SIMILAR DEFECTS. DOING AN ONLINE
QUERY, I NOTICED THAT THE 2.4 ENGINE FOR THIS
MODEL WAS NOT A PART OF THE RECALL
CAMPAIGN, ALTHOUGH OTHER MODELS WITH THE
2.4 ENGINE WERE.

FORTUNATELY, IT APPEARS THAT NO FOLLOWING
VEHICLES WERE HIT WITH ANY OF THE DEBRIS
COMING OFF THE VEHICLE. UPON CHECKING THE
SIDE OF THE FREEWAY, I PICKED UP WHAT
APPEARED TO BE A PIECE OF THE ENGINE'S
CONNECTING ROD. HAD THIS PIECE HIT A
FOLLOWING VEHICLE, IT COULD'VE RESULTED IN
PROPERTY DAMAGE OR UNKNOWN INJURIES TO ITS
OCCUPANTS.

-89-

Vehicle: 2012 Kia Sportage
Date Complaint Filed: 04/09/2014
Date of Incident: 04/03/2014
Component(s): ENGINE
NHTSA ID Number: 10578489

    **SUMMARY:**

    DRIVING ON THE INTERSTATE, THE ENGINE OF THE
CAR GAVE OUT. I WAS GIVEN ZERO WARNING
BEFORE THE ENGINE COMPLETELY DIED AND I WAS
FORCED TO PULL MY CAR OFF TO THE SIDE OF THE
ROAD. I WAS LUCKY THAT THE CAR BEHIND ME DID
NOT HIT ME. THE CAR IS ONLY 2 YEARS OLD WITH
ABOUT 30,000 MILES AND THIS SHOULD NOT HAVE
HAPPENED. IT PUT MY LIFE AND THAT OF MY 11
MONTH OLD SON AT RISK. THE PUBLIC NEEDS TO BE
AWARE OF THIS ISSUE! NO ONE SHOULD HAVE TO
WORRY ABOUT BEING IN A FATAL ACCIDENT DUE TO
KIA'S FAULTY PARTS. *TR

Vehicle: 2012 Kia Sportage
Date Complaint Filed: 03/24/2014
Date of Incident: 03/20/2014
Component(s): ENGINE
NHTSA ID Number: 10574623

    **SUMMARY:**

    AT APPROXIMATELY 5:30AM, I WAS DRIVING DOWN
THE FREEWAY. MY KIA SPORTAGE SUDDENLY MADE
A LOUD BANG, AND THE ENGINE STALLED. IT ALSO
SHUT OFF THE HEADLIGHTS, AND DISABLED THE
POWER STEERING, WHILE ON A CURVE, GOING
70MPH. THE POWER ASSISTED BRAKES WERE ALSO
NOT WORKING, BECAUSE THE ENGINE SHUT DOWN. I
MANAGED TO PULL THE VEHICLE OVER WITHOUT
INCIDENT, BUT WAS ALMOST HIT BY SEVERAL
VEHICLES THAT COULD NO LONGER SEE ME,
BECAUSE MY LIGHTS WERE OFF. THE ENGINE

WOULD NOT START UP AGAIN, AND I HAD TO HAVE THE VEHICLE TOWED HOME. THIS IS THE 3RD TIME THIS VEHICLE HAS DONE THIS, AND KIA REFUSES TO REPAIR THE VEHICLE. *TR

Vehicle: 2013 Kia Sportage
Date Complaint Filed: 09/19/2017
Date of Incident: 09/08/2017
Component(s): ENGINE
NHTSA ID Number: 11024230
**SUMMARY:**
JUST BEFORE REACHING TRYON, NC, COMING FROM CHARLESTON, SC, WE BEGAN TO HEAR A DISTINCT KNOCKING NOISE COMING FROM UNDER THE HOOD, AND WERE UNABLE TO ACCELERATE ANY FURTHER THAN AROUND 55 MPH. EVENTUALLY THE ENGINE FAILED AND WE WERE ABLE TO JUST PULL OFF TO THE SIDE OF THE ROAD JUST YARDS FROM WHERE THE SHOULDER ENDED, AND WE ALMOST HIT A STATIONARY VEHICLE JUST IN FRONT OF US ON THE SHOULDER. WE WERE TRYING TO EVACUATE FROM THE HURRICANE WITH MY 7 MONTH OLD GRANDDAUGHTER.. AFTER THE ENGINE HAD COOLED, WE CHECKED AND MADE SURE THAT MY OIL WAS OVER HALF FULL, AND IT WAS. A RENTAL PLACE STAYED OPEN A FEW EXTRA HOURS FOR US, AND WE MANAGED TO GET TO OUR DESTINATION THREE HOURS AWAY FROM THE INCIDENT, BECAUSE WE WERE IN DESPERATE NEED OF SOMEWHERE THAT ALLOWED DOGS. ON MONDAY, WE FOUND OUT FROM THE MECHANIC THE CAR HAD EVENTUALLY BEEN TOWED TO THAT THE ENGINE WAS SHOT. THE MECHANIC LET US KNOW THAT THIS WAS AN EXTREMELY COMMON ISSUE WITH OUR MAKE AND MODEL, AND THAT WE SHOULD HAVE HAD A RECALL ISSUED FOR SAFETY MEASURES. WHILE IN ASSEMBLY THERE WAS A MANUFACTURING ERROR WHICH WOULD NOT BE NOTICED UNLESS THE DRIVER WAS GOING LONG DISTANCE ON THE

-91-

HIGHWAY. THERE WERE TINY METAL SHAVINGS
WITHIN THE ENGINE THAT BLOCKED THE OIL FROM
PROPERLY CIRCULATING THROUGH THE ROD
BEARINGS TO CRITICAL PARTS OF THE ENGINE. WE
CONTACTED CORPORATE, AND THEY TOLD US OUR
CAR WAS NOT LISTED UNDER THE WARRANTY
BECAUSE IT WAS ASSEMBLED IN A DIFFERENT
LOCATION THAN THE ONES RECALLED. THEY THEN
TOLD US I HAD A 60,000 MILE WARRANTY INSTEAD
OF A 100,000 MILE, WHICH WAS A FLAT OUT LIE. WE
CONTACTED OUR DEALER AND THEY CONFIRMED
WE HAD A 100K. NOW AFTER COLLECTING ALL OF
OUR SERVICE RECORDS, THE DEALERSHIP IS TRYING
TO TELL US THEY WILL NOT COVER THE 7,000
DOLLAR COST BECAUSE MY OIL WAS LOW, WHICH IS
ANOTHER FLAT OUT LIE. I DON'T WANT TO MAKE
ANY MONEY OFF THEM, I JUST WANT MY REPAIRS
COVERED.

Vehicle: 2013 Kia Sportage
Date Complaint Filed: 08/18/2017
Date of Incident: 06/26/2017
Component(s): ENGINE
NHTSA ID Number: 11016229
**SUMMARY:**
2013 KIA SPORTAGE ENGINE FAILURE IN JUNE OF 2017. I
WAS DRIVING THE VEHICLE EASTBOUND AT 75MPH ON
INTERSTATE 10 BEAR BLYTHE, AZ IN SIGNIFICANT
TRAFFIC. THE ENGINE SHUT OFF AND POWER STEERING
FAILED. I ABLE TO AVOID A COLLISION BUT SPUN OUT
INTO THE INTERSTATE MEDIAN.

I HAD THE VEHICLE TOWED TO A KIA DEALERSHIP IN
AVONDALE, AZ. KIA DEALERSHIP CONFIRMED THE
ENGINE HAD SEIZED. KIA DENIED WARRANTY COVERAGE
FOR ENGINE CLAIMING IT IS NOT PART OF THE KIA
ENGINE SAFETY RECALL CAMPAIGN SC147. KIA CLAIMS
THE ENGINE WAS MANUFACTURED IN KOREA SO IT IS NOT
INCLUDED. HOWEVER, THERE ARE AT LEAST 6 OTHER

-92-

"NOT COVERED" SPORTAGE'S PARKED IN SERVICE LOT AWAITING REPAIR. SERVICE MANAGER REPORTED TO ME THAT KIA IS DENYING THE COVERAGE WHEN HE "KNOWS" THE ENGINE PROBLEM IS CAUSED BY A DEFECTIVE MANUFACTURING PROCESS.

Vehicle: 2014 Kia Sportage
Date Complaint Filed: 08/28/2016
Date of Incident: 08/03/2016
Component(s): ENGINE
NHTSA ID Number: 10902014
**SUMMARY:**
WHILE DRIVING MY LEASED 2014 KIA SPORTAGE, THERE WAS NONSTOP CONTINUOUS HESITATION "BUCKING", WITH WHITE SMOKE BLOWING OUT OF THE TAILPIPE, LOSS OF SPEED THEREFORE HAVING TO PRESS HARD ON GAS PEDAL TO AVOID ACCIDENT BY TRYING PULL OFF ROAD. THIS HAPPENS ON CITY ROADS AND HIGHWAY. NO DASHBOARD LIGHT INDICATED THERE WAS A PROBLEM. THE SERVICE ADVISOR AT DESTINATION KIA SAID MY MODEL DOES NOT COME WITH WARNING LIGHTS.

IT APPEARS TO BE AN OIL PROBLEM. OIL LEVEL GOES DOWN WITH NO VISIBLE SIGNS OF LEAKING. I ONLY HAVE 24,000 ON MY KIA SPORTAGE, WITH ONE YEAR LEFT ON MY LEASE. I AM NOT ABLE TO DRIVE THE VEHICLE AS I AM IN FEAR OF STALLING IN TRAFFIC CAUSING MYSELF OR OTHERS TO BE INJURED.

**E. Pre-Sale Durability Testing**

90.     Defendants are experienced in the design and manufacture of consumer vehicles. As experienced manufacturers, Defendants conduct tests, including pre-sale durability testing, on incoming components, including the engine, to verify the parts are free from defects and align with Defendants' specifications. Hyundai represents that it

-93-

conducts a "brutal amount of testing" on its vehicles, including "everything from pushing the engine in triple-digit heat and subzero arctic conditions to crashing over 100 cars to ensure every measure of safety before production of the car even begins."[10]

91.     Hyundai acknowledges that it is a "latecomer in the global automotive industry" but that, in response to that, "Hyundai motor has been proving itself through the most stringent and toughest tests in the development process."[11] Among these tests is the "WOW (Worst of Worst) test" which has been nicknamed the "door to hell" because the test is held in extreme areas including the rough roads, hilly sections and moist areas in China, extremely hot areas in the Middle East, extreme cold areas in Russia and highways, mountainous areas and slanted hills in Germany. This is where Hyundai Motor's confidence in its powertrain's high performance and strong durability lies."

92.     As a result, Hyundai was well aware of the engine defect prior to the Class Vehicles being sold to Class Members.

**F.   Hyundai Whistle Blower Comes Forward**

93.     According to Reuters, Kim Gwang-ho, then an employee on Hyundai's Quality Strategy team, travelled to Washington D.C. in August 2016 to inform NHTSA that more vehicles should have been recalled over the defects described herein. He also reported several safety issues to NHTSA authorities.[12]

94.     Mr. Kim reported to Reuters that he provided NHTSA with 250 pages of internal documents related to the alleged engine defect, which he described as a design issue instead of a manufacturing problem. Citing an internal report from Hyundai's Quality Strategy team, Mr. Kim reported that "the problem was not just with the

---

[10] https://www.hyundaiusa.com/new-thinking/quality.aspx (last visited Dec. 4, 2017).
[11] http://brand.hyundai.com/en/brand/technology/powertrain.do (last visited Dec. 4, 2017).
[12] https://www.reuters.com/article/us-hyundai-whistleblower/blowing-the-whistle-in-south-korea-hyundai-man-takes-on-chaebol-culture-idUSKCN18B0J5 (last visited July 25, 2018).

-94-

manufacturing process but also engine design, meaning Hyundai would need to fix engines in all the affected cars, at a steep cost."

95.   Kim also attempted to provide those documents directly to Reuters, but Hyundai obtained an injunction that prevented Reuters from obtaining the documents.

## G. Defendants' Warranty-Related Practices

96.   HMA issued two relevant warranties with each Hyundai Class Vehicle: a "New Vehicle Limited Warranty," and a "Powertrain Warranty." Under the basic New Vehicle Limited Warranty, HMA agreed to repair defects reported within the earlier of 5 years or 60,000 miles.

97.   Under the Powertrain Warranty, HMA agreed to repair defects affecting various powertrain components through 10 years and 100,000 miles. According to the Warranty and Consumer Information Manual, Powertrain Coverage Components include:

> **ENGINE**
> Cylinder block/head and all internal parts, manifolds, timing gears, timing chain, timing cover, gaskets and seals, oil pump, water pump, fly-wheel, oil pan assembly, rocker cover and engine mounts, and turbocharger.
>
> **TRANSMISSION/TRANSAXLE**
> Case and all internal parts, axle shafts (front/rear), constant velocity joints, front/rear hub bearings, propeller shafts, seals and gaskets, torque converter and converter housing and clutch cover and housing, transfer case for Santa Fe, Tucson and Veracruz . . . .

98.   HMA instructs vehicle owners and lessees to bring their vehicles to a Hyundai dealership for the warranty repairs. Many owners and lessees have presented Hyundai Class Vehicles to Hyundai dealerships with complaints related to the engine defect.

99.   HMA has evaded its warranty obligations by failing to tell consumers that their vehicles are defective and by representing that the cause of the defect is the owner's

-95-

neglect to properly maintain the engine oil and/or engine oil level. This representation, however, is false as the engine is inherently defective.

100.    In addition, Hyundai has also evaded its warranty obligations by requiring consumers to produce the entire maintenance history of the Hyundai Class Vehicles, including a mandate that all oil changes be completed at a Hyundai dealership, before determining whether to make the necessary repairs under warranty. Hyundai, however, knows that the defect in the Hyundai Class Vehicles' engines manifests even if the owner or lessee has followed Hyundai's oil change guidelines. Even if consumers produce their vehicles' maintenance history, Hyundai blames the defect and engine failure on the consumer, refuses to cover the necessary repairs under warranty, and charges as much as $10,000 to repair the engine.

101.    Hyundai also advertises that it offers "America's Best Warranty." With respect to the powertrain warranty, however, Hyundai publicizes the existence of 10 year/100,000 mile powertrain warranty but fails to mention that subsequent owners only receive powertrain warranty coverage for 5 years/60,000 miles. As such, subsequent owners are left to discover the limited warranty coverage after purchasing their vehicle. Hyundai's failure to cover repairs under the powertrain warranty between 5 years/60,000 miles and 10 years/100,000 miles is therefore unconscionable and the warranty limitation is unenforceable. A typical Hyundai advertisement touting "America's Best Warranty" is pictured below:



AMERICA'S BEST WARRANTY

• 10-year/100,000-mile Powertrain Limited Warranty

• Lifetime Hybrid Battery Warranty

102.   In many instances, consumers have incurred and will continue to incur expenses for the diagnosis of the defect, despite such defect having been contained in the Hyundai Class Vehicles when manufactured by Defendants, repair and replacement of the GDI Engine and the unnecessary and premature replacement of the connecting rods, crank shaft, oil pump, and other engine components.

103.   Furthermore, a number of Class Members who presented their Hyundai Class Vehicles to Hyundai dealerships because of issues related to the defective connecting rod bearings and insufficient engine oil lubrication channels were denied warranty repairs and, instead, were informed that nothing was wrong with their vehicles. As a result, after expiration of the warranty period, Class Members are forced to pay costly repairs to correct the defect.

## CLASS ALLEGATIONS

104.   Plaintiffs bring this action on their own behalf, and on behalf of a nationwide class pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and/or 23(b)(3).

**Nationwide Class:**
All persons or entities in the United States who are current or former owners and/or lessees of a Class Vehicle.

105.   In the alternative to the Nationwide Class, and pursuant to Federal Rule of Civil Procedure 23(c)(5), Plaintiffs seek to represent the following state classes only in the event that the Court declines to certify the Nationwide Class above. Specifically, the state classes consist of the following:

**California Class:**
All persons or entities in California who are current or former owners and/or lessees of a Class Vehicle for primarily personal, family or household purposes, as defined by California Civil Code § 1791(a).

**Ohio Class:**

-97-

All persons or entities in Ohio who are current or former owners
and/or lessees of a Class Vehicle.

106.   Together, the California Class, the Ohio Class, and the Nationwide Class
shall be collectively referred to herein as the "Class." Excluded from the Class are HMA,
HMC their affiliates, employees, officers and directors, persons or entities that purchased
the Class Vehicles for resale, and the Judge(s) assigned to this case. Plaintiffs reserve the
right to modify, change, or expand the Class definitions based on discovery and further
investigation.

107.   <u>Numerosity</u>: Upon information and belief, the Class is so numerous that
joinder of all members is impracticable. While the exact number and identities of
individual members of the Class are unknown at this time, such information being in the
sole possession of Defendant and obtainable by Plaintiffs only through the discovery
process, Plaintiffs believe, and on that basis allege, that hundreds of thousands of Class
Vehicles have been sold and leased in each of the states that are the subject of the Class.

108.   <u>Existence and Predominance of Common Questions of Fact and Law</u>:
Common questions of law and fact exist as to all members of the Class. These questions
predominate over the questions affecting individual Class Members. These common legal
and factual questions include, but are not limited to, whether:

a.     The Class Vehicles were sold with a defect;

b.     Defendants knew of the defect but failed to disclose the problem and
its consequences to their customers;

c.     A reasonable consumer would consider the defect or its consequences
to be material;

d.     Defendants have failed to provide free repairs as required by their
New Vehicle Limited Warranty and/or Powertrain Warranty;

e.     The defect is a safety defect;

f.     Defendants should be required to disclose the existence of the defect;
and

-98-

g.    Defendants' conduct violates the California Legal Remedies Act, California Unfair Competition Law, and the other statutes asserted herein.

109.    Typicality: All of Plaintiffs' claims are typical of the claims of the Class because Plaintiffs purchased Class Vehicles with the same engine defect, defective vehicle design, and defective engine, as did each member of the Class. Furthermore, Plaintiffs and all Members of the Class sustained monetary and economic injuries including, but not limited to, ascertainable losses arising out of Defendants' wrongful conduct. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all absent Class Members.

110.    Adequacy: Plaintiffs are adequate representatives because their interests do not conflict with the interests of the Class that they seek to represent, they have retained counsel competent and highly experienced in complex class action litigation, and they intend to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

111.    Superiority: A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiffs and Members of the Class. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct. It would be virtually impossible for Members of the Class individually to redress effectively the wrongs done to them. Even if the Members of the Class could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court. Upon information and belief, members of the Class can be readily identified and

notified based on, *inter alia*, Defendants' vehicle identification numbers, warranty claims, registration records, and database of complaints.

112.   Defendants have acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

## FIRST CAUSE OF ACTION

### VIOLATIONS OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT ("CLRA") (Cal. Civ. Code § 1750, *et seq.*)

### (On Behalf of the Nationwide Class or, Alternatively, the California Class)

113.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

114.   Plaintiffs bring this claim on behalf of themselves and on behalf of the Nationwide Class. Alternatively, Plaintiff Coats brings this claim on behalf of himself and on behalf of the California Class against Defendants.

115.   Defendants are persons as that term is defined in California Civil Code § 1761(c).

116.   Plaintiffs and the Class Members are "consumers" as that term is defined in California Civil Code §1761(d).

117.   Defendants engaged in unfair and deceptive acts in violation of the CLRA by the practices described above, and by knowingly and intentionally concealing from Plaintiffs and Class Members that the Class Vehicles suffer from a defect(s) (and the costs, risks, and diminished value of the vehicles as a result of this problem). These acts and practices violate, at a minimum, the following sections of the CLRA:

(a)(2) Misrepresenting the source, sponsorship, approval or certification of goods or services;

(a)(5) Representing that goods or services have sponsorships, characteristics, uses, benefits or quantities which they do not have, or that a person has a sponsorship, approval, status, affiliation or connection which he or she does not have;

-100-

(a)(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; and

(a)(9) Advertising goods and services with the intent not to sell them as advertised.

118.   Defendants' unfair or deceptive acts or practices occurred repeatedly in Defendants' trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

119.   Defendants knew that the Class Vehicles and GDI Engines were defectively designed or manufactured, would fail prematurely, and were not suitable for their intended use.

120.   Defendants were under a duty to Plaintiffs and the Class Members to disclose the defective nature of the Class Vehicles and the defective nature of the connecting rod bearings and insufficient engine oil lubrication channels because:

a.     Defendants were in a superior position to know the true state of facts about the safety defect and associated repair costs in the Class Vehicles and their engines;

b.     Plaintiffs and the Class Members could not reasonably have been expected to learn or discover that the Class Vehicles and their engine had dangerous safety defect until manifestation of the defect;

c.     Defendants knew that Plaintiffs and the Class Members could not reasonably have been expected to learn or discover the safety and security defect and the associated repair costs that it causes until the manifestation of the defect; and

d.     Defendants actively concealed the safety and security defect and the associated repair costs by asserting to Plaintiffs and Class Members that the cause of their engine problems was the result of Plaintiffs' and the Class Members' inability to maintain the proper engine oil levels despite knowing the repairs needed to correct the defect.

121.   In failing to disclose the engine defect and the associated safety risks and repair costs that result from it, Defendants have knowingly and intentionally concealed material facts and breached their duty to disclose.

122.   The facts concealed or not disclosed by Defendants to Plaintiffs and the Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase Defendants' Class Vehicles or pay a lesser price. Had Plaintiffs and the Class known about the defective nature of the Class Vehicles and their engines, they would not have purchased or leased the Class Vehicles or would have paid less for them.

123.   Plaintiff Coats provided Defendants with notice of its violations of the CLRA pursuant to California Civil Code § 1782(a) on December 14, 2017.

124.   Plaintiffs' and the other Class Members' injuries were proximately caused by Defendants' fraudulent and deceptive business practices.

125.   Therefore, Plaintiffs and the other Class Members seek all relief available under the CLRA.

## SECOND CAUSE OF ACTION

### VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW

### (Cal. Bus. & Prof. Code § 17200)

### (On Behalf of the Nationwide Class or, Alternatively, the California Class)

126.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

127.   Plaintiffs bring this claim on behalf of themselves and on behalf of the Nationwide Class. Alternatively, Plaintiff Coats brings this claim on behalf of himself and on behalf of the California Class against Defendants.

128.   The California Unfair Competition Law ("UCL") prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

-102-

129.   Defendants have engaged in unfair competition and unfair, unlawful or fraudulent business practices by the conduct, statements, and omissions described above, and by knowingly and intentionally concealing from Plaintiffs and the Class Members that the Class Vehicles suffer from a defect (and the costs, safety risks, and diminished value of the vehicles as a result of these problems). Defendants should have disclosed this information because they were in a superior position to know the true facts related to the defect, and Plaintiffs and Class Members could not reasonably be expected to learn or discover the true facts related to the defect.

130.   The defective connecting rod bearings and insufficient engine oil lubrication channels constitute a safety issue that triggered Defendants' duty to disclose the safety issue to consumers.

131.   These acts and practices have deceived Plaintiffs and are likely to deceive the public. In failing to disclose the defect and suppressing other material facts from Plaintiffs and the Class Members, Defendants breached their duties to disclose these facts, violated the UCL, and caused injuries to Plaintiffs and the Class Members. The omissions and acts of concealment by Defendants pertained to information that was material to Plaintiffs and the Class Members, as it would have been to all reasonable consumers.

132.   The injuries suffered by Plaintiffs and the Class Members are not greatly outweighed by any potential countervailing benefit to consumers or to competition, nor are they injuries that Plaintiffs and the Class Members should have reasonably avoided.

133.   Defendants' acts and practices are unlawful because they violate California Civil Code §§ 1668, 1709, 1710, and 1750 *et seq.*, and California Commercial Code § 2313.

134.   Plaintiffs seek to enjoin further unlawful, unfair and/or fraudulent acts or practices by Defendants, to obtain restitutionary disgorgement of all monies and revenues generated as a result of such practices, and all other relief allowed under California Business & Professions Code § 17200.

-103-

# THIRD CAUSE OF ACTION

## VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW

### (Cal. Bus. & Prof. Code § 17500, *et seq*.)

### (On Behalf of the Nationwide Class or, Alternatively, the California Class)

135.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

136.   Plaintiffs bring this claim on behalf of themselves and on behalf of the Nationwide Class. Alternatively, Plaintiff Coats brings this claim on behalf of himself and on behalf of the California Class against Defendants.

137.   California Business & Professions Code § 17500 states: "It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of real or personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

138.   Defendants caused to be made or disseminated through California and the United States, through advertising, marketing and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Defendants, to be untrue and misleading to consumers, including Plaintiffs and the other Class Members.

139.   Defendants have violated section 17500 because the misrepresentations and omissions regarding the safety, reliability, and functionality of their Class Vehicles as set forth in this Complaint were material and likely to deceive a reasonable consumer.

140.   Plaintiffs and the other Class Members have suffered an injury in fact, including the loss of money or property, as a result of Defendants' unfair, unlawful, and/or deceptive practices. In purchasing or leasing their Class Vehicles, Plaintiffs and

the other Class Members relied on the misrepresentations and/or omissions of Defendants with respect to the safety and reliability of the Class Vehicles. Defendants' representations were untrue because the Class Vehicles are distributed with defective connecting rod bearings and insufficient engine oil lubrication channels. Had Plaintiffs and the other Class Members known this, they would not have purchased or leased their Class Vehicles and/or paid as much for them. Accordingly, Plaintiffs and the other Class Members overpaid for their Class Vehicles and did not receive the benefit of their bargain.

141.   All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendants' businesses. Defendants' wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the state of California and nationwide.

142.   Plaintiffs, individually and on behalf of the other Class Members, request that this Court enter such orders or judgments as may be necessary to enjoin Defendants from continuing their unfair, unlawful, and/or deceptive practices and to restore to Plaintiffs and the other Class Members any money Defendants acquired by unfair competition, including restitution and/or restitutionary disgorgement, and for such other relief set forth below.

## FOURTH CAUSE OF ACTION

### VIOLATION OF THE SONG-BEVERLY ACT – BREACH OF IMPLIED WARRANTY

### (Cal. Civ. Code §§ 1792, 1791.1, *et seq.*)

### (On Behalf of the Nationwide Class or, Alternatively, the California Class)

143.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

144.   Plaintiffs bring this claim on behalf of themselves and on behalf of the Nationwide Class or, alternatively, on behalf of the state subclasses.

-105-

145.   At all relevant times hereto, Defendants were the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles. Defendants knew or should have known of the specific use for which the Class Vehicles were purchased.

146.   Defendants provided Plaintiffs and the Class Members with an implied warranty that the Class Vehicles, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold. The Class Vehicles, however, are not fit for their ordinary purpose because, *inter alia*, the Class Vehicles and their engines suffered from an inherent defect at the time of sale that causes the Class Vehicles to experience premature and catastrophic engine failure.

147.   The Class Vehicles are not fit for the purpose of providing safe and reliable transportation because of the defect.

148.   Defendants impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use. This implied warranty included, *inter alia*, the following: (i) a warranty that the Class Vehicles and their engines were manufactured, supplied, distributed, and/or sold by Defendants were safe and reliable for providing transportation and would not prematurely and catastrophically fail; and (ii) a warranty that the Class Vehicles and their engines would be fit for their intended use – providing safe and reliable transportation – while the Class Vehicles were being operated.

149.   Contrary to the applicable implied warranties, the Class Vehicles and their engines at the time of sale and thereafter were not fit for their ordinary and intended purpose. Instead, the Class Vehicles are defective, including, but not limited to, the engine defect and/or manufacture of the GDI Engines.

150.   Defendants' actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use in violation of California Civil Code §§ 1792 and 1791.1.

## FIFTH CAUSE OF ACTION

## OHIO CONSUMER SALES PRACTICES ACT

### (Ohio Rev. Code. §§ 1345.01, *et seq.*)

-106-

**(On Behalf of the Ohio Class)**

151.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

152.   Plaintiff Kinnick brings this claim on behalf of himself and on behalf of the Ohio Class against Defendants.

153.   Plaintiff and the other Ohio Subclass members are "consumers" as defined by the Ohio Consumer Sales Practices Act, OHIO REV. CODE § 1345.01 ("OCSPA"). Defendants are "suppliers" as defined by the OCSPA. Plaintiffs' and the other Ohio Subclass members' purchases or leases of the Class Vehicles were "consumer transactions" as defined by the OCSPA.

154.   By willfully failing to disclose and actively concealing the defective transmission, Defendants engaged in deceptive business practices prohibited by the OCSPA, including (1) representing that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have, (2) representing that the Class Vehicles are of a particular standard, quality, and grade when they are not, (3) advertising the Class Vehicles with the intent not to sell them as advertised, and (4) engaging in acts or practices which are otherwise unfair, misleading, false, or deceptive to the consumer.

155.   In the course of its business, Defendants willfully failed to disclose and actively concealed the defect discussed herein, and otherwise engaged in activities with a tendency or capacity to deceive. Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of material facts with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of the Class Vehicles.

156.   Defendants knew they had installed defective engines and knew that the Class Vehicles did not operate safely, as advertised. Defendants knew this for years, but concealed all of that information from the public.

157.   Defendants also valued profits over safety, and knew that they were

-107-

manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised and jeopardized the safety of the vehicle's occupants. Defendants concealed this information as well.

158.   By failing to disclose that the Class Vehicles did not operate safely because of the defect, by marketing their vehicles as safe, reliable, and of high quality, and by presenting themselves as a reputable manufacturer that valued safety and stood behind their vehicles after they were sold, Defendants engaged in deceptive business practices in violation of the OCSPA.

159.   Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff and the other Class members, about the true performance of the Class Vehicle with the defect, the quality of the Hyundai brand, the devaluing of safety and performance at Hyundai, and the true value of the Class Vehicles.

160.   Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with an intent to mislead Plaintiff and the Ohio class.

161.   Defendants knew or should have known that their conduct violated the OCSPA.

162.   Defendants owed Plaintiff a duty to disclose the true safety, performance, and reliability of the Class Vehicles, and the devaluing of safety and performance at Hyundai, because Hyundai:

a. Possessed exclusive knowledge that it valued profits and cost-cutting over safety and performance, and that it was manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised;

b. Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

c. Made incomplete representations about the safety and performance of the Class Vehicles generally, and the defective engines in particular, while purposefully withholding material facts from Plaintiff and the Class that contradicted these representations.

-108-

163.    Because Defendants fraudulently concealed the defect and the true performance of the Class Vehicles, the value of the Class Vehicles has greatly diminished. In light of the stigma attached to those vehicles by Defendants' conduct, they are now worth significantly less than they otherwise would be.

164.    The Ohio Attorney General has made available for public inspection prior state court decisions which have held that the acts and omissions of Defendants in this Complaint, including, but not limited to, the failure to honor both implied warranties and express warranties, the making and distribution of false, deceptive, and/or misleading representations, and the concealment and/or non-disclosure of a dangerous defect, constitute deceptive sales practices in violation of the OCSPA.

165.    These cases include, but are not limited to, the following:

    a.    *Mason v. Mercedes Benz USA, LLC* (OPIF #10002382);

    b.    *State ex rel. Betty D. Montgomery v. Volkswagen Motor Co.* (OPIF #10002123);

    c.    *State ex rel. Betty D. Montgomery v. Bridgestone/Firestone, Inc.* (OPIF #10002025);

    d.    *Bellinger v. Hewlett-Packard Co.*, No. 20744, 2002 Ohio App. LEXIS 1573 (Ohio Ct. App. Apr. 10, 2002) (OPIF #10002077);

    e.    *Borror v. MarineMax of Ohio*, No. OT-06-010, 2007 Ohio App. LEXIS 525 (Ohio Ct. App. Feb. 9, 2007) (OPIF #10002388);

    f.    *State ex rel. Jim Petro v. Craftmatic Organization, Inc.* (OPIF #10002347);

    g.    *Mark J. Craw Volkswagen, et al. v. Joseph Airport Toyota, Inc.* (OPIF #10001586);

    h.    *State ex rel. William J. Brown v. Harold Lyons, et al.* (OPIF #10000304);

    i.    *Brinkman v. Mazda Motor of America, Inc.* (OPIF #10001427);

    j.    *Khouri v. Don Lewis* (OPIF #100001995);

-109-

        k. *Mosley v. Performance Mitsubishi aka Automanage* (OPIF #10001326);

        l. *Walls v. Harry Williams dba Butch's Auto Sales* (OPIF #10001524); and

        m. *Brown v. Spears* (OPIF #10000403).

166. As a result of its violations of the OCSPA, as detailed above, Defendants caused actual damage to Plaintiff and, if not stopped, will continue to harm Plaintiff. Plaintiff and the Class currently own or lease, or within the class period have owned or leased, a Class Vehicle that is defective, which has caused the value of the Class Vehicles to decrease.

167. Plaintiff and the Class sustained damages as a result of Defendants' unlawful acts and are therefore entitled to damages and other relief as provided under the OCSPA.

168. Because Defendants fraudulently concealed the defect and the true performance of cars equipped with the defective engines, the value of the Class Vehicles has greatly diminished. In light of the stigma attached to those vehicles by Defendants' conduct, they are now worth significantly less than they otherwise would be.

169. Plaintiffs also seek court costs and attorneys' fees as a result of Hyundai's violations of the OCSPA, as provided in Ohio Rev. Code § 1345.09.

## SIXTH CAUSE OF ACTION

### BREACH OF EXPRESS WARRANTY

**(On Behalf of the Nationwide Class or, Alternatively,**

**the California Class and Ohio Class)**

170. Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

171. Plaintiffs bring this claim on behalf of themselves and on behalf of the Nationwide Class or, alternatively, on behalf of each of the state subclasses.

-110-

172.   Defendants provided all purchasers and lessees of the Class Vehicles with the express warranties described herein, which became part of the basis of the bargain. Accordingly, Defendants' warranties are express warranties under state law.

173.   The parts affected by the defect, including the rotating assembly and engine block, were distributed by Defendants in the Class Vehicles and are covered by the warranties Defendants provided to all purchasers and lessors of Class Vehicles.

174.   Defendants breached these warranties by selling and leasing Class Vehicles with the defect, requiring repair or replacement within the applicable warranty periods, and refusing to honor the warranties by providing free repairs or replacements during the applicable warranty periods.

175.   Plaintiffs notified Defendants of the breach within a reasonable time, and/or were not required to do so because affording Defendants a reasonable opportunity to cure their breaches of written warranty would have been futile. Defendants also knew of the defect and yet have chosen to conceal it and to fail to comply with their warranty obligations.

176.   As a direct and proximate cause of Defendants' breach, Plaintiffs and the other Class Members bought or leased Class Vehicles they otherwise would not have, overpaid for their vehicles, did not receive the benefit of their bargain, and their Class Vehicles suffered a diminution in value. Plaintiffs and Class Members have also incurred and will continue to incur costs related to the diagnosis and repair of the defective connecting rod bearings and insufficient engine oil lubrication channels.

177.   Defendants' attempt to disclaim or limit these express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, Defendants' warranty limitation is unenforceable because they knowingly sold a defective product without informing consumers about the defect.

178.   The time limits contained in Defendants' warranty period were also unconscionable and inadequate to protect Plaintiffs and members of the Class. Among other things, Plaintiffs and Class Members had no meaningful choice in determining

-111-

these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and the Class Members, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale and would fail well before their useful lives.

179.   Plaintiffs and the Class Members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Defendants' conduct described herein.

## SEVENTH CAUSE OF ACTION
## BREACH OF IMPLIED WARRANTY
### (On Behalf of the Nationwide Class or, Alternatively,
### the California Class and Ohio Class)

180.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

181.   Plaintiffs bring this claim on behalf of themselves and on behalf of the Nationwide Class or, alternatively, on behalf of each of the state subclasses.

182.   Defendants were at all relevant times the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles. Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased.

183.   Defendants provided Plaintiffs and the other Class members with an implied warranty that the Class Vehicles and any parts thereof are merchantable and fit for the ordinary purposes for which they were sold. However, the Class Vehicles are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because, *inter alia*, the Class Vehicles and their engines suffered from defective connecting rod bearings and insufficient engine oil lubrication channels at the time of sale that causes the vehicles to experience premature and catastrophic engine failure. Therefore, the Class Vehicles are not fit for their particular purpose of providing safe and reliable transportation.

-112-

184.    Defendants impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the Class Vehicles and their engines were manufactured, supplied, distributed, and/or sold by Defendants were safe and reliable for providing transportation and would not experience premature and catastrophic engine failure; and (ii) a warranty that the Class Vehicles and their engines would be fit for their intended use while the Class Vehicles were being operated.

185.    Contrary to the applicable implied warranties, the Class Vehicles and their engines at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiffs and the other Class Members with reliable, durable, and safe transportation. Instead, the Class Vehicles suffer from a defective design(s) and/or manufacturing defect(s).

186.    Defendants' actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use.

## EIGHTH CAUSE OF ACTION

## BREACH OF WRITTEN WARRANTY UNDER THE MAGNUSON-MOSS WARRANTY ACT (15 U.S.C. § 2301, *et seq.*)

### (On Behalf of the Nationwide Class or, Alternatively, the California Class and Ohio Class)

187.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

188.    Plaintiffs bring this claim on behalf of themselves and on behalf of the Nationwide Class or, alternatively, on behalf of the state subclasses.

189.    Plaintiffs and the Class are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

190.    Defendants are suppliers and warrantors within the meaning of 15 U.S.C. §§ 2301(4)-(5).

-113-

191.   The Class Vehicles are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

192.   Defendants' 5 year/60,000 miles Basic Warranty and 10 year/100,000 miles Powertrain Warranty are "written warranties" within the meaning of 15 U.S.C. § 2301(6).

193.   Defendants breached the express warranties by:

a.   Providing a 5 year/60,000 miles Basic Warranty and a 10 year/100,000 miles Powertrain Warranty with the purchase or lease of the Class Vehicles, thereby warranting to repair or replace any part defective in material or workmanship at no cost to the owner or lessee;

b.   Selling and leasing Class Vehicles with engines that were defective in materials and/or workmanship, requiring repair or replacement within the warranty period; and

c.   Refusing and/or failing to honor the express warranties by repairing or replacing, free of charge, the engine or any of its component parts in order to remedy the defective connecting rod bearings and insufficient engine oil lubrication channels.

194.   Plaintiffs and the other Class Members relied on the existence and length of the express warranties in deciding whether to purchase or lease the Class Vehicles.

195.   Defendants' breach of the express warranties has deprived Plaintiffs and the other Class Members of the benefit of their bargain.

196.   The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum or value of $25.00. In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

197.   Defendants have been afforded a reasonable opportunity to cure their breach of the written warranties and/or Plaintiffs and the other Class Members were not required to do so because affording Defendants a reasonable opportunity to cure their breach of written warranties would have been futile. Defendants were also on notice of the alleged

-114-

defect from the complaints and service requests it received from Class Members, as well as from their own warranty claims, customer complaint data, and/or parts sales data.

198.   As a direct and proximate cause of Defendants' breach of the written warranties, Plaintiffs and the other Class Members sustained damages and other losses in an amount to be determined at trial. Defendants' conduct damaged Plaintiffs and the other Class Members, who are entitled to recover actual damages, consequential damages, specific performance, diminution in value, costs, including statutory attorney fees and/or other relief as deemed appropriate.

## NINTH CAUSE OF ACTION

## COMMON LAW FRAUD

### (On Behalf of the Nationwide Class or, Alternatively, the California Class and Ohio Class)

199.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

200.   Plaintiffs bring this claim on behalf of themselves and on behalf of the Nationwide Class or, alternatively, on behalf of the state subclasses.

201.   Defendants made material omissions concerning a presently existing or past fact. For example, Defendants did not fully and truthfully disclose to their customers the true nature of the inherent defect with the GDI Engine, which was not readily discoverable until years later, often after the New Vehicle Limited Warranty or the Powertrain Warranty has expired. As a result, Plaintiffs and the other Class Members were fraudulently induced to lease and/or purchase the Class Vehicles with the said defect and all of the resultant problems.

202.   These omissions were made by Defendants with knowledge of their falsity, and with the intent that Plaintiffs and the Class Members rely on them.

203.   Plaintiffs and the Class Members reasonably relied on these omissions and suffered damages as a result.

-115-

**TENTH CAUSE OF ACTION**

**BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING**

**(On Behalf of the Nationwide Class or, Alternatively,**

**the California Class and Ohio Class)**

204.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

205.   Plaintiffs bring this claim on behalf of themselves and on behalf of the Nationwide Class or, alternatively, on behalf of the state subclasses.

206.   All contracts in California and Ohio contain an implied covenant of good faith and fair dealing. The implied covenant of good faith and fair dealing is an independent duty and may be breached even if there is no breach of a contract's express terms.

207.   Defendants breached the covenant of good faith and fair dealing by, *inter alia*, failing to notify Plaintiffs and Class Members of the defective connecting rod bearings and insufficient engine oil lubrication channels in the Class Vehicles, and failing to fully and properly repair this defect.

208.   Defendants acted in bad faith and/or with a malicious motive to deny Plaintiffs and the Class Members some benefit of the bargain originally intended by the parties, thereby causing them injuries in an amount to be determined at trial.

**TWELFTH CAUSE OF ACTION**

**UNJUST ENRICHMENT**

**(On Behalf of the Nationwide Class or, Alternatively,**

**the California Class and Ohio Class)**

209.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein. This count is pled in the

1 | alternative to the contract based claims.

2 |       210.   Plaintiffs and members of the Class conferred a benefit on Defendants.

3 |       211.   Defendants had knowledge that this benefit was conferred upon them.

4 |       212.   Defendants have been and continue to be unjustly enriched at the expense of

5 | Plaintiffs, and their retention of this benefit under the circumstances would be

6 | inequitable.

7 |

8 | **PRAYER FOR RELIEF**

9 |       WHEREFORE, Plaintiffs, on behalf of themselves and members of the Class,

10 | respectfully request that this Court:

11 |     A. determine that the claims alleged herein may be maintained as a class action

12 |        under Rule 23 of the Federal Rules of Civil Procedure, and issue an order

13 |        certifying one or more Classes as defined above;

14 |     B. appoint Plaintiffs as the representatives of the Classes and their counsel as Class

15 |        counsel;

16 |     C. award all actual, general, special, incidental, statutory, punitive, and

17 |        consequential damages and restitution to which Plaintiffs and the Class

18 |        Members are entitled;

19 |     D. award pre-judgment and post-judgment interest on such monetary relief;

20 |     E. grant appropriate injunctive and/or declaratory relief, including, without

21 |        limitation, an order that requires Defendants to repair, recall, and/or replace the

22 |        Class vehicles and to extend the applicable warranties to a reasonable period of

23 |        time, or, at a minimum, to provide Plaintiffs and Class Members with

24 |        appropriate curative notice regarding the existence and cause of the engine

25 |        defect;

26 |     F. award reasonable attorneys' fees and costs; and

27 |     G. grant such further relief that this Court deems appropriate.

28 |

-117-

Dated: July 31, 2018.                    Respectfully submitted,


                                         **SAUDER SCHELKOPF**


                                By:  _/s/ Matthew D. Schelkopf_
                                         Matthew D. Schelkopf
                                         *pro hac vice*
                                         555 Lancaster Ave.
                                         Berwyn, PA 19312
                                         Telephone: (610) 200-0581
                                         Email: mds@sstriallawyers.com

                                         Adam Gonnelli, Esq.
                                         *pro hac vice*
                                         **THE SULTZER LAW GROUP**
                                         85 Civic Center Plaza, Suite 104
                                         Poughkeepsie, NY 12601
                                         Tel: (845) 483-7100
                                         Fax: (888) 749-7747
                                         Email: gonnellia@thesultzerawgroup.com

                                         *Co-Lead Counsel*

                                         Bonner Walsh
                                         *pro hac vice*
                                         **WALSH PLLC**
                                         1561 Long Haul Road
                                         Grangeville, ID 83530
                                         Telephone: (541) 359-2827
                                         Facsimile: (866) 503-8206
                                         Email: bonner@walshpllc.com

                                         *Executive Committee*

Consolidated Class Action Complaint
Case No. 8:17-cv-02208-JLS-JDE

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Daniel C. Levin
Austin B. Cohen
**LEVIN SEDRAN & BERMAN LLP**
510 Walnut Street, Ste. 500
Philadelphia, Pennsylvania 19106
Telephone: (215) 592-1500

Jason S. Rathod
Nicholas Migliaccio
Esfand Nafisi
**MIGLIACCIO & RATHOD LLP**
412 H St. NE, Suite 302
Washington, D.C. 20002
Telephone: (202) 470-3520
www.classlawdc.com

*Attorneys for Plaintiffs and Putative Class*

### JURY DEMAND

Plaintiffs, on behalf of themselves and the putative Class, demand a trial by jury on all issues so triable.

Sauder Schelkopf

By: ___*/s/ Matthew D. Schelkopf*___

Matthew D. Schelkopf

Attorneys for Plaintiffs and Putative Class

-119-

Consolidated Class Action Complaint
Case No. 8:17-cv-02208-JLS-JDE